J. TONY SERRA SBN 32639
MARIA BELYI SBN 270019
506 BROADWAY
SAN FRANCISCO, CA 94133
TELEPHONE: (415) 986-5591
FACSIMILE: (415) 421-1331

ATTORNEYS FOR DEFENDANT
JOSE INEZ GARCIA-ZARATE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:17-CR-609-VC |
| Plaintiff, | DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DISCOVERY PERTAINING TO VINDICTIVE PROSECUTION AND COLLUSION |
| vs. | |
| JOSE INEZ GARCIA-ZARATE, | |
| Defendant. | Date: April 24, 2018 Time: 10:30 a.m. Courtroom: Hon. Vince Chhabria |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that on the above date and time, or as soon thereafter as this matter may be heard, defendant JOSE INEZ GARCIA-ZARATE, by and through counsel, will and hereby does move this Honorable Court for an order compelling the government to produce discovery pertaining to vindictive prosecution and collusion between the federal government and the state government in the prosecution against Mr. Garcia-Zarate. The defendant asks for an evidentiary hearing should evidentiary issues come into question.

This motion is made pursuant to Federal Rule of Criminal Procedure section 12, the Fifth and Fourteenth Amendments of the United States Constitution and the authorities presented in the accompanying Memorandum of Points and Authorities.

Dated: March 13, 2018          _/s/ J. Tony Serra_____
                               J. TONY SERRA
                               MARIA BELYI
                               Attorneys for Defendant
                               JOSE INEZ GARCIA-ZARATE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

### A.  Statement of Facts with Respect to Vindictive Prosecution Claim.

Mr. Garcia-Zarate was charged by way of Information with the July 2015 murder of Kathryn Steinle (Cal. Pen. Code § 187) assault with a semi-automatic firearm causing great bodily injury (Cal. Pen. Code § 245(b)) and being a felon in possession of a firearm (Cal. Pen. Code § 29800(a)(1)) in San Francisco Superior Court. Each of the charges was accompanied by various additional allegations.  On November 30, 2017, Mr. Garcia-Zarate was acquitted of the murder and assault charges and convicted of being a felon in possession of a firearm. He was sentenced to the maximum penalty of three years in prison on January 5, 2018.  With the credits that Mr. Garcia-Zarate accumulated since he had been in custody since July 1, 2015, this sentence amounted to credit for time served.

This case was highly publicized, both locally and nationally.  Almost immediately after the death of Ms. Steinle, then presidential candidate Donald Trump began to use Mr. Garcia-Zarate as the symbol of the dangers of illegal immigrants and the need for a wall between the United States and Mexico[1].

Immediately after Mr. Garcia-Zarate was acquitted of the murder and assault allegations, President Trump maligned the verdict on Twitter, stating:

> "A disgraceful verdict in the Kate Steinle case! No wonder the people of our Country are so angry with Illegal Immigration."

> "The Kate Steinle killer came back and back over the weakly protected Obama border, always committing crimes and being violent, and yet this info was not used in court. His exoneration is a complete travesty of justice. BUILD THE WALL!"

---

[1] Mr. Trump told CNN in July of 2015, "This man, or this animal, that shot that wonderful, that beautiful woman in San Francisco, this guy was pushed back by Mexico . . . Mexico pushes back people across the border that are criminals, that are drug dealers."  Porter, Tom "Kate Steinle: Killing Mexican Immigrant Who Inspired Trump's Wall Denies Murder."  October 24, 2017, Newsweek,  http://www.newsweek.com/trial-begins-alleged-mexican-killer-who-inspired-trumps-wall-691348.  *See also* Lee, MJ "Trump Says He Still Doesn't Know Where Obama was Born," where Trump stated the above and pledged that, as President, he would build an impenetrable wall along the border to keep out unwanted individuals. July 10, 2015 CNN. *https://edition.cnn.com/2015/07/08/politics/donald-trump-illegal-immigrant-workers/index.html* (*Exhibit A*)

"The jury was not told the killer of Kate was a 7 time felon. The Schumer/Pelosi Democrats are so weak on Crime that they will pay a big price in the 2018 and 2020 Elections."[2]

United States Attorney General Jeff Sessions blamed Ms. Steinle's death on San Francisco's sanctuary city policy after the verdict. "While the State of California sought a murder charge for the man who caused Ms. Steinle's death -- a man who would not have been on the streets of San Francisco if the city simply honored an ICE detainer -- the people ultimately convicted him of being a felon in possession of a firearm . . . When jurisdictions choose to return criminal aliens to the streets rather than turning them over to federal immigration authorities, they put the public's safety at risk. . .San Francisco's decision to protect criminal aliens led to the preventable and heartbreaking death of Kate Steinle."[3]

On December 1, 2017, Mr. Sessions stated on Tucker Carlson Tonight that "the federal government and President Trump are crystal clear: we are doing everything possible to get these [sanctuary] cities to reverse these policies."[4]  He indicated that the Justice Department "is working right now to bring any charges that are appropriate" against Mr. Garcia-Zarate and that "he is going to face every charge that is proper to be brought against him."

