1  ALEX G. TSE (CABN 152348)
   Acting United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  SHIAO C. LEE (CABN 257413)
   HALLIE M. HOFFMAN (CABN 210020)
5  Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-6924
         FAX: (415) 436-7234
8        shiao.lee@usdoj.gov

9  Attorneys for United States of America

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,            )   CASE NO. CR 17-609 VC
                                         )
15          Plaintiff,                   )
                                         )
16     v.                                )   **UNITED STATES' RESPONSE TO**
                                         )   **DEFENDANT'S MOTION TO COMPEL**
17  JOSE INEZ GARCIA-ZARATE, a/k/a Juan  )   **DISCOVERY AND MOTION TO DISMISS**
    Jose Dominguez De La Parra, a/k/a Jose Luis )   **COUNT 1 OR COUNT 2 OF INDICTMENT**
18  Garcia Sanchez, a/k/a Juan Garcia Sanchez, )
    a/k/a Juan Francisco Lopez-Sanchez,  )   **Re: Dkt. Nos. 6 & 8**
19                                       )
            Defendant.                   )
20  _____  )

21

22

23

24

25

26

27

28

U.S. RESPONSE TO DEF.'S MOT. TO COMPEL DISCOVERY & MOT. TO DISMISS
CR 17-609 VC

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   FACTS ................................................................................................................3

      A.    May 2011: Garcia-Zarate is federally convicted in Texas...................................3

      B.    March 2015: Garcia-Zarate is transferred to state custody in San Francisco,
            then released.........................................................................................................3

      C.    July 2015: Garcia-Zarate illegally possesses a firearm, killing Kathryn Steinle.................4

      D.    November 2017: Garcia-Zarate is acquitted of state murder and assault
            charges but convicted of a state gun charge...............................................................4

      E.    December 2017: A federal grand jury indicts Garcia-Zarate...............................4

      F.    January 2018: The state court sentences Garcia-Zarate to time served ...................5

III.  BECAUSE GARCIA-ZARATE HAS FAILED TO MAKE A *PRIMA FACIE*
      SHOWING OF COLLUSION OR VINDICTIVENESS, THE COURT SHOULD DENY HIS
      DISCOVERY MOTION..........................................................................................5

      A.    The dual-sovereignty doctrine permits this prosecution ...................................5

      B.    Garcia-Zarate has failed to make a *prima facie* showing of "collusion" ...........6

      C.    Garcia-Zarate has failed to make a *prima facie* showing of vindictiveness ...........12

      D.    Garcia-Zarate is not entitled to an evidentiary hearing.....................................16

IV.   THE INDICTMENT IS NOT MULTIPLICITOUS ...........................................17

V.    CONCLUSION....................................................................................................20

1

# TABLE OF AUTHORITIES

2

## Federal Cases

*Abbate v. United States*, 359 U.S. 187 (1959) ............................................................ 6

*Albernaz v. United States*, 450 U.S. 333 (1981) ....................................................... 18

*Bartkus v. Illinois*, 359 U.S. 121 (1959) ............................................................ 5, 6, 7

*Blackledge v. Perry*, 417 U.S. 21 (1974) ................................................................. 14

*Blockburger v. United States*, 284 U.S. 299 (1932) .............................................. 17, 18

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) .......................................................... 12

*Heath v. Alabama*, 474 U.S. 82 (1985) ................................................................... 11

*Iannelli v. United States*, 420 U.S. 770 (1975) ........................................................ 18

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ............................................................... 13

*Moore v. Illinois*, 55 U.S. 13 (1852) ........................................................................ 5

*Nunes v. Ramirez-Palmer*, 485 F.3d 432 (9th Cir. 2007) ........................................... 13

*Petite v. United States*, 361 U.S. 529 (1960) ............................................................. 6

*Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863 (2016) ............................................... 5

*Rinaldi v. United States*, 434 U.S. 22, (1977) .......................................................... 6

*Touhy v. Ragan*, 340 U.S. 462 (1951) ..................................................................... 10

*United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989) ........................................ 16, 17

*United States v. Allen*, 699 F.2d 453 (9th Cir. 1982) ............................................... 15

*United States v. Armstrong*, 517 U.S. 456 (1996) .................................................... 12

*United States v. Awad*, 551 F.3d 930 (9th Cir. 2009) ............................................... 17

*United States v. Ballester*, 763 F.2d 368 (9th Cir. 1985) .......................................... 14

*United States v. Bernhardt*, 831 F.2d 181 (9th Cir. 1987) .................................... 11, 15

*United States v. Bloch*, 718 F.3d 638 (7th Cir. 2013) ............................................... 18

1   *United States v. Burt*, 619 F.2d 831 (9th Cir. 1980) .......................................................... 5, 6, 14

2   *United States v. Curling*, 312 F. App'x 293 (11th Cir. 2009)............................................... 20

3   *United States v. DeMarco*, 550 F.2d 1224 (9th Cir. 1977)...................................................... 14

4   *United States v. Esposito*, 968 F.2d 300 (3d Cir. 1992)............................................................ 15

5   *United States v. Figueroa-Soto*, 938 F.2d 1015 (9th Cir. 1991)............................................. 7, 8

6   *United States v. Gallegos-Curiel*, 681 F.2d 1164 (9th Cir. 1982) ..................................... 12, 15

7   *United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000) ......................................... 13, 16

8   *United States v. Garlick*, 240 F.3d 789 (9th Cir. 2001) .......................................................... 17

9   *United States v. Goodwin*, 457 U.S. 368 (1982) ......................................................... 12, 13, 16

10  *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ........................................................ 20

11  *United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990) ...................................................... 14

12  *United States v. Hooton*, 662 F.2d 628 (9th Cir. 1981) ........................................................... 17

13  *United States v. Johnson*, 91 F.3d 695 (5th Cir. 1996)............................................................ 15

14  *United States v. Johnson*, 130 F.3d 1420 (10th Cir. 1997) ..................................................... 18

15  *United States v. Keen*, 104 F.3d 1111 (9th Cir. 1996) ............................................................ 18

16  *United States v. Kent*, 649 F.3d 906 (9th Cir. 2011)............................................................... 12

17  *United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994).............................................................. 7, 8

18  *United States v. Lanza*, 260 U.S. 377 (1922)........................................................................... 5

19  *United States v. Lucas*, 841 F.3d 796 (9th Cir. 2016)..................................................... passim

20  *United States v. Montoya*, 45 F.3d 1286 (9th Cir. 1995) ........................................................ 13

21  *United States v. Ng*, 699 F.2d 63 (2d Cir. 1983)..................................................................... 14

22  *United States v. One 1985 Mercedes*, 917 F.2d 415 (9th Cir. 1990) ................................. 12, 16

23  *United States v. Overton*, 573 F.3d 679 (9th Cir. 2009) ......................................................... 18

24  *United States v. Richardson*, 439 F.3d 421 (8th Cir. 2006)..................................................... 18

*United States v. Robison*, 644 F.2d 1270 (9th Cir. 1981) ................................................ 13, 14, 16

*United States v. Schoolcraft*, 879 F.2d 64 (3d Cir. 1989) ................................................ 14

*United States v. Shea*, 211 F.3d 658 (1st Cir. 2000) ................................................ 18

*United States v. Snell*, 592 F.2d 1083 (9th Cir. 1979) ................................................ 6

