J. TONY SERRA SBN 32639
MARIA BELYI SBN 270019
506 BROADWAY
SAN FRANCISCO, CA 94133
TELEPHONE: (415) 986-5591
FACSIMILE: (415) 421-1331

ATTORNEYS FOR DEFENDANT
JOSE INEZ GARCIA-ZARATE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> JOSE INEZ GARCIA-ZARATE, <br> Defendant. | No. 3:17-CR-00609-VC <br><br> DEFENDANT'S REPLY TO PROSECUTION'S RESPONSE TO MOTION TO COMPEL DISCOVERY <br><br> Date: April 24, 2018 <br> Time: 10:30 a.m. <br> Courtroom: Hon. Vince Chhabria |

**I. Mr. Garcia-Zarate Has Demonstrated a Sufficient Showing of a Vindictive Motive for the Prosecution and is therefore Entitled to Discovery Regarding the Charging Decision.**

Without the disclosure of all evidence, it is impossible for a Court to evaluate "whether the power to prosecute was misused," but "where there has been a *prima facie* showing of a realistic likelihood of vindictiveness, it is incumbent upon the district court to conduct an evidentiary hearing where the government's explanations can be formally presented and tested." *United States v. Adams*, 870 F. 2d 1140, 1145 (6th Cir. 1989). In *Adams,* cited in Mr. Garcia-Zarate's initial moving papers, the court held that "a criminal defendant may be entitled to discovery on the issue of selective prosecution if he introduces some evidence tending to show the existence of the essential elements of the defense." *Id*. at 1146 (citations omitted) The court acknowledged that it would be difficult for the defendant to present more than just "some evidence of vindictive

prosecution[1] . . . without the benefit of discovery on the process through which th[e] prosecution was initiated." *Id*.

The prosecution complains that Mr. Garcia-Zarate cited only one case, *United States v. Adams*, 870 F. 2d 1140, 1146 (6th Cir. 1989), which addressed obtaining discovery regarding the vindictive motive of a prosecution, and thus he is not entitled to an evidentiary hearing. However, many of the cases cited by Mr. Garcia-Zarate and the prosecution involved evidentiary hearing and discovery disclosures (presumably prior to the hearing, or through testimony at the hearing). *See, e.g. United States v. Groves*, 571 F.2d 450 (9th Cir. 1978) (district court held a hearing on the motion to dismiss); *United States v. Robison*, 644 F. 2d 1270, 1272 (9th Cir. 1980) (district court had a hearing regarding the motion to dismiss on the basis of vindictive prosecution); *United States v. Burt*, 619 F.2d 831, 834 (9th Cir. 1980) (the district court had a hearing on the defendants' motion to dismiss for vindictive prosecution); *United States v. Hooton*, 662 F. 2d 628, 633 (9th Cir. 1981) (an evidentiary hearing with testimony was held in light of the motion to dismiss because of vindictive prosecution); *United States v. Jenkins*, 504 F. 3d 694, 698 (9th Cir. 2007) (the Assistant United States Attorney who filed the charges against the defendant testified at her motion to dismiss for vindictive prosecution hearing).

As discussed in Mr. Garcia-Zarate's initial moving papers, vindictive prosecution may be established by "producing direct evidence of the prosecutor's vindictive motivation" or a showing that the defendant "exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *United States v. Jenkins,* 504 F. 3d 694, 699 (9th Cir. 2007). Often, it is this "*appearance of vindictiveness*, rather than *vindictiveness in fact*, which controls" the analysis of whether a prosecution is vindictive. *See United States v. Groves,* (9th Cir. 1978) (emphasis in text). The danger of the appearance of vindictiveness is that "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise" of a right; a person should be free to pursue these rights without fear of retaliation. *Blackledge v. Perry,* 417 U.S. 21, 28 (1974).

The analysis of each allegation of vindictive prosecution "is dependent upon the totality of the circumstances surrounding the prosecutorial decision at issue." *United States v. Griffin*, 617 F.

---

[1] The court appears to use the terms selective and vindictive prosecution interchangeably.

2d 1342, 1347 (9th Cir. 1980). Although the government argues that the fact that this prosecution is brought forth by a different sovereignty, the Ninth Circuit has refused to hold that a prosecution by a different sovereign precludes a dismissal for vindictive prosecution. *See United States v. Robison*, 644 F. 2d 1270, 1272 (9th Cir. 1980); *United States v. Burt*, 619 F. 2d 831, 836 (9th Cir. 1980).

In this case, Mr. Garcia-Zarate has demonstrated that the unique facts in his case present a presumptive showing of an appearance of vindictiveness and actual vindictiveness by the federal government that would entitle him to discovery.

Mr. Garcia-Zarate has demonstrated that the very same day as the incident, then-candidate Trump made this case and Mr. Garcia-Zarate the embodiment of the allegedly faulty sanctuary city policies and why the United States needs a border wall. After the verdict by the San Francisco jury, the President called the result "disgraceful" and a "travesty of justice." *See* footnote 2, Docket No. 8.