That same day, Justice Department spokeswoman Sarah Isgur Flores appeared on Fox and Friends and announced that the Department of Justice was looking at federal charges against Mr. Garcia-Zarate.[5] On the show, she was told that people were disappointed in the previous day's verdict and asked what the Department of Justice was considering. Ms. Flores stated, "Absolutely. We are looking at pursuing federal charges in this case and I think it's important to reassure everyone who is concerned about this that we will prosecute this to the fullest extent available in the

---

[2] East, Kristen and Lacey, Akela,  "Trump: Kate Steinle 'killer' re-entered U.S. through 'weakly protected Obama border.'" November 30, 2017, Politico.com.  https://www.politico.com/story/2017/11/30/kate-steinle-verdict-jeff-sessions-trump-274340  *(Exhibit B)*

[3] *See* Mr. Session's November 30, 2017 Statement,  https://www.justice.gov/opa/pr/attorney-general-sessions-statement-verdict-people-state-california-vs-jose-ines-garcia.  *(Exhibit C)*

[4] "Sessions: Trump, DOJ Doing Everything Possible to Reverse Sanctuary City Policies." December 1, 2017, Fox News Insider. http://insider.foxnews.com/2017/12/01/jeff-sessions-sanctuary-city-policies-after-kate-steinle-not-guilty-verdict (see video embedded in article). (*Exhibit D* (video not included in Exhibit; must be viewed online.))

[5] Gibson, Jake.  "DOJ Weighing Federal Charges in Kate Steinle Murder Case, After Not Guilty Verdict," December 1st, 2017, Fox News, http://www.foxnews.com/politics/2017/12/01/doj-weighing-federal-charges-in-kate-steinle-murder-case-after-not-guilty-verdict.html (see video embedded in article). (*Exhibit E* (Video not included with Exhibit; must be viewed online)).

*Garcia-Zarate Motion to Compel Discovery for Vindictive Prosecution and Violation of Double Jeopardy*

law." Ms. Flores was then asked where the injustice is from the DOJ's perspective. She said "You have to look at the sanctuary city policies as a whole. This is a person who should not have been in San Francisco to begin with. . ." Though she was vague as to what charges would be brought in federal court, she stated that they were looking at all the options and emphasized that the Department of Justice will prosecute the case against Mr. Garcia-Zarate to the fullest extent available under the law.

On December 5, 2017, three court days after the San Francisco jury verdict, a federal grand jury indicted Mr. Garcia-Zarate on the following offenses: Count 1, a violation of 18 U.S.C. section 922(g)(1), being a felon in possession of a firearm and ammunition, and Count 2: a violation of 18 U.S.C. section 922(g)(5), being an alien illegally and unlawfully in the United States in possession of a firearm and ammunition. Though broken up into two counts, these allegations address the exact same conduct as that for which he was convicted in San Francisco.

**B.   Statement of Facts Pertaining to Claim of Collusion between the State and Federal Governments.**

The federal government was critically involved in the prosecution of Mr. Garcia-Zarate in San Francisco. Initially, law enforcement was assisted by the federal government with the production of the video exhibit and the diving for the weapon.

More importantly, an integral part of the case was that the gun that shot and killed Ms. Steinle had belonged to a Bureau of Land Management ('BLM') Ranger, Ranger John Woychowski. That weapon had been stolen from his car when his car was burglarized; he had left the weapon fully loaded, zipped up in a back pack in the back of his SUV.

The San Francisco Public Defender attempted to subpoena Ranger Woychowski to testify at trial and to bring documentation about his stolen firearm; the United States Attorney's Office, in collaboration with the Department of Interior, opposed the Public Defender's Subpoena. *See Exhibit F*,[6] Assistant U.S. Attorney Robin Wall's Opposition to the Public Defender's subpoena *duces tecum* and *ex parte* motion for a body attachment.

---

[6] Please note: in the San Francisco Superior Court case, the defendant was referred to as Juan Francisco Lopez Sanchez.

Though not on the San Francisco District Attorney's initial witness list, the prosecution called him in its case-in-chief, likely at the behest of the federal government and presumably to limit the scope of his testimony in its direct examination.

During Ranger Woychowski's testimony, he was represented by Mr. Wall, an Assistant United States Attorney for the Department of Justice, even though Ranger Woychowski was off-duty at the time that he had parked his vehicle and left the loaded weapon there. [RT 25:10-11] (*See* transcript, attached as *Exhibit G*)  Mr. Wall, the Assistant U.S. Attorney, was sitting with the district attorney along with Mr. Mack, the Assistant Regional Solicitor from the Department of the Interior. During Ranger Woychowski's testimony, and particularly during the cross-examination, Mr. Wall and Mr. Mack were visibly assisting the prosecution.