*United States v. Spears*, 159 F.3d 1081 (7th Cir. 1998) ................................................ 14

*United States v. Stokes*, 124 F.3d 39 (1st Cir. 1997) ................................................ 14, 15

*United States v. Throneburg*, 921 F.2d 654 (6th Cir. 1990) ................................................ 18

*United States v. Zone*, 403 F.3d 1101 (9th Cir. 2005) ................................................ 3, 5, 7, 10

**Federal Statutes**

8 U.S.C. § 1326 ................................................ 3

18 U.S.C. § 922(g) ................................................ 18, 19

18 U.S.C. § 922(g)(1) ................................................ 4, 18, 20

18 U.S.C. § 922(g)(5) ................................................ 4, 18, 20

**State Statutes**

Cal. Penal Code § 190 ................................................ 11

Cal. Penal Code § 29800 ................................................ 4, 5

Cal. Penal Code § 29800(a)(1) ................................................ 4

**Federal Rules**

Fed. R. Crim. P. 16(a)(2) ................................................ 2

Fed. R. Crim. P. 12(b)(3)(B)(ii) ................................................ 20

**Federal Regulations**

43 C.F.R. §§ 2.280-2.290...................................................................................................... 10

1    **I.     INTRODUCTION**

2         Defendant Jose Garcia-Zarate filed two pre-trial motions: (1) to compel discovery pertaining to

3    his claims of vindictive prosecution and collusion, Dkt. No. 8, and (2) to dismiss Count One or Count

4    Two of the indictment, Dkt. No. 6.  The Court should deny both motions.   The requested material is not

5    discoverable as the defendant fails to make a *prima facie* showing of collusion or vindictiveness, and the

6    indictment is not multiplicitous because the two counts charge different offenses each requiring the

7    government to prove a distinct element.

8         In his motion to compel the government to produce discovery pertaining to his claims of

9    vindictive prosecution and collusion, the defendant seeks:

10         A. Any and all documentation, whether through email communication,
11         memoranda, oral statements memorialized and not memorialized, notes,
          letters, or any other method of communication of contact between a United
12         States Federal Agency (including, but not limited to, Department of Justice,
          United States Attorney's Office, United States Attorney General's Office,
13         United States President, FBI, U.S. Marshal, USCIS, ICE) with San
          Francisco Law Enforcement (including, but not limited to, the San
14         Francisco District Attorney's Office, San Francisco Police Department, San
          Francisco Sheriff's Office) regarding the case of People v. Jose Ines Garcia
15         Zarate, San Francisco case number 15014736. This request includes
16         communication from July 2015 through December 31, 2017.

17         B. A report of all instances in which the San Francisco law enforcement
          (including the San Francisco District Attorney's Office, the San Francisco
18         Police Department, the San Francisco Sheriff's Office) was assisted by a
          federal law enforcement agency or other agency of the federal government
19         (including, but not limited to, Department of Justice, United States
          Attorney's Office, Untied States Attorney General's Office, United States
20         President, FBI, US Marshal, USCIS, ICE) in the case of People v. Jose Ines
          Garcia Zarate, San Francisco case number 15014736. Assistance includes
21         assistance in investigation of Mr. Garcia-Zarate's background, assistance in
22         the investigation of the case, assistance in case strategy and charging
          decisions, and any other collaboration or assistances. We request all
23         evidence of such assistance, including the communication in all forms
          between these agencies (including email, text, written communication, and
24         oral communication) and any other evidence of such assistance, such as
25         documents. We also request the names and positions of all parties involved
          in the collaboration.
26
27         C. Any and all communication directing the U.S. Attorney's Office to
          convene a grand jury in this case. This would include directives from the
28         United States Attorney General's Office and any and all communication

between the United States President's Office or the United States Executive Branch with the United States Attorney General's Office.

D. All discovery materials pertaining to the Bureau of Land Management (BLM), the FBI, and DOJ, its investigators, experts, and attorneys as well as the attorneys with the BLM and DOJ present in court and at counsel table during any part of the state trial. This should include reports, memoranda, oral statements memorialized and not memorialized, intra-agency communications (including communications with the San Francisco Police Department, Sheriff's Office, and the Office of the District Attorney).

E. Names of FBI experts who were noticed to testify in the trial which took place in the San Francisco Superior Court but did not. Please include the roles they played in the investigation and their anticipated testimony.

F. Any and all discovery including reports, memoranda, analyses, and examinations by FBI and other federal experts who worked with SFPD on the audio/video evidence.

Dkt. No. 8 at 6-7.

As a preliminary matter, the government has produced thousands of pages of discovery, as well as numerous audio and video files, to Garcia-Zarate, which comprise all the discoverable material in the United States' possession – except a few files that require technical assistance to produce in a proper format. As the government has informed Garcia-Zarate, it has complied with, and will continue to comply with, its discovery obligations under Federal Rules of Criminal Procedure 16 ("Rule 16") and *Brady*.

With respect to the specific discovery requests above (A-F), the requests are overbroad and the material requested either does not exist or is not discoverable. Contrary to Garcia-Zarate's claim, the law does not authorize the discovery of such material under either Rule 16 or *Brady*. Generally, Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). And *Brady* is a self-executing obligation imposed on the prosecutor. Absent a showing of materiality or demonstration that the government has withheld favorable evidence, defendants must rely on prosecutors' disclosure decisions. *See United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016). Here, the government knows of no *Brady*

material, but if any is discovered the government will promptly produce it to Garcia-Zarate.

In demanding the above materials, Garcia-Zarate relies on two theories, both meritless.  He claims the requested discovery will support his theory of federal-state collusion and federal vindictive prosecution, and will thus form the basis for a future motion to dismiss the indictment on double-jeopardy or due-process grounds.  But Garcia-Zarate bears the burden of making a *prima facie* showing of collusion or vindictiveness before he can obtain discovery.  *See Lucas*, 841 F.3d at 807; *United States v. Zone*, 403 F.3d 1101, 1105 (9th Cir. 2005).  Because he has fallen far short of making that showing, the Court should deny his discovery motion.

The Court should also deny Garcia-Zarate's motion to dismiss Count 1 or Count 2 of the indictment on multiplicity grounds.  The indictment is not multiplicitous.  The two counts charge different offenses; each count requires the government to prove a distinct element.  As discussed in Part IV, below, if Garcia-Zarate is convicted on both counts, the Court should merge the convictions at the time of sentencing.

## II.    FACTS

### A.    May 2011: Garcia-Zarate is federally convicted in Texas

On May 12, 2011, Garcia-Zarate was convicted in the Western District of Texas of illegal reentry after deportation, under 8 U.S.C. § 1326.  The district court sentenced Garcia-Zarate to 46 months' imprisonment and three years' supervised release.

### B.    March 2015: Garcia-Zarate is transferred to state custody in San Francisco, then released

On March 26, 2015, upon completion of his term of imprisonment, the Bureau of Prisons released Garcia-Zarate to the custody of the Immigration and Customs Enforcement (ICE).  On that same day, ICE transferred Garcia-Zarate to the custody of the San Francisco Sheriff's Department based on an outstanding state felony arrest warrant from a 1995 charge for transport or sale of a controlled substance.  The next day, on March 27, 2015, the San Francisco's District Attorney's Office dismissed that charge, and the San Francisco Sheriff's Office later released Garcia-Zarate without notifying ICE,

1  despite an active ICE detainer.