Mr. Garcia-Zarate has reason to believe that President Trump attempts to influence the Justice Department in prosecutions in cases that are high-profile and in which he had taken an interest. For example, it has been reported that the President attempted to convince Attorney General Jeff Sessions to drop the criminal charges of Sheriff Joe Arpaio, whom the President later pardoned[2].

Just as President Trump did, after the verdict Attorney General Jeff Sessions publicly criticized sanctuary city policies in the same breath as stating that the Justice Department would be bringing "any charges that are appropriate" and that Mr. Garcia-Zarate "is going to face very charge that is proper to be brought against him." *See* footnote 4, Docket No. 8. Similarly, the Justice Department spokeswoman Sarah Isgur Flores stated that the Justice Department will prosecute Mr. Garcia-Zarate to "the fullest extent available" and emphasized that this is an issue with "sanctuary city policies as a whole." *See* footnote 5, Docket No. 8. When asked what

---

[2] White House Press Secretary acknowledged the conversation, though not the content, stating that "It's only natural the president would have a discussion with administration lawyers about legal matters. This case would be no different." "Trump Asked Sessions about closing case against Arpaio, an ally since birtherism." Nakashima, ellen and Rucker, Philip, Washington Post. https://www.washingtonpost.com/politics/trump-asked-sessions-about-closing-case-against-arpaio-an-ally-since-birtherism/2017/08/26/15e5d7b2-8a7f-11e7-a94f-3139abce39f5_story.html?utm_term=.eccaa2ba6d8d. August 26, 2017. Attached herein as *Exhibit I*.

charges would be filed, Ms. Flores was vague, but agreed that felony re-entry or felon violating supervised release could be potential charges. *Id*.

Despite the prosecution's averment to the contrary, statements by public officials, including the spokesperson for the Department of Justice, can "assume significance" in support of claims of selective or vindictive prosecutions. *See e.g. United States v. Gordon*, 817 F. 2d 1538, 1540 (11th Cir. 1987) (where an alleged statement by the DOJ spokesperson that the investigations into voter fraud were part of a "new policy. . . brought on by the arrogance on the part of blacks" was ruled to "assume[] significance in light of other evidence suggesting a pattern of Government activity in the voting fraud cases that were being prosecuted.")

In this case, these public statements against Mr. Garcia-Zarate and the San Francisco jury verdict lend themselves not only to a presumption of vindictiveness, but also to actual vindictiveness in seeking this prosecution. Mr. Garcia-Zarate came into the cross-hairs of the federal prosecutors simply by being an undocumented immigrant in a sanctuary city who nevertheless succeeded in exercising his right to a jury trial and obtaining a favorable verdict on the most serious charges against him.

The timing of the prosecution and the fact that he is being charged for the exact same conduct as the conduct of which he was convicted also lends itself to a presumption of vindictiveness. Though the prosecution argues that it is not "upping the ante," almost immediately after the verdict, it came after Mr. Garcia-Zarate with charges that expose him to a sentence more than three times longer than the maximum California penalty for a felon in possession of a firearm.

While Mr. Garcia-Zarate contends that he has made the showing of a realistic likelihood of vindictiveness in this case, has not been given the opportunity to fully flesh out his claim, as he has not been provided with sufficient discovery as to how the decision to charge him came about. The government's assertion that it "has already overcome" any showing "as a matter of law" is premature and based on nothing but conclusory assertions within the motion. There is no presentation, through an affidavit under penalty of perjury, by the charging prosecutor, as to how the decision was made, what factors were considered, its compliance with the *Petit* policy and

negating Mr. Garcia-Zarate's allegation that these charges are being vindictively pursued at the order of the President or the Attorney General.

### II. Mr. Garcia-Zarate Has Made a Sufficient Showing of Collusion between the Federal and State Governments and is thus Entitled To Discovery on this Issue.

Mr. Garcia-Zarate demonstrated in his opening brief that he is entitled to discovery on the issue of Double Jeopardy because of, among other things, the extraordinary interference of the President of the United States and his officers in Mr. Garcia-Zarate's state criminal prosecution. In response, the government has cited cases in which courts have held that the defendants in those cases failed to show the prima facie case of collusion necessary to trigger discovery obligations. However, as shown more fully below, the facts presented by the defense far exceed those presented in those cited cases. Moreover, the facts presented by the defense do "tend to show that the government is in possession of information helpful to the defense" on this issue. See *United States v. Lucas*, 841 F3d 796 (9th Cir. 2016). As a result, Mr. Garcia-Zarate is entitled to discovery on collusion so that he may further develop the facts and bring a Motion to Dismiss the charges if appropriate.

Double Jeopardy can be implicated by successive state and federal prosecutions when federal prosecutors involve themselves in a state prosecution so completely that "they dominate or manipulate the state's prosecutorial machinery" and as a result the state "retains little or no volition in its own proceedings." *United States v. Zone*, 403 F.3d 1101, 1104-05 (9th Cir. 2004). Courts have held that defendants must make a preliminary showing of inter-sovereign collusion in order to obtain Rule 16 discovery on the issue of successive prosecution Double Jeopardy. *Id*. It should be noted that the defendant is not obligated to prove actual collusion at this stage – he need only make a preliminary showing.