During Ranger Woychowski's testimony, the San Francisco prosecutor presented evidence to the jury in an attempt to obviate any appearance of responsibility by the ranger or the BLM; the prosecution elicited that the ranger had tinted windows in his car, that he locked his car, that the car has a manufacturer's panic alarm and that there was indicia that he was a law enforcement officer in his backpack.  [RT 30:25-31:16]

The prosecution objected to many questions by the defense, particularly regarding the BLM policies, stating that the defense was focusing on the rules that do not apply to law enforcement. [RT 44:17-26] When the judge asked that the prosecution simply address these issues on re-direct, the prosecution stated that she preferred not to discuss the matter at all as the ranger is not on trial and this is not a "wrongful death" case. [RT 45:7-12] The prosecution argued that whether Ranger Woychowski was "following a particular policy or rule is irrelevant," and strongly objected to the defense questioning of Ranger Woychowski regarding whether he thought he had stored the weapon safely in the car. [RT 45:14-46:4]

The evidence suggests that the federal government agents, specifically Mr. Wall and Mr. Mack, were in control of the prosecution's calling of Ranger Woychowski to the stand and the scope and light in which he was questioned. It was apparent from the questions by the prosecution that it intended to shield the ranger from any responsibility in this case, as any blame on the agent

1   would expose the federal government to liability and would greatly diminish the narrative of the

2   federal government that the cause of all crime in sanctuary cities are the undocumented aliens.

3   **C.  <u>Request for Discovery and Evidentiary Hearing.</u>**

4   Mr. Garcia-Zarate contends that this prosecution against him is vindictive in violation of the

5   Due Process Clause of the Fourteenth Amendment and violates Double Jeopardy clause of the Fifth

6   Amendment because of ongoing collusion between the State of California and the federal

7   government.  Through counsel, Mr. Garcia-Zarate intends to bring motions to dismiss this

8   prosecution on those grounds.

9   Though the timing of the federal indictment and other factors may be sufficient to raise the

10   presumption of vindictiveness, in order to fully adjudicate the extent of the vindictiveness and

11   collusion, Mr. Garcia-Zarate needs discovery.  Specifically, Mr. Garcia-Zarate has requested the

12   following items:

13   A.  Any and all documentation, whether through email communication,
14   memoranda, oral statements memorialized and not memorialized, notes,
     letters, or any other method of communication of contact between a United
15   States Federal Agency (including, but not limited to, Department of Justice,
     United States Attorney's Office, United States Attorney General's Office,
16   United States President, FBI, U.S. Marshal, USCIS, ICE) with San Francisco
     Law Enforcement (including, but not limited to, the San Francisco District
17   Attorney's Office, San Francisco Police Department, San Francisco Sheriff's
     Office) regarding the case of People v. Jose Ines Garcia Zarate, San Francisco
18   case number 15014736.  This request includes communication from July 2015
19   through December 31, 2017.

20   B.  A report of all instances in which the San Francisco law enforcement
     (including the San Francisco District Attorney's Office, the San Francisco
21   Police Department, the San Francisco Sheriff's Office) was assisted by a
     federal law enforcement agency or other agency of the federal government
22   (including, but not limited to, Department of Justice, United States Attorney's
     Office, United States Attorney General's Office, United States President, FBI,
23   US Marshal, USCIS, ICE) in the case of People v. Jose Ines Garcia Zarate,
     San Francisco case number 15014736.  Assistance includes assistance in
24   investigation of Mr. Garcia-Zarate's background, assistance in the
25   investigation of the case, assistance in case strategy and charging decisions,
     and any other collaboration or assistances.  We request all evidence of such
26   assistance, including the communication in all forms between these agencies
     (including email, text, written communication, and oral communication) and
27   any other evidence of such assistance, such as documents.  We also request
     the names and positions of all parties involved in the collaboration.

28

C.  Any and all communication directing the U.S. Attorney's Office to convene a grand jury in this case.  This would include directives from the United States Attorney General's Office and any and all communication between the United States President's Office or the United States Executive Branch with the United States Attorney General's Office.

D.  All discovery materials pertaining to the Bureau of Land Management (BLM), the FBI, and DOJ, its investigators, experts, and attorneys as well as the attorneys with the BLM and DOJ present in court and at counsel table during any part of the state trial.  This should include reports, memoranda, oral statements memorialized and not memorialized, intra-agency communications (including communications with the San Francisco Police Department, Sheriff's Office, and the Office of the District Attorney).

E.  Names of FBI experts who were noticed to testify in the trial which took place in the San Francisco Superior Court but did not.  Please include the roles they played in the investigation and their anticipated testimony.

F.  Any and all discovery including reports, memoranda, analyses, and examinations by FBI and other federal experts who worked with SFPD on the audio/video evidence.

In an email exchange regarding discovery issues, which the prosecution and defense agreed can take the place of a meet and confer under Local Rule 16-1, the prosecution expressed that much of what was requested was outside of its discovery obligations per *Brady* and Rule 16, and thus the prosecution was not obligated to provide it.