2      **C.      July 2015: Garcia-Zarate illegally possesses a firearm, killing Kathryn Steinle**

3      After his release by local authorities, Garcia-Zarate remained in San Francisco.  On July 1, 2015,

4  he was on Pier 14 on the Embarcadero.  Also on the pier were 31-year-old Kathryn Steinle, her father

5  James Steinle, and Frances "Kaye" Williams, a family friend.  The three were sightseeing.  At

6  approximately 6:30 pm, Garcia-Zarate possessed and fired a .40 caliber Sig Sauer P239 semiautomatic

7  pistol.  The bullet fired by Garcia-Zarate hit Kathryn Steinle in the back and killed her.

8      At the time of the shooting, Garcia-Zarate was a felon, with no lawful status in the United States,

9  and was on federal supervised release from the 2011 Texas conviction.  Garcia-Zarate's criminal history

10  stretches back to 1991 and includes multiple prior felony convictions—including three prior federal

11  convictions for illegal reentry following deportation and various drug crimes.  Garcia-Zarate obtained

12  prior convictions in Arizona, Washington, Oregon, New Mexico, and Texas.

13      **D.      November 2017: Garcia-Zarate is acquitted of state murder and assault charges but**
          **convicted of a state gun charge**

14      After the July 2015 shooting, the San Francisco District Attorney's Office charged Garcia-Zarate

15  with murder, possession of a firearm by a felon, and assault with a semiautomatic firearm.  He was

16  detained during the pendency of the state prosecution.  The jury returned a verdict on November 30,

17  2017, finding Garcia-Zarate not guilty of murder, manslaughter, or assault charges, but convicting him

18  of the state felon-in-possession charge (Cal. Penal Code § 29800).[1]

19      **E.      December 2017: A federal grand jury indicts Garcia-Zarate**

20      On December 5, 2017, a federal grand jury returned an indictment charging Garcia-Zarate with

21  one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one

22  count of being an alien unlawfully present in the United States in possession of a firearm, in violation of

23  18 U.S.C. § 922(g)(5).  Before indicting Garcia-Zarate, the United States Attorney's Office followed

24  established internal Department of Justice guidelines for successive prosecutions and obtained approval

25  from the Office of Enforcement Operations, United States Department of Justice, Criminal Division, to

26

27  _____
[1]  California's statute provides in pertinent part that "[a]ny person who has been convicted of, or has an
outstanding warrant for, a felony under the laws of the United States, the State of California, or any
28  other state, government, or country . . . and who owns, purchases, receives, or has in possession or under
custody or control any firearm is guilty of a felony."  Cal. Penal Code § 29800(a)(1).

1   bring this successive prosecution.  *See United States v. Lucas*, 841 F.3d 796, 800 (9th Cir. 2016)

2   (describing the Department of Justice's "*Petite* Policy").

3     **F.**  **January 2018: The state court sentences Garcia-Zarate to time served**

4     On January 5, 2018, Garcia-Zarate was sentenced in state court to three years in prison

5   (California's statutory maximum for a violation of Penal Code § 29800), which amounted to a sentence

6   of time served.  Garcia-Zarate was then transferred from state custody to federal custody and arraigned

7   on the present charges on January 8, 2018.  Dkt. No. 3.

8                   * * *

9     Garcia-Zarate seeks discovery to support two claims: (1) that the federal government colluded

10   with the state in the state's prosecution and (2) that the federal government is now vindictively

11   prosecuting him for exercising his right to go to trial in the state case or for obtaining acquittals on the

12   most serious state charges.  In addition to his discovery motion, Garcia-Zarate has moved to dismiss

13   either Count One or Two in the indictment on multiplicity grounds.   Garcia-Zarate's motions are

14   meritless, and this Court should deny them both.

15   **III.**  **BECAUSE GARCIA-ZARATE HAS FAILED TO MAKE A *PRIMA FACIE* SHOWING**
16      **OF COLLUSION OR VINDICTIVENESS, THE COURT SHOULD DENY HIS**
   **DISCOVERY MOTION**

17     **A.**  **The dual-sovereignty doctrine permits this prosecution**

18     Garcia-Zarate does not and cannot dispute that state and federal governments may prosecute

19   similar conduct, and that such successive prosecutions generally do not violate double jeopardy.  It is

20   blackletter law that an act denounced as a crime by separate sovereigns is an offense against both.

21   *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870 (2016); *Bartkus v. Illinois*, 359 U.S. 121, 131

22   (1959); *United States v. Lanza*, 260 U.S. 377, 382 (1922); *Moore v. Illinois*, 55 U.S. 13, 19-20 (1852);

23   *Lucas*, 841 F.3d at 803; *Zone*, 403 F.3d at 1104.  It "cannot be doubted" that "either or both" of the two

24   sovereigns "may (if they see fit) punish such an offender." *Bartkus*, 359 U.S. at 131 (quoting *Moore*, 55

25   U.S. at 20) (internal quotation marks omitted).  Under such circumstances, the offender has not "been

26   twice punished for the same offence"; instead, "by one act he has committed two offences, for each of

27   which he is justly punishable." *Moore*, 55 U.S. at 20.  "It must be remembered that 'a federal

28   prosecution is not barred by a prior state prosecution of the same person for the same acts.'" *United*

1   *States v. Burt*, 619 F.2d 831, 837 (9th Cir. 1980) (quoting *Abbate v. United States*, 359 U.S. 187, 194

2   (1959)).

3          Thus, Garcia-Zarate's illegal possession of a firearm is "an offence or transgression of the laws

4   of both" California and the United States, and he "[cannot] plead the punishment by one in bar to a

5   conviction by the other." *Id.*; *see Bartkus*, 359 U.S. at 131.  Garcia-Zarate's state conviction under

6   California's felon-in-possession law therefore does not bar his federal prosecution here because he also

7   committed an offense against the laws of the United States.  Because the federal government and the

8   states sometimes prosecute the same offender for the same or similar conduct, the Justice Department

9   has established the *Petite* policy, which "establishes guidelines for the exercise of discretion by

10  appropriate officers of the Department of Justice in determining whether to bring a federal prosecution

11  based on substantially the same act(s) or transactions involved in a prior state or federal proceeding."

12  United States Attorney's Manual ("USAM") § 9-2.031(A), https://www.justice.gov/usam/usam-9-2000-

13  authority-us-attorney-criminal-division-mattersprior-approvals#9-2.031 (citing *Rinaldi v. United States*,

14  434 U.S. 22, 27, (1977); *Petite v. United States*, 361 U.S. 529 (1960)).  The *Petite* policy "has been

15  promulgated solely for the purpose of internal Department of Justice guidance" and does not confer

16  substantive rights on litigants.  USAM § 9-2.031(F) (noting that "[a]ll of the federal circuit courts that

17  have considered the question have held that a criminal defendant can not invoke the Department's policy

18  as a bar to federal prosecution").  Even when the government violates its *Petite* policy, defendants are

19  not entitled to relief.  *United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979).

20         At any rate, contrary to Garcia-Zarate's false claim that "this prosecution is in violation of" the

21  *Petite* policy (Dkt. No. 8 at 12), here the government has fully complied with the *Petite* policy and all

22  other internal policies and procedures of the Department of Justice.  This prosecution accords with the

23  dual sovereign doctrine and with internal Department of Justice policy.