Relying heavily upon *Zone* and also *United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994) and *United States v. Lucas*, 841 F.3d 796 (9th Cir. 2016), the government argues that this Court should deny Mr. Garcia-Zarate's discovery requests. In the above cases the courts held that the facts presented by the defendants in those cases may have established inter-sovereign cooperation, but they did not make a prima facie case of inter-sovereign collusion. However, all of the cases assessing the issue of Double Jeopardy/Collusion, including those cited by the government,

establish that the question of whether a defendant has met his or her threshold burden is a factual question which must be decided based upon the unique facts and factors presented by the defendant. There is no bright line rule; the factors in each individual case must be analyzed.

Here, there is no question that the federal government was involved in and interfered in the state prosecution. Federal agents assisted state prosecutors in investigation and trial presentation of key evidence, federal attorneys sat at the prosecution table and assisted the prosecutor during a critical portion of the trial, and federal prosecutors waited for the results of the state trial before commencing federal prosecution. But the federal involvement and interference here went much further than that and the government's efforts to minimize its involvement and, in some instances even deny it, should fail. The government's specific arguments shall be addressed in turn.

First, in its response, the government cites early and often, the high standard of proof necessary to succeed in a motion to dismiss under the *Bartkus* exception. It then argues that the defense has failed to meet that burden. Notwithstanding the merits (or lack of merits) of that argument, that argument is not the issue raised by the current defense pleading which is requesting discovery, not dismissal.

Second, President Trump and the Attorney General Session have applied historical amounts of pressure on the state officials in this a case. The government cites that same conduct raised by the defense and say it does not shows conflict and independence not collusion. Under different circumstance that might be true. However, the defense submits that the content, tenor, and timing of these comments undercut any argument that the statements reflect a mere healthy disagreement and independence between two sovereigns. It is more reasonable to assume the intent of the comments were to coerce, pressure, and manipulate the prosecutors and to affect their "volition in the state proceedings." *Zone* at 1105.

Third, the defense included in its opening filing a declaration of one of Mr. Garcia-Zarate's state court trial attorneys which describe the state prosecutors giving special treatment to the federal law enforcement witness, the BLM ranger. That declaration is unchallenged. Specifically, the declarant describes how the ranger was permitted to use a back door to enter and exit the courtroom. This was significant in that it allowed him to avoid the walk down the long public hallway through hordes of media and onlookers. Notably, as shown on the nightly news, this walk

was made by all other witnesses, including the members of the Steinle family. The government's response to this evidence is not to refute it, but rather, to say that it does not "come close to establishing a prima facie case for impermissible collusion." Gov. Response at 10. The defense, of course, concedes that neither this, nor any one fact on its own is sufficient to make the necessary showing. The defense has not suggested otherwise. It is equally true, however, that the existence of this behavior is unusual and relevant and adds to the defense showing of collusion.

Fourth, the government seeks to minimize the fact that two federal lawyers, an AUSA and an attorney from the Department Of the Interior sat at the prosecution table and openly assisted the state prosecutor in its examination. This was done through, at a minimum, by educating the state prosecutor on issue relevant to limiting cross [previously filed Ex. G, RT 45:20] and in one instance the AUSA, unsolicited, directly inserted himself into the trial, and argued to the Court in support of the prosecution's request to exclude testimony. [Ex. G, RT 50:8]

The government also represents that the DOI attorney was present at trial to make sure the "ranger's testimony was in compliance with agency regulations…" Gov. Response at 10. The government cites to a letter from the DOI counsel included as a defense Ex. A, as authority for this representation. The letter is attached to as defense Ex. F and does contain a representation in the last paragraph that the DOI attorney would be at court on July 15, 2015, to answer any questions the Court about why, under their rules, the BLM ranger would not be present to testify on that date. This reasoning, however, does not inform his purpose for sitting at counsel table during the ranger's testimony on October 26, 2017.

Lastly, the government argues that the timing of the federal indictment, i.e., waiting until after the jury verdict in the state prosecution, to file its possession of firearm charges "demonstrates sound exercise of prosecutorial discretion and efficient use of judicial resources." Gov. Response at 11. That reasoning only make sense if, as in *Lucas*, the government is waiting to make sure the defendant is convicted in the state possession charge and that when convicted he gets an appropriately high sentence. The logic is, if he is convicted and gets a high sentence, they will not file. Here, Mr. Garcia-Zarate was convicted for the firearm offense *and* (unlike the defendant in *Lucas*) given the maximum sentence possible under state law, i.e., the most punitive result possible.

Accordingly, for the reasons stated in Mr. Garcia-Zarate's opening brief as well as those stated herein, the defense submits that the necessary showing has been made and the government's argument to the contrary should be rejected.

**CONCLUSION**

Mr. Garcia-Zarate has made the requisite showing that he is entitled to the requested discovery on the grounds of vindictive prosecution and collusion. He therefore respectfully requests that this Court grant his request and compel the prosecution to provide the requested discovery.

Dated: April 10, 2018

Respectfully submitted,

\_\_\_/s/\_J. Tony Serra_____
J. TONY SERRA
MARIA BELYI
Attorneys for Defendant
JOSE INEZ GARCIA-ZARATE