Mr. Garcia-Zarate contends that he has made a sufficient showing of governmental vindictiveness in violation of his due process under the Fourteenth Amendment of the Constitution and collusion by the federal and state authorities to the extent that it violated his rights under Double Jeopardy.  He respectfully requests that this Court compel the prosecution to provide discovery as to each of these points.  Mr. Garcia-Zarate respectfully requests a hearing be held regarding any evidentiary issues and, if the Court is so inclined, that the Court review the discovery materials held by the prosecution *in camera* prior to releasing it to the defense.

**ARGUMENT**

**I.**

**Mr. Garcia-Zarate Has Made a Sufficient Showing of a
Presumption of Vindictive Prosecution and the Government
Should Be Required to Produce Discovery Related Thereto.**

A.    *Under the Law, Mr. Garcia-Zarate has Demonstrated A Presumption of
Vindictiveness on the Part of the Prosecution.*

In *Blackledge v. Perry*, the defendant was convicted of a misdemeanor before a North

Carolina magistrate judge and, in accordance to his rights under North Carolina's two-tiered court

system, he appealed and received a trial *de novo* in the Superior Court.  *Blackledge v. Perry*, 417

U.S. 21, 22 (1974).  After the appeal, the prosecution obtained a felony indictment against the

defendant.  *Id*. at 23.

The Supreme Court held that it was not "constitutionally permissible" for the government to

respond to the defendant's "invocation of his statutory right to appeal by bringing a more serious

charge against him prior to the trial *de novo*." *Id.* at 28-29.  The Court explained that while "the Due

Process Clause is not offended by all possibilities of increased punishment upon retrial after

appeal," it is offended "by those that pose a realistic likelihood of "vindictiveness.""  *Id*. at 27.

The Court focused on the "central figure" in that case, the prosecutor, and noted that the

prosecutor has a significant stake at discouraging *de novo* trials as it increases the prosecutor's

workload and may result in a convicted defendant's acquittal.  *Id*. The prosecutor also has the

means of "upping the ante" through a felony indictment, thus insuring that "only the most hardy

defendants will brave the hazards of a *de novo* trial."  *Id*. at 28.

The Court noted that no evidence of actual vindictiveness need be presented as just "the fear

of such vindictiveness may unconstitutionally deter a defendant's exercise" of his due process

rights.  *Id*. (citing *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969).  In other words, it is

"the *appearance of vindictiveness*, rather than *vindictiveness in fact*, which controls." *United States

v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978) (emphasis in text).

Prosecutorial vindictiveness may be established "by producing direct evidence of the

prosecutor's punitive motivation," or, if a defendant can show that the charges were brought

because he "exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *United States v. Jenkins*, 504 F. 3d 694, 699 (9th Cir. 2007).

Procedurally, a defendant asking to have the charges dismissed based on an allegation of vindictive prosecution must make the initial showing of that "appearance of vindictiveness." *United States v. Burt*, 619 F2d 831, 836 (9th Cir. 1980).  A retaliatory or malicious motive need not be shown; once an appearance of vindictiveness has been demonstrated through a *prima facie* showing, vindictiveness is inferred and the burden shifts to the prosecution to prove that the charges do not stem from a vindictive motive.  *Id.* "Whether the facts give rise to the appearance of vindictiveness is dependent upon the totality of the circumstances surrounding the prosecutorial decision at issue." *United States v. Griffin*, 617 F. 2d 1342, 1347 (9th Cir. 1980).

Generally, when courts condemn prosecutions as vindictive, "the defendant, after exercising some procedural right, had been confronted with a more serious or an additional charge arising out of the same nucleus of operative facts as the original charge." *United States v. Robison*, 644 F. 2d 1270, 1272 (9th Cir. 1980).  In *Robison*, the Court of Appeals for the Ninth Circuit denied the defendant's claim that the prosecution in his case was retaliation for his success in previous legal matters because this prosecution arose from events "separate and distinct" from those on which the earlier prosecutions were based.  *Id.* The Court explained that "it is the prosecutor's attempt to retry the appellant, seeking a heavier penalty for the same acts as originally charged that is inherently suspect," and "the defendant's position is weakened by the fact that the instant prosecution is based on a different set of facts from those previous prosecutions." *Id.* at 1273 (citations omitted).

The timing of the indictment plays an important role in the determination of whether the prosecution is vindictive.  In *United States v. Jenkins*, the defendant was stopped twice at the United States-Mexico border with two non-citizens in the trunk of the car; both times, the defendant confessed to transporting them in return for payment. *United States v. Jenkins*, 504 F. 3d 694, 698 (9th Cir. 2007)

Later, the defendant was pulled over and marijuana was found concealed in the interior panels of the car; she told the officers that she believed she was transporting an illegal alien. *Id.*

The defendant was charged with the transporting of marijuana, but not charged with the two instances of transporting illegal aliens into the United States; at her trial, she testified that she did not know her car contained marijuana as she thought she was attempting to smuggle illegal aliens. *Id*. That same day, the jury went to deliberate but did not reach a verdict; however, that afternoon, the government filed a complaint charging the defendant with smuggling undocumented aliens on one of those prior occasions. *Id*. The defendant moved to dismiss on the ground of vindictive prosecution. *Id*.