24         **B.    Garcia-Zarate has failed to make a *prima facie* showing of "collusion"**

25         Garcia-Zarate seeks discovery based on the rare "collusion" exception to the dual-sovereignty

26  rule.  In *Bartkus*, 359 U.S. at 136, the Supreme Court held that a successive state court prosecution did

27  not deprive the defendant of due process.  But *Bartkus* recognized, in dicta, that "the Double Jeopardy

28  Clause might proscribe consecutive state and federal prosecutions in cases where federal authorities

commandeer a state's prosecutorial machinery, converting the state prosecution into 'a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.'" *Zone*, 403 F.3d at 1104 (quoting *Bartkus*, 359 U.S. at 123-24). Such collusion occurs, however, only when "federal prosecutors so thoroughly dominate or manipulate the state's prosecutorial machinery that the latter retains little or no volition in its own proceedings." *Zone*, 403 F.3d at 1105 (internal quotation marks and citation omitted).

The Ninth Circuit has recognized that, under *Bartkus*, "'it is extremely difficult and highly unusual' for a defendant to show that a prosecution by one government was a 'tool, a sham or a cover for the other government.'" *Lucas*, 841 F.3d at 803 (quoting *United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991)). A defendant's burden to fit the *Bartkus* exception is "substantial," and he "must demonstrate that the state officials had little or no independent volition in the state proceedings." *Zone*, 403 F.3d at 1105 (internal quotation marks and citation omitted). And to be entitled to an evidentiary hearing to pursue such a claim, a defendant must present evidence of undue coercion or collusion; conclusory allegations will not suffice. *Id.* at 1106; *see Lucas*, 841 F.3d at 804; *Koon*, 34 F.3d 1416, 1439 (9th Cir. 1994), *rev'd in part on other ground*, 518 U.S. 81 (1996). The defendant bears the burden of producing evidence tending to prove collusion. *Zone*, 403 F.3d at 1105.

"Cooperation is constitutional," *Lucas*, 841 F.3d at 803, and the Double Jeopardy Clause allows even for close cooperation and coordination between state and federal authorities. For example, federal prosecutors may encourage their state counterparts to pursue plea bargains, and may take advantage of the evidentiary record developed in connection with a defendant's previous state conviction. *Zone*, 403 F.3d at 1104. Likewise, agents of one sovereign can help the other, and separate sovereigns may sequence proceedings in state and federal courts so that "maximum assistance is mutually rendered." *Figueroa-Soto*, 938 F.2d at 1020. None of that constitutes "[i]mpermissible collusion." *Lucas*, 841 F.3d at 804.

As Ninth Circuit precedent demonstrates, it is exceedingly difficult for a defendant to carry his burden and "show that a prosecution by one government was a tool, a sham or a cover for the other government." *Lucas*, 841 F.3d at 803 (internal quotation marks omitted). In *Figueroa-Soto*, for example, the Ninth Circuit found no "collusion" even though:

(1) the state prosecuted the defendant at the request of federal authorities; (2) federal agents assisted with the state prosecution, sitting at the prosecutor's table at trial and testifying as witnesses; (3) the federal authorities provided evidence against the defendant for use during the state trial; (4) the federal sentencing hearing of a key witness was delayed until after the witness testified in the state trial against the defendant; (5) a federal forfeiture proceeding was delayed so the state prosecution would not be adversely affected; (6) federal agents contacted the state's witnesses before trial; and (7) the state prosecutor was cross-designated as a special assistant U.S. attorney to prosecute the defendant in federal court and was paid by the state for his role in the federal prosecution.

*Lucas*, 841 F.3d at 804 (citing *Figueroa-Soto*, 938 F.2d at 1018-19).  *Figueroa-Soto* held that such collaboration and coordination between different sovereigns was constitutional and did not amount "to one government being the other's 'tool' or providing a 'sham' or 'cover.'"  938 F.2d at 1020.

In *Koon*, 34 F.3d at 1439, the Ninth Circuit likewise found that the defendants failed to make a *prima facie* showing of collusion sufficient to warrant an evidentiary hearing, even though (1) the federal investigation began when the crime occurred and remained active during the state prosecution; (2) the state delivered evidence and investigative reports to federal authorities after the state prosecution; (3) the witnesses were interviewed by federal authorities soon after the incident; and (4) a recording of testimony in the state trial was admitted into evidence in the federal trial.  *Koon* held that the above factors "at most show[ed] cooperation between federal and state authorities," but not collusion.  *Id.*

The Ninth Circuit reached the same conclusion in *Lucas*, affirming Judge Edward M. Chen's ruling that the defendant had not make a *prima facie* showing of collusion, and that the defendant was therefore not entitled to discovery.  841 F.3d at 805-06.  The evidence proffered in *Lucas* included (1) a newspaper article describing cooperation between federal and state authorities on gun cases in San Francisco; (2) an affidavit from defense counsel on the "exceedingly rare" instances of a defendant being prosecuted federally after having completed a state sentence for the same conduct; (3) an argument that there was "weak" federal interest in the case; and (4) a claim that the close timing of federal prosecution following the state sentence evidenced collusion.  *Id.*  Addressing each factor in turn, the Ninth Circuit held that the news article described cooperation between federal and state authorities, not collusion; that an "unusual" prosecution was "not enough to meet the threshold for materiality"; that the "weakness" or strength of the federal interest was not for the Ninth Circuit to decide; and that there

1  was "nothing usual" about the timing of the federal prosecution that would warrant compelling further

2  discovery.  *Id.*

3  So too here.  Garcia-Zarate has not made the requisite *prima facie* showing of materiality

4  entitling him to the discovery he requests.  He relies on public statements made by then-candidate

5  Trump, President Trump, Attorney General Sessions, and a spokesperson for the Justice Department.

6  But none of those statements comes close to establishing *prima facie* collusion.  Garcia-Zarate proffers

7  no facts that suggest that California's prosecution was in fact a sham or cover for the federal

8  government, and that California was acting as a mere proxy for the federal government.  Indeed, the

9  tweets and statements that Garcia-Zarate cites are to the contrary.  Far from suggesting any federal-state

10  collusion, the cited comments indicate the independence of (and even policy disagreements between)

11  federal and state authorities.  *E.g.*, Dkt. No. 8 at 3 (citing statement from Attorney General Sessions

12  regarding "sanctuary city" policy); *Id.* at 3-4 (citing Justice Department spokesperson's comment after

13  state verdict that "[w]e are looking at pursuing federal charges in this case . . . and we will prosecute this

14  to the fullest extent available in the law").  Rather than supporting Garcia-Zarate's collusion theory, the

15  comments undermine it.  They highlight the state's independent prosecution of the case and the federal

16  government's separate interest, which the state prosecution did not vindicate.

17  Garcia-Zarate makes no showing that the federal government directed the state prosecution in

18  any manner, such as through the timing of the state charges, the identification of which state charges to

19  file, the conduct of the state preliminary hearing, the presentation of the state's evidence against Garcia-

20  Zarate, or the legal arguments raised by the state before the Superior Court.  Rather, in support of his

21  collusion theory, Garcia-Zarate merely proffers that the federal government participated in the state trial.