The Ninth Circuit Court of Appeals explained that to establish a presumption of vindictiveness, the defendant must "demonstrate a *reasonable likelihood* that the government would not have brought the alien smuggling charges had she not elected to testify at her marijuana smuggling trial and present her theory of the case." *Id*. at 700 (emphasis in text). "The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government because the doctrine of vindictive prosecution seeks to reduce or eliminate apprehension on the part of an accused that [he] may be punished for exercising [his] rights." *Id*. (citations omitted)

The Court acknowledged that the prosecution had an "open and shut" case against the defendant in regards to the smuggling of illegal aliens but pointed out that the government had enough evidence to proceed against her prior to her assertion of her right to testify. *Id*. at 701. The Court also rejected the government's argument that since the alien smuggling and marijuana importation did not arise "out of the same nucleus of operative fact, the doctrine of indictive prosecution is inapplicable." *Id*. at 700-701. The Court points out that while prior cases (i.e. *United States v. Martinez,* 785 F.2d 663 (9th Cir. 1986) and *United States v. Robison*, *supra,* 664 F. 2d at 1272) suggest that just because "the mere filing of a second, unrelated charge after a first charge does not give rise to a presumption of vindictiveness," does not mean that "a presumption of vindictiveness can *never* arise when the second charge is unrelated to the first." *Id*.

B.    *The Facts of this Case Demonstrate a Clear Reasonable Likelihood that the Federal Government Would Not Have Pursued Charges Against Mr. Garcia-Zarate Had He Not Exercised His Right to a Trial.*

As stated above, all Mr. Garcia-Zarate must demonstrate is a reasonable likelihood that this prosecution would not be happening had he not exercised his right to trial.  Here, there can be no doubt that he has met this burden as the totality of circumstances in this case raises a presumption of a vindictive prosecution.

The timing of the indictment against Mr. Garcia-Zarate, the statements of the Attorney General, the spokeswoman for the Department of Justice, and even the President of the United States, and the fact that Mr. Garcia-Zarate is charged for the exact same conduct for which he was convicted in San Francisco Superior Court all suggest a vindictive motive.

Mr. Garcia-Zarate was arrested on July 1, 2015 by San Francisco authorities who worked in tandem with federal authorities in the prosecution of this case. Over the course of more than two years, federal prosecutors had every opportunity to indict Mr. Garcia-Zarate on the charges he is currently facing, yet the federal indictment only came down mere days after Mr. Garcia-Zarate was acquitted of the murder and assault charges. It is evident from the rhetoric of the President, Attorney General, and the spokeswoman for the Department of Justice that no charges were pending against Mr. Garcia-Zarate prior to his acquittal.

The publicity of this case threw Mr. Garcia-Zarate into the spotlight. Then-candidate Trump worked this case into his campaign by dehumanizing Mr. Garcia-Zarate and making him a scapegoat of all that is wrong with sanctuary cities and the reason to build a border wall.

After the trial, President Trump, Attorney General Sessions, and DOJ Spokeswoman Flores all publicly condemned the verdict and, in their rhetoric, tied the verdict to their disgust over sanctuary cities.  On December 1, 2017, the day following the verdict, Mr. Sessions and Ms. Flores informed the public that the Department of Justice was working furiously to charge Mr. Garcia-Zarate "to the fullest extent available under the law," and charged him with the same conduct with which he was convicted in his state trial and given the maximum sentence. It is evident from their statements that the charges against Mr. Garcia-Zarate are a reaction to his successful exercising of his right to trial and his acquittal of the federal charges.

Notably, this prosecution is in violation of the prosecution's policy, which

precludes the initiation or continuation of a federal prosecution, following a prior state or federal prosecution based on substantially the same act(s) or transaction(s) unless three substantive prerequisites are satisfied: first, the matter must involve a substantial federal interest; second, the prior prosecution must have left that interest demonstrably unvindicated; and third, applying the same test that is applicable to all federal prosecutions, the government must believe that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction by an unbiased trier of fact.

*See* Department of Justice, United States Attorney's Manual section 9-2.031 - Dual and Successive Prosecution Policy ("Petite Policy").  Here, the case is clearly based on the same act as that of the state prosecution.  Further, even though there is a substantial federal interest in prosecuting crime, Mr. Garcia-Zarate was convicted of the exact offense for which he is being prosecuted *and* he received the maximum sentence of three years in California State Court.  Further, there is a federal warrant for Mr. Garcia-Zarate out of Texas which exposes him to time in federal prison and deportation thereafter.

The true federal interest in pursuing this prosecution is to punish and make an example out of Mr. Garcia-Zarate for his high-profile acquittal in state court.  This prosecution seeks to demonstrate to any high-profile defendant, especially one that is an undocumented immigrant, that their successful exercise of due process rights will not be respected and will result in the heavy hammer of a federal prosecution.