22  But such participation is entirely constitutional and not evidence of "collusion" under *Bartkus*.  Indeed,

23  the Ninth Circuit has emphasized "that *Bartkus* permits" even "*very close* coordination in the

24  prosecutions."  *Lucas*, 841 F.3d at 804 (emphasis added) (internal quotation marks omitted).

25  Here, if there was cooperation or coordination between federal and state authorities, it was not

26  "very close," let alone collusive.  Garcia-Zarate proffers that at the state trial, two attorneys from the

27  federal government sat at the prosecution table during Bureau of Land Management Ranger

28  Woychowski's testimony; that those attorneys appeared to assist the district attorney during the ranger's

1    testimony; and that the ranger purportedly entered through a "back door" to testify.  Decl. of Deputy

2    Public Defender Francisco Ugarte, Ex. H to Def.'s Mot. to Compel Discovery, Dkt. No. 9-1.  Even if

3    true, none of those proffered facts comes close to establishing a *prima facie* case of impermissible

4    collusion.  Neither of the attorneys from the federal government who attended the state trial were federal

5    criminal prosecutors; one was a Civil Division AUSA, and the other was a solicitor from the Department

6    of the Interior.  They have played no role in the federal criminal case.  And at the state trial, neither of

7    them represented the *criminal-prosecution interests* of the U.S. government.  Instead, they attended the

8    state trial to protect the *civil interests* of the Department of the Interior and Bureau of Land Management

9    in civil proceedings arising from Kathryn Steinle's death.[2]  Additionally, the solicitor from the

10   Department of the Interior attended to make sure the ranger's testimony was in compliance with agency

11   regulations governing the testimony of its employees.[3]

12          The other examples of purported collusion that Garcia-Zarate proffers are similarly unavailing.

13   If federal employees provided local law enforcement with surveillance video from a federal building,

14   *see* Dkt. No. 9-1 at 2, that is not evidence of collusion; on the contrary, such collaboration is

15   constitutional and desirable.  At most, Garcia-Zarate's proffered evidence suggests that separate

16   sovereigns may have assisted each other in the state criminal prosecution.  But again, such assistance is

17   not collusion.  Garcia-Zarate has proffered no facts showing that the federal government so thoroughly

18   "commandeer[ed]" the state's prosecution that California retained "little or no volition in its own

19   proceedings" and that the state prosecution was merely a "sham and a cover for a federal prosecution."

20   *Zone*, 403 F.3d at 1104-05.

21          On the contrary, the state, on its face, had its own strong and independent interest in prosecuting

22   Garcia-Zarate.  California's interest was derived from a state's core exercise of power concerning crimes

23

24   [2]  Kathryn Steinle's family sued the City of San Francisco and the federal government (including the
     Department of the Interior, the Bureau of Land Management, and ICE), alleging that Steinle's death
25   resulted from government negligence.  *Steinle v. United States*, 16-CV-2859 JCS, Dkt. No. 1
     (complaint) (N.D. Cal. May 27, 2016); *see id.*, Dkt. No. 48 (Jan. 6, 2017) (Judge Spero's order granting
26   City's motion to dismiss, and granting in part and denying in part United States' motion).

     [3]  *See Touhy v. Ragan*, 340 U.S. 462 (1951) (recognizing the authority of a federal agency to restrict the
27   testimony of its subordinates); 43 C.F.R. §§ 2.280-2.290 (describing the Department of the Interior's
     implementation of *Touhy* regulations); and United States Department of Interior Letter to State Defense
28   Counsel, Ex. A to Def. Mot. To Compel Discovery, Dkt. 8-7 (describing the Department's rules and
     regulations governing testimony of its employees).

1    against a person.  California charged Garcia-Zarate with murder, a crime punishable by life

2    imprisonment.  Cal. Penal Code § 190.  A state's just prosecution of homicides is perhaps its greatest

3    and most important exercise of power in criminal law.  That Garcia-Zarate fails to recognize California's

4    independent interest in its murder prosecution undermines his claim of collusion.

5         Furthermore, Garcia-Zarate's complaint about the timing of the federal indictment, suggesting

6    the timing of the indictment itself evidences collusion and bad faith by the federal prosecutors, similarly

7    fails.  Given the severity of the alleged criminal conduct by the state, and in recognition of the strong

8    state interest in its prosecution, the federal government appropriately deferred filing its charges until

9    after the jury reached a verdict in the state prosecution.  That decision does not evidence collusion –

10   rather it demonstrates sound exercise of prosecutorial discretion and efficient use of judicial resources.

11        Garcia-Zarate nevertheless argues there is "no legitimate federal interest" in this case since he

12   was already convicted in state court and sentenced to the maximum state sentence for illegal possession

13   of a weapon. Dkt. No. 8 at 16.  But his argument is inconsistent with the law.  As the Ninth Circuit has

14   emphasized, the strength of the federal government's interest is not a question that defendants or courts

15   may second-guess.  In *Lucas*, 841 F.3d at 806, the Ninth Circuit noted that "while [defendant] may

16   quarrel with the strength of the federal interest asserted in this case, our review does not extend to

17   revisiting the wisdom of the internal prosecutorial decisions made by the Department of Justice."  This

18   exact reasoning applies here.

19        Moreover, "a government's 'interest in vindicating its sovereign authority through enforcement

20   of its laws by definition can never be satisfied by another [sovereign's] enforcement of *its* own laws,'"

21   and "the federal government" therefore "always 'has the right to decide that a state prosecution has not

22   vindicated a violation' of federal law."  *United States v. Bernhardt*, 831 F.2d 181, 183 (9th Cir. 1987)

23   (quoting *Heath v. Alabama*, 474 U.S. 82, 93 (1985)) (brackets and emphasis in original).  "Such a

24   decision is necessarily made only after the state prosecution has ended."  *Id.*

25        In short, courts do not review the degree of federal interest in a case.  Discovery to unearth it,

26   therefore, can never be justified.  In any event, the federal interest in this case is clear.  As already noted,

27   he is a multiple-convicted felon, with prior federal convictions who was on federal supervised release at

28   the time of this offense.  At the time of the July 2015 shooting, he was prohibited twice over from

1    possessing firearms—as both an unlawful alien and a felon.  He nevertheless illegally possessed a

2    firearm and caused the death of another person.  Moreover, the federal government is the only sovereign

3    authorized to prosecute Garcia-Zarate for possession of a firearm by an unlawful alien, an exclusively

4    federal charge. Garcia-Zarate's state conviction under California's felon-in-possession statute, and his

5    sentence of time served for that offense, clearly has not vindicated the federal interest here.  Just as the

6    Ninth Circuit found in *Lucas*, here it "is perfectly sensible that federal authorities sought to prosecute

7    Lucas after his comparatively light state sentence for possessing a firearm as a convicted felon," and

8    "[t]heir decision to do so" does not support any inference of collusion or undue influence.  841 F.3d at

9    806.  Therefore, because Garcia-Zarate has not made a *prima facie* showing of collusion, he is not

10   entitled to discovery, and his motion must be denied.

11            **C.    Garcia-Zarate has failed to make a *prima facie* showing of vindictiveness**

12            "In our system, so long as the prosecutor has probable cause to believe the accused committed

13   the offense defined by statute, the decision whether or not to prosecute, and what charge to file . . .