C.    *That This Case is in a Different Sovereign Does Not Preclude the Finding that the Prosecution is Vindictive.*

Although the charges in this case are brought forth by a different sovereign than the original trial, that, in and of itself, does not negate the vindictive nature of this prosecution.  In *Jenkins*, *supra*, the Ninth Circuit explained that while cases have held that "the mere filing of a second, unrelated charge after a first charge does not give rise to a presumption of vindictiveness," it does not mean that "a presumption of vindictiveness can *never* arise when the second charge is unrelated to the first." *United States v. Jenkins*, 504 F. 3d at 701.  Similarly, while courts have held that the prosecution by a different sovereign tends to negate vindictiveness, they have refused to hold that

1   vindictiveness can never be found in such a case.  *See United States v. Robison*, 644 F. 2d 1270,

2   1272 (9th Cir. 1980); *United States v. Burt*, 619 F2d 831, 836 (9th Cir. 1980).

3   Notably, in *Burt,* the court analyzed the case "assuming that vindictive prosecution could apply"

4   and found that the federal prosecution, though occurring after the defendants had asserted their right

5   to challenge a search, had been decided upon prior to the assertion of those rights.  *Burt,* 619 F 2d at

6   837.

7      D.    *Compelling the Government to Produce Discovery is Appropriate in this Case.*

8   In *United States v. Adams*, the defendant was charged with numerous IRS violations after she

9   filed suit against her previous employer, the EEOC.  *United States v. Adams,* 870 F.2d 1140 (6th

10  Cir. 1989).  The defendant sought discovery regarding the "background of the investigation and

11  instigation of criminal charges" against her and her co-defendant and ultimately expected a

12  dismissal of the case as "having been brought in retaliation" of her lawsuit.  *Id*. at 1143-1144.  The

13  record showed that the charges brought against the defendant were rarely brought for the type of

14  conduct alleged; evidence through affidavits showed that the IRS wanted to indict her for anything

15  and that no indictment would have come down had the lawsuit not been filed.  *Id*. at 1144.

16  The Court of Appeals in the Sixth Circuit explained that while it did not know "[w]hether the

17  power to prosecute was misused in this case . . . where there has been a *prima facie* showing of a

18  realistic likelihood of vindictiveness, it is incumbent upon the district court to conduct an

19  evidentiary hearing where the government's explanations can be formally presented and tested."

20  *Id.*at 1145 (citations omitted).  Further, "a criminal defendant may . . . be entitled to discovery on

21  the issue of selective prosecution if he introduces some evidence tending to show the existence of

22  the essential elements of the defense."  *Id*. (citations omitted).  The Court concluded that "some

23  evidence" of vindictiveness was presented and it was difficult to see how the defendants could

24  prove any more without the benefit of discovery.  *Id*.

25  Similarly, here, Mr. Garcia Zarate has presented ample evidence of the vindictive nature of the

26  prosecution.  He is being charged with the exact same conduct for which he was convicted in state

27  court and received the maximum penalty.  The attention to this case by the President (even before

28  he came into office), the use of this case as a tool to propagate a border wall and fear of

undocumented immigrants, the timing of the indictment, the rhetoric of the President, Attorney General, and the spokeswoman for the Department of Justice regarding the verdict and the subsequent federal investigation as to which charges can be filed against Mr. Garcia-Zarate indicated a vindictive motive for pursuing this prosecution.   However, the prosecution has declined to provide evidence of how it made its charging decision as to this case.

As Mr. Garcia-Zarate has demonstrated "some evidence" tending to show vindictive prosecution, he respectfully requests that this court grant his discovery request.


> *i.*     *Mr. Garcia-Zarate Has Made a Sufficient Showing of Collusion Such That the Prosecution Must Produce Discovery Related Thereto.*

It is true that as a general rule, "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each without offending the Double Jeopardy Clause." *United States v. Zone*, 403 F. 3d 1101, 1104 (9th Cir. 2004) citing *United States v. Lanza*, 260 U.S. 377, 382 (1922).  However, this dual-sovereignty rule has an exception: The Double Jeopardy Clause proscribes consecutive state and federal prosecutions in cases where federal authorities commandeer a state's prosecutorial machinery, converting the state prosecution into a "sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Id*. citing *Bartkus v. Illinois*, 359 U.S. 121 (1959). This "commandeering" involves more than cooperation, coordination, encouraging plea bargains, and taking advantage of an evidentiary record.  *Id*.   In other words, the Double Jeopardy Clause limits consecutive prosecution when "the federal prosecutors so thoroughly dominate or manipulate the state's prosecutorial machinery . . . that the latter retains little or no volition in its own proceedings." *Id*.  at 1105.

In *Zone,* state and federal law enforcement officials were working together to curb gun violence in Las Vegas. *Id*. at 1103.  The defendant was arrested on charges associated with carrying a concealed firearm; he entered a plea to a gross misdemeanor and was assessed a fine.  *Id*. Thereafter, the federal government charged him with a violation of 18 USC section 922(g)(1), felon in possession of a firearm, which carried a sentence of up to ten years imprisonment.  *Id*. The defendant suspected that the federal government orchestrated the plea proceedings to secure an

admission to use in federal court and asked for discovery from the law enforcement task force's meetings. *Id*. at 1104. Because his for discovery regarding the decision to prosecute was denied, the only evidence that he could produce were newspaper articles about the task force and its goals. *Id*. at 1106. Thus, his petition was denied.