14   generally rests entirely in his discretion."  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  "[I]n the

15   absence of clear evidence to the contrary, courts presume that [federal prosecutors] have properly

16   discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

17            To establish a *prima facie* case of prosecutorial vindictiveness, a defendant must show either

18   direct evidence of vindictiveness or circumstances establishing a "reasonable likelihood of

19   vindictiveness."  *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011) (quoting *United States v.*

20   *Goodwin*, 457 U.S. 368, 373 (1982)).  A criminal defendant has the burden of producing evidence that

21   establishes a *prima facie* showing of a likelihood of vindictiveness before he is entitled to discovery on

22   the matter.  *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th Cir. 1990).  Mere allegations

23   about the purportedly suspicious timing of charges do not suffice.  *Kent*, 649 F.3d at 913.

24            "If there is a sufficient *prima facie* showing of vindictiveness, the burden shifts to the

25   prosecution to show that any increase in the severity of the charges did not stem from a vindictive

26   motive, or was justified by independent reasons or intervening circumstances that dispel the appearance

27   of vindictiveness."  *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982).  But "[t]he

28   appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable

1  likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus

2  towards the defendant because he has exercised his specific legal rights." *Id.* at 1169; *see also Goodwin*,

3  457 U.S. at 380, n.11 ("A charging decision does not levy an improper 'penalty' unless it results *solely*

4  from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment

5  of the societal interest in prosecution." (emphasis added)); *United States v. Gamez-Orduno*, 235 F.3d

6  453, 462 (9th Cir. 2000) ("A prosecutor violates due process when he seeks additional charges *solely* to

7  punish a defendant for exercising a constitutional or statutory right." (emphasis added)).

8        Before a court will infer an abuse of prosecutorial discretion, a defendant must adduce

9  "exceptionally clear proof." *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 411 (9th Cir. 2007) (quoting

10  *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987)).  Garcia-Zarate has adduced no such proof.  He fails to

11  satisfy his *prima facie* burden of showing actual or apparent vindictiveness.  Instead, Garcia-Zarate

12  makes conclusory claims that the federal government vindictively prosecuted him because he exercised

13  his right to go to trial on the state case and because a state jury acquitted him of the most serious state

14  charges.  Dkt. No. 8 at 11.  In support of that theory, Garcia-Zarate cites (1) the factual overlap between

15  the federal indictment and the same conduct for which he was convicted in state court; (2) the timing of

16  the federal indictment, which the federal grand jury returned three court days after the state verdict; and

17  (3) statements made by candidate Trump, President Trump, Attorney General Sessions, and a Justice

18  Department spokesperson—statements that reflect those officials' opinions about the case and the

19  independent federal interest in prosecuting Garcia-Zarate.

20        None of the proffered evidence constitutes "direct evidence of actual vindictiveness" tied to the

21  Garcia-Zarate's exercise of any protected right, or even "facts that warrant an appearance of such."

22  *Nunes,* 485 F.3d at 411 (quoting *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995)).

23        Under dual-sovereignty principles, as already discussed, the federal government was entitled to

24  charge Garcia-Zarate for illegally possessing a firearm as a felon and as an unlawful alien.  This

25  successive prosecution is constitutional.  And the federal government's decision to pursue it does not

26  support a finding of vindictiveness.  On the contrary, "the involvement of separate sovereigns tends to

27  *negate* a vindictive prosecution claim." *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981)

28  (emphasis added); *see id.* at 1273 ("the fact that the second prosecution was brought by a different

1   sovereign further weakens defendant's position," the Ninth Circuit has "expressed doubt as to whether a

2   prosecution could be condemned as 'vindictive' when the defendant's claim is that one sovereign is

3   punishing him for rights he asserted against a different sovereign" (citing *Burt*, 619 F.2d at 837)).[4]

4         Courts rarely find vindictiveness where different sovereigns bring successive prosecutions.

5   Indeed, Garcia-Zarate fails to cite any case from any court finding vindictiveness under such

6   circumstances.  A separate sovereign has broad discretion to initiate its own charges, has its own

7   independent interest in adjudicating violations of its laws, and typically is not "upping the ante" or

8   increasing the severity of charges because a defendant exercised a constitutional or statutory right in a

9   different sovereign's case.  *Compare Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974) (finding due-

10  process violation where state prosecutor "upp[ed] the ante" and brought a more serious charge against

11  the defendant after the defendant's invocation of his statutory right to appeal in the same case); *and

12  United States v. DeMarco*, 550 F.2d 1224, 1227-28 (9th Cir. 1977) (finding vindictiveness where the

13  prosecutor threatened to "up the ante" if the defendant exercised his right to change venue and then re-

14  indicted the defendant and added a new charge after the defendant changed venue); *with United States v.

15  Stokes*, 124 F.3d 39, 45 (1st Cir. 1997) (finding no vindictiveness where federal government initiated a

16  prosecution for felon in possession of a firearm after defendant's state acquittal on murder charges, and

17  observing that "the conduct of two independent sovereigns does not lend itself to the concept of

18  vindictive prosecution") (internal quotations omitted)), *and United States v. Spears*, 159 F.3d 1081,

19  1087 (7th Cir. 1998) (finding no vindictiveness where federal government brought a firearms charge

20  after defendant's state acquittal on murder charges and conviction on unrelated firearms charge, and

21  stating that "it is very difficult to sustain a claim of vindictive prosecution where two separate

22

23  _____

24  [4]  *See also, e.g.*, *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990) ("Where there are
    successive prosecutions by two sovereigns . . . it is improbable that a realistic likelihood of
    vindictiveness exists." (citing *Robison*, 619 F.d at 1273)); *United States v. Schoolcraft*, 879 F.2d 64, 68

25  (3d Cir. 1989) ("the role of a separate sovereign in bringing charges against a defendant minimizes the
    likelihood of prosecutorial abuse," and "the involvement of a separate sovereign tends to negate a

26  vindictive prosecution claim"); *United States v. Ballester*, 763 F.2d 368, 370 (9th Cir. 1985) ("The role
    of a separate sovereign in bringing the increased charges minimizes the likelihood of prosecutorial

27  abuse."); *United States v. Ng*, 699 F.2d 63, 68 (2d Cir. 1983) ("the fact that the prosecutions of the
    defendants are by two different sovereigns, each acting independently under its own laws and in its own

28  interest without any control of or by the other, renders inapplicable the concept of prosecutorial
    vindictiveness").

1 | sovereigns are involved.").

2 |       Here, the United States has not "upped the ante" or increased the severity of any charges to

3 | punish Garcia-Zarate for exercising any protected right in the state case.  Instead, the United States

4 | Attorney's Office, exercising its broad prosecutorial discretion, has concluded that the state case did not

5 | vindicate the federal interest.  This quintessential and proper exercise of prosecutorial discretion "should

6 | not be burdened with presumptions of vindictiveness."  *Gallegos-Curiel*, 681 F.2d at 1169; *see also*

7 | *Stokes*, 124 F.3d at 45.