In *United States v. Lucas*, the defendant was charged with being a felon in possession of a firearm in San Francisco; he was given "a two-year suspended sentence, one year in county jail, and three years of probation." *People v. Lucas,* 841 F.3d 796 (9th Cir, 2016). Two weeks prior to his discharge from jail, he was indicted federally of violating 18 USC 922(g)(1). *Id*. The prosecutor claimed that she had "obtained a *Petite* waiver and that the substantial federal interest was two-fold: the incident had taken place in a BART station, and Lucas had not received an adequate state sentence." *Id*. at 800. Similar to *Zone*, he included a newspaper article regarding San Francisco's initiative to refer gun prosecutions to the federal court. *Id*. The Court held that this case is so similar to *Zone* that the defendant failed to show that there was collusion or make the threshold showing of materiality in order to obtain discovery. *Id*. at 805.

Rule 16(a)(1)(E) requires that, upon a defendant's request, the government must "disclose any documents or other objects within its possession, custody or control" that are "material to preparing the defense." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)). "[T]o obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality." *Zone*, 403 F.3d at 1107 (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)). This "low threshold" is satisfied if the information requested would have "helped" the defendant prepare a defense. *Hernandez-Meza*, 720 F.3d at 768. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the [g]overnment is in possession of information helpful to the defense." *Mandel*, 914 F.2d at 1219.

Two key cases applying this standard are *Zone* and *Lucas*, discussed above. The Ninth Circuit found the relevant facts in these two cases to be nearly identical. Both involved defendants who pleaded guilty in state court to a charge of being a felon in possession of a firearm, both were subsequently prosecuted for 18 USC Section 922(g)(1) in federal court for the same conduct, and

both were in jurisdictions which had a joint federal/state program to curb gun violence. Both cases included dispositions that were not the maximum penalty under the law. Both offered as evidence of collusion, the above facts and provided supportive newspaper articles.  Additionally, Lucas offered a declaration describing the rarity of the consecutive prosecution, the timing of the federal charges coming at the end the defendant's state sentence, as well as the weak federal interest in a consecutive prosecution. The Ninth Circuit found both of these showings insufficient.

Here, the showing is markedly more significant.  Here, we have all the factors present in *Zone* and *Lucas* as well as the compelling additional factors.  For example, the public statements made by the President, the Attorney General and the spokeswoman for the Department of Justice prior to and after the trial trumpet their desire to vilify and severely  punish the defendant and malign San Francisco, a sanctuary city.

Further, there is no legitimate federal interest in prosecuting this case in federal court after Mr. Garcia-Zarate has already been convicted and sentenced to the maximum sentence. While the federal government always has an interest in law enforcement, in this case, Mr. Garcia-Zarate received the maximum punishment under California law for the felony conviction of possession of a firearm by a felon.  Unlike in *Zone* and *Lucas* where the defendants received leeway in sentencing, Mr. Garcia-Zarate served the entirety of his sentence.

Notably, by policy, "in general, the Department will presume that a prior prosecution, regardless of result, has vindicated the relevant federal interest."  *See* U.S. DOJ Manual section 9.2031(D).

> The presumption may be overcome even when a conviction was achieved in the prior prosecution in the following circumstances: first, if the prior sentence was manifestly inadequate in light of the federal interest involved and a substantially enhanced sentence—including forfeiture and restitution as well as imprisonment and fines—is available through the contemplated federal prosecution, or second, if the choice of charges, or the determination of guilt, or the severity of sentence in the prior prosecution was affected by the sorts of factors listed in the previous paragraph. *An example might be a case in which the charges in the initial prosecution trivialized the seriousness of the contemplated federal offense, for example, a state prosecution for assault and battery in a case involving the murder of a federal official.*
>
> *Id*.

This was not the case here. First, as mentioned above, the Department of Justice's general policy is to not relitigate state prosecutions. Even though the maximum penalty in California is less severe than the federal government, it would be violative of that policy and judicial and prosecutorial efficiency to pursue every crime wherein the defendant is exposed to more prison time by virtue of the jurisdiction in which he is prosecuted. Moreover, as highlighted in the example of the above paragraph, the felon in possession of a firearm charge accompanied very serious charges and was zealously prosecuted to the fullest extent of the law.

Further, the federal government, including an Assistant US Attorney and an attorney for the Department of Interior were involved in the trial. The AUSA represented Ranger Woychowski during his testimony and it was clear that both the AUSA, the Department of Interior Attorney and the San Francisco prosecutor attempted to shield the Ranger from any blame so as to protect the federal government from liability and to justify the rhetoric of the President and Attorney General.

<em>ii.   The Discovery Sought is Mandated by the U.S. Constitution and the Federal Rules of Criminal Procedure.</em>

In addition to the specific requirements having been met for compelling discovery related to a vindictive prosecution and collusion claims discussed above, the following rules lend further support for ordering the requested disclosures be made in this case where material and relevant to the preparation of defendant's motions to dismiss.