8 |       That the United States waited to indict Garcia-Zarate until the state trial concluded was also

9 | appropriate.  As the Ninth Circuit has explained, "the federal government always has the right to decide

10 | that a state prosecution has not vindicated a violation of federal law," and "[s]uch a decision is

11 | necessarily made only after the state prosecution has ended."  *Bernhardt*, 831 F.2d at 183 (internal

12 | quotation marks omitted).  Indeed, "[s]imultaneous prosecutions are duplicative and expensive and

13 | should be avoided as a matter of policy."  *Id.*  Thus, the government acted well within its discretion here

14 | by waiting to indict until the state trial ended—a trial involving significant murder charges, where a

15 | federal indictment could have interrupted the state's case.  *See Stokes*, 124 F.3d at 45.  Furthermore,

16 | evidence essential to the federal prosecution—that is, evidence of Garcia-Zarate's possession of the

17 | pistol—was in the hands of the state.  The United States was not required to indict Garcia-Zarate any

18 | sooner than it did.  *See United States v. Johnson*, 91 F.3d 695, 698-99 (5th Cir. 1996) (federal

19 | investigation was properly "put on hold" until more serious state prosecution concluded, and federal

20 | government did not act vindictively by bringing firearms charges after defendant was acquitted of

21 | murder in state case).  And to the extent the United States took into consideration the outcome of the

22 | state proceeding against Garcia-Zarate in determining whether there remained an un-vindicated federal

23 | interest in the case – that is an entirely appropriate and sound usage of prosecutorial discretion and is not

24 | evidence of vindictiveness.  *See United States v. Allen*, 699 F.2d 453, 460-61 (9th Cir. 1982) (finding no

25 | presumptive or direct evidence of vindictiveness when the government awaited a disposition and

26 | sentencing result on another criminal prosecution to determine whether it still had a compelling interest

27 | to move forward on its case); *United States v. Esposito*, 968 F.2d 300, 303-07 (3d Cir. 1992) (finding no

28 | presumptive vindictiveness when prosecutor took into consideration an earlier acquittal in determining

1   whether to indict a defendant on charges stemming from the same nucleus of facts, because the

2   government was not "levying punishment for a right exercised but rather for the crimes [the defendant]

3   committed.").

4          The tweets and statements that Garcia-Zarate cites from then-candidate Trump, President Trump,

5   Attorney General Sessions, and a DOJ spokesperson do not change the analysis.  To the extent they have

6   any relevance here, those statements show that a distinct federal interest existed *before* Garcia-Zarate

7   went to trial in the state case.  Nothing in the statements indicates that the federal government obtained

8   the present indictment because—and certainly not "solely" because—Garcia-Zarate defended himself in

9   state court.  *See Goodwin*, 457 U.S. at 380 n.11; *Gamez-Orduno*, 235 F.3d at 462.  To the contrary, the

10  statements support a finding that the federal government had a strong and preexisting interest here, and

11  that the state prosecution did not vindicate that federal interest.

12         **D.     Garcia-Zarate is not entitled to an evidentiary hearing**

13         Because Garcia-Zarate has failed to make a *prima facie* showing of vindictiveness, the Court

14  should reject his request for discovery and an evidentiary hearing, and should decline to make any

15  further "inquiry into the motives of the prosecution."  *Robison*, 644 F.2d at 1272; *see One 1985*

16  *Mercedes*, 917 F.2d at 421.

17         Garcia-Zarate cites to one case, *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989), in

18  which the court compelled "narrow" discovery pertaining to vindictive prosecution.  However, Garcia-

19  Zarate's reliance on *Adams* is misplaced because that case is factually distinct from this one.  In *Adams,*

20  the defendant proffered far more evidence for a *prima facie* showing of vindictiveness than the

21  speculative claims made by Garcia-Zarate.  In *Adams*, the defendant claimed that but for her filing a sex

22  discrimination suit against her former employer, the EEOC, the federal government would not have

23  brought criminal charges against her for tax violations and perjury.  She proffered, among other things,

24  an affidavit from a former EEOC director that he believed the EEOC had instigated the unrelated

25  criminal prosecution of the defendant out of "revenge," an affidavit from a former IRS special agent that

26  criminal tax charges would not normally be instituted based on the defendant's conduct, and a claim that

27  the federal case agent made statements to those associated with the defendant that "his job was to find

28  [the defendant] guilty of something, no matter how small."  *Id.* at 1144-46.  The Sixth Circuit was

1   further persuaded by the fact that the record supported no other instances where tax and perjury charges

2   were brought based on similar conduct. *Id.* at 1145-46. *Adams* is markedly different from this case.

3   Here, Garcia-Zarate bases his claims on nothing more than speculation. He does not proffer any

4   evidence, affidavit or otherwise, that would demonstrate that the sole reason the government charged

5   him federally is because he exercised his right to go to trial on the state case. He bases his claims on

6   speculative theories related to timing, alleged lack of federal interest, and public officials' statements

7   that are wholly distinct from *Adams* and, as described above, not evidence of vindictiveness.

8   Accordingly, *Adams* is not an analogous case to the claims Garcia-Zarate presents here.

9          Moreover, even if Garcia-Zarate could make a *prima facie* showing of vindictiveness, the United

10  States has already overcome it as a matter of law. As discussed above, the federal government has its

11  own reasons for pursuing this prosecution, including to prosecute a dangerous felon and unlawful alien

12  with an extensive criminal history who, while on federal supervised release, illegally possessed a loaded

13  pistol and killed a woman with it. Moreover, Count Two of the indictment—illegal possession of a

14  firearm by an unlawful alien—is an exclusively federal crime. These independent federal reasons for

15  pursuing the present case "dispel the appearance of vindictiveness and justify [the U.S. Attorney's]

16  decisions." *United States v. Hooton*, 662 F.2d 628, 633 (9th Cir. 1981). Accordingly, just as Garcia-

17  Zarate is not entitled to discovery, he is also not entitled to an evidentiary hearing to pursue his

18  speculative theories. *See Lucas*, 841 F.3d at 804 (denying evidentiary hearing where defendant made

19  "'conclusory allegations' of collusion").

20  **IV.    THE INDICTMENT IS NOT MULTIPLICITOUS**

21         Garcia-Zarate also moves to dismiss either Count One or Count Two of the indictment on the

22  grounds of multiplicity. Dkt. No. 6. His motion is meritless. Both counts should stand, since each

23  includes an essential element that the other does not.

24         "An indictment is multiplicitous if it charges a single offense in more than one count." *United

25  States v. Awad*, 551 F.3d 930, 937 (9th Cir. 2009). "'The test for multiplicity is whether each count

26  'requires proof of a[n additional] fact which the other does not.'" *United States v. Garlick*, 240 F.3d 789,

27  794 (9th Cir. 2001) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (alteration in

28  original)). Under the *Blockburger* analysis, determining whether "the same act or transaction constitutes

1    a violation of two distinct statutory provisions" depends on "whether each provision requires proof of a

2    fact which the other does not." *United States v. Overton*, 573 F.3d 679, 691 (9th Cir. 2009) (quoting

3    *Blockburger*, 284 U.S. at 304) (internal quotation marks omitted).  The *Blockburger* test "focuses on the

4    statutory elements of the offense," and "[i]f each requires proof of a fact that the other does not, the

5    *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the

6    crimes." *Albernaz v. United States*, 450 U.S. 333, 338 (1981) (quoting *Iannelli v. United States*, 420

7    U.S. 770, 785 n.17 (1975)).

8          In enacting 18 U.S.C. § 922(g), Congress recognized that a defendant may be barred from

9    possessing a firearm by virtue of more than one disqualifying status.  For example, a defendant can be a

10   domestic-violence misdemeanant but also a drug addict.  *Id.* § 922(g)(3), (9).  A defendant can have a

11   dishonorable discharge from the armed forces while also being subject to a qualifying criminal

12   protective order.  *Id.* § 922(g)(6), (8).  Or, as here, a defendant can be both a felon and an alien "illegally

13   or unlawfully in the United States."  *Id.* § 922(g)(1), (5)(A).