<em>a.   Fifth Amendment Right to Due Process</em>

The Due Process Clause imposes a duty on the prosecution to disclose any information favorable to the accused that is within its possession and material to the case. *Brady,* 373 U.S. 83, 87 (1963). Impeachment, as well as exculpatory evidence, falls within *Brady's* definition. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

As enunciated by the United States Supreme Court in *Giles v. Maryland* (1967) 386 U.S. 66, 98:

> The State's obligation is not to convict, but to see that, so far as possible, truth emerges. This is also the ultimate statement of its responsibility to provide a fair trial under the Due Process Clause of the Fourteenth Amendment. No respectable interest of the State is served by its concealment of information which is material, generously conceived, to the case, including all possible defenses.

Materiality of information required to be disclosed has been defined as that in which there is reasonable probability had evidence been disclosed the result of the proceeding would have been different. *See, e.g., United States v. Bagley*, 473 U.S. 667 (1985).

The production of information helpful to the defendant must be produced "at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case[.]" *See, e.g., United States v. Pollock*, 534 F.2d 964, 973 (D.C. Cir. 1974), *cert. denied,* 429 U.S. 924 (1974).

In *United States v. Agurs*, 427 U.S. 97, 108 (1976), the Supreme Court addressed the scope of disclosure, expressly admonishing as follows that any errors should be made on the side of disclosure:

> Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor [or court] will resolve doubtful questions in favor of disclosure.

*see also United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976), *cert. denied*, 426 US. 924 (1976) ("disclosure of evidence that in *any* way may be exculpatory" is required) (emphasis in original).

Therefore, if the exculpatory nature of the evidence is doubtful, the prosecution should turn over its files to the court for a *Brady* inspection. *United States v. Price*, 566 F.3d 900, 913, n. 14 (9th Cir. 2009) ("if doubt exits, it should be resolved in favor of the defendant and full disclosure made ... even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence"); *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984).

In the context of the anticipated motion to dismiss in the case at bar, Mr. Garcia-Zarate contends the requested information is exculpatory in the sense that it would tend to defeat the Indictment, resulting in dismissing this case. The Government should therefore be required to produce, under *Brady*, all information and documents favorable to the him within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government relevant to Mr. Garcia-Zarate's vindictive prosecution and collusion claims.

b.      *Sixth Amendment Right to Effective Assistance of Counsel*

The right to counsel under the Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. Duties of effective assistance of counsel include, to investigate and prepare available defenses, including, preparing and litigating motions. Denial of the requested discovery would further deny Mr. Garcia-Zarate his constitutional right to fundamental fairness because it would diminish their counsels' effectiveness in preparing the motion to dismiss and to cross-examine witnesses that may be called to testify at an evidentiary hearing. *See, e.g., Napue v. Illinois* (1959) 360 U.S. 264, 269.

c.      *Federal Rules of Criminal Procedure, Rule 16*

The Federal Rules of Criminal Procedure constitute a procedural code for criminal cases in federal courts which provides this Court with discretion in discovery matters. The purpose of these Rules is codified in Rule 2:

> These rules are intended to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and the elimination of unjustifiable expense and delay.

Full and timely pretrial discovery significantly contributes to these goals.

Under Federal Rule of Criminal Procedure, Rule 16(a)(1)(E)(I), a defendant is entitled to discover of documents which are "within the government's possession, custody, or control" and "material to preparing the defense." "Evidence is 'material' under Rule 16 if it is helpful to the development of a possible defense." *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012) (citation omitted).

Where a defendant has made a sufficient threshold "prima facie" showing the discovery sought will support a basis for a motion to dismiss, the materiality prong under Rule 16 is met. *See e.g.*, *United States v. Zone*, 403 F.3d 1101, 1107 (9th Cir 2005); *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (A *prima facie* showing of materiality required, including presentation of facts "which would tend to show that the Government is in possession of information helpful to the defense.") (citations omitted).

*Garcia-Zarate Motion to Compel Discovery for Vindictive Prosecution and Violation of Double Jeopardy*

As shown herein, Mr. Garcia-Zarate has made a threshold showing of materiality, including a basis for his good-faith belief that the requested items of discovery are material in that they will bolster a showing of vindictive prosecution and collusion which could result in a dismissal of the Indictment in this case.

## **CONCLUSION**

Mr. Garcia-Zarate has made the *prima facie* showing that the prosecution against him is vindictive and a result of collusion between the federal and state governments. However, without further discovery, he is greatly limited in his ability to prove these claims.  Thus, Mr. Garcia-Zarate respectfully asks this court to grant this motion and compel the government to disclose the requested discovery.

Dated: March 13, 2018                                  Respectfully submitted,

                                           _/s/ *J. Tony Serra*_____
                                           J. TONY SERRA
                                           MARIA BELYI
                                           Attorneys for Defendant
                                           JOSE INEZ GARCIA-ZARATE