14         Garcia-Zarate is charged under two separate statutory provisions, each of which requires proof of

15   a fact that the other does not.  While Section 922(g)(1) requires the government to prove that Garcia-

16   Zarate is a felon, Section 922(g)(5)(A) does not.  And while Section 922(g)(5)(A) requires the

17   government to prove he is an unlawful alien, Section 922(g)(1) does not.  Where, as here, a defendant

18   has more than one disqualifying status, the government is entitled to charge him under each pertinent

19   provision of Section 922(g), and to prove each charge to a jury.

20         This approach does not create multiplicity problems.  If Garcia-Zarate is convicted on multiple

21   Section 922(g) offenses, the trial court can merge those convictions at the time of sentencing.  *See*

22   *United States v. Bloch*, 718 F.3d 638, 643-44 (7th Cir. 2013) (merger is the proper remedy); *United*

23   *States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) (same); *United States v. Shea*, 211 F.3d 658,

24   673-76 (1st Cir. 2000) (sentence on a Section 922(g)(3) count should be merged with sentence on

25   Section 922(g)(1) count); *United States v. Johnson*, 130 F.3d 1420, 1424-26 (10th Cir. 1997) (same); *see*

26   *also, e.g.*, *United States v. Keen*, 104 F.3d 1111, 1119-20 (9th Cir. 1996) (holding that district court

27   should not have "sentenced [defendant] twice" for separate counts of felon in possession of a firearm

28   and felon in possession of ammunition); *United States v. Throneburg*, 921 F.2d 654, 656-57 (6th Cir.

1   1990) (finding no abuse of discretion where trial court "allowing the government to prosecute

2   [defendant] upon both the possession of ammunition and possession of a firearm counts," because those

3   were "appropriate separate units of prosecution for purposes of trial" that the court "would merge for

4   purposes of sentencing").

5        Indeed, for more than 25 years now, the Department of Justice has directed federal prosecutors to

6   take this very approach.  In a 1992 memorandum addressed to "All Federal Prosecutors," then-Assistant

7   Attorney General Robert Mueller instructed that "[i]t is appropriate to charge a defendant who has

8   multiple disqualifying factors with a separate count of unlawful weapons possession under § 922(g) for

9   each disqualifying status," and that "it is appropriate to present evidence to the factfinder regarding each

10  disqualifying status and to seek a verdict on each separate count."  Mem. of Asst. Atty. Gen. Robert S.

11  Mueller III (Nov. 3, 1992), https://www.justice.gov/usam/criminal-resource-manual-1431-department-

12  memorandum-prosecutions-under-922g.  In fact, one of the examples cited in the Mueller memorandum

13  is of a defendant who—like Garcia-Zarate—"is both a . . . a convicted felon and an illegal alien."  *Id.*

14       In such circumstances, the Mueller memorandum instructs federal prosecutors not to "seek

15  consecutive or concurrent sentences," but instead to "urge the court to 'merge' or 'combine' the multiple

16  § 922(g) convictions based on different statuses into one conviction for sentencing purposes."  *Id.*  That

17  is exactly what the United States intends to do in the present case.  Citing caselaw, the Mueller

18  memorandum goes on to explain:

19           The "merger" or "combining" of the convictions under separate
             subdivisions of § 922(g) achieves several salutary effects.  First, it protects
20           the Government's interest in safeguarding the validity of each conviction on
             appeal, should the defendant challenge his inclusion in one of the
21           disqualifying statuses charged in the indictment. . . .  Second, it assures that
             the defendant is not punished inappropriately solely for having a certain
22           status under the law. . . .

23           Please assure that cases under 18 U.S.C. § 922(g) that are prosecuted in your
             district follow the guidance described in this memorandum.
24
    *Id.* (citations omitted).

25       The Mueller memorandum remains in force today.  The United States Attorney's Manual

26  includes the same guidance.  USAM § 9-63.514, https://www.justice.gov/usam/usam-9-63000-

27  protection-public-order#9-63.514.  The Mueller memorandum and USAM provision both cite pertinent

28

1    circuit court decisions from across the country.  Garcia-Zarate is therefore wrong to claim that the

2    charging decisions in this case are contrary to Justice Department policy or caselaw.

3         Equally baseless is Garcia-Zarate's argument that the charges here "violate Federal Rules of

4    Criminal Procedure Rule 12(b)(3)(B)(ii), to wit, 'charging the same offense in more than one count,'" or

5    that the charges "violate Double Jeopardy." Dkt. No. 6 at 2.  Being a felon in possession of a firearm is

6    not the "same offense" as being an unlawful alien in possession of a firearm, because 18 U.S.C.

7    § 922(g)(1) and (g)(5) each require a distinct element that the other offense does not.  And again,

8    because the Section 922(g)(1) and (g)(5) convictions can be merged at sentencing if Garcia-Zarate is

9    convicted of both offenses, he will not be punished for multiple Section 922(g) violations.  Thus, no

10   multiplicity problem exists.  For these reasons, the Court should deny Garcia-Zarate's motion to dismiss

11   either of the two properly charged counts in the indictment.

12        That leaves only Garcia-Zarate's fallback claim of prejudice.  He argues that permitting a jury to

13   hear evidence establishing his felon status and his alien status would be "unduly prejudicial." Dkt. No. 6

14   at 3-4.  His argument is misconceived.  "Relevant evidence is inherently prejudicial," *United States v.*

15   *Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000), and at trial the United States is not only entitled but

16   *required* to prove each essential element of each charged offense.

17        Here, "[b]y pleading not guilty to all counts" Garcia-Zarate has "required the government to

18   prove every element of each offense." *United States v. Curling*, 312 F. App'x 293, 295 (11th Cir. 2009)

19   (per curiam).  Thus, at trial, evidence of his felon status and his alien status will be admissible, because

20   that evidence is "necessary to prove his felon and illegal alien statuses for violations of sections

21   922(g)(1), (5)." *Id.*

22        In sum, having properly charged two counts—each of which contains a distinct element—the

23   United States is entitled to prove all of those counts and elements to a jury.  The Court should therefore

24   deny Garcia-Zarate's multiplicity motion.  If he is convicted on both counts at trial, the Court should

25   merge the two convictions at the time of sentencing.

26   **V.    CONCLUSION**

27        For the reasons stated, the Court should deny Garcia-Zarate's motion to compel discovery and

28   his request for an evidentiary hearing (Dkt. No. 8).  The Court should also deny Garcia-Zarate's motion

1   to dismiss Count One or Count Two of the indictment (Dkt. No. 6).

2

3   Dated:  March 27, 2018                            Respectfully Submitted,

4                                          ALEX G. TSE
5                                         Acting United States Attorney

6                                             _____/s/_____

7                                         SHIAO C. LEE
                                           HALLIE M. HOFFMAN
8                                         Assistant United States Attorneys

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28