**Pages 1 - 11**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
UNITED STATES OF AMERICA,      )
                               )
         Plaintiff,            )
                               )
  VS.                          )     NO. CR. 17-00609 VC
                               )
JOSE INEZ GARCIA-ZARATE,       )
                               )
         Defendant.            )
                               )
```

San Francisco, California
Thursday, August 23, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff United States of America:
          Brian Stretch
          United States Attorney
          450 Golden Gate Avenue
          San Francisco, CA  94102
          (415) 436-7129
          (415) 436-7234 (fax)
     **BY:  HALLIE MITCHELL HOFFMAN**
          **SHIAO LEE**

For Defendant Jose Inez Garcia-Zarate:
          Law Office of J. Tony Serra
          Pier 5 Law Offices
          506 Broadway
          San Francisco, CA  94133
          (415) 986-5591
     **BY:  J. TONY SERRA**

Also Present:  Wendy Maestracci, Spanish-Language Interpreter

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

```
 1   Thursday - August 23, 2018                           10:09 a.m.
 2                        P R O C E E D I N G S
 3                              ---oOo---
 4        THE CLERK:  Calling Case Number 17-CR-00609, USA
 5   versus Jose Inez Garcia-Zarate.  Counsel, please state your
 6   appearances for the Record.
 7        MS. LEE:  Shiao Lee, on behalf of the United States.
 8   Good morning, Your Honor.
 9        THE COURT:  Good morning.
10        MR. SERRA:  Good morning, Your Honor.  It's
11   Tony Serra, on behalf of Mr. Zarate.  He's present.  He's in
12   court.  He's being assisted by a Spanish-language interpreter.
13        THE COURT:  Good morning.  Good morning, Mr. Zarate.
14        MR. SERRA:  Judge, my hat (indicating) -- I think I
15   mentioned I had the cancer procedure, so I'm healing.
16        THE COURT:  No problem.
17        MR. SERRA:  Thank you.  Hard to imagine you without
18   it, actually.
19        INTERPRETER:  Good morning, Your Honor.  Certified
20   Spanish interpreter Wendy Maestracci, previously sworn in.
21        THE COURT:  Good morning.
22      Okay.  So you got my Order.  You know why I wanted to have
23   you in for a discussion.  What do you all think we should do?
24        MS. LEE:  The Government's position is to move
25   forward with trial on October 1.
```

1      I did have a very brief discussion with Mr. Serra when we
2 were sitting here a few minutes ago, and he indicated to me
3 that his position is for us to wait until the Supreme Court
4 makes a decision.
5      I indicated that that could be quite some time, assuming
6 oral arguments are December.  This is all assuming.  And
7 potentially a decision wouldn't be handed down for half a year
8 thereafter.  It could be almost a year of -- of a wait time.
9      And so the Government's position is we move forward to
10 trial, and that a grant of cert. doesn't change the binding
11 precedent on this particular area of law.
12         **THE COURT:**  Well, it's certainly true that the grant
13 of cert. doesn't change the binding precedent; but, as a
14 practical matter, the binding precedent may change.  And so if
15 the trial goes forward in early October, and if there is a
16 conviction, it seems quite possible that the conviction would
17 be overturned as a result of a new Supreme Court decision on
18 the dual-sovereign issue -- right? -- or separate-sovereign
19 issue, or whatever the doctrine is called.
20      So if the -- I mean, after all, the defendant is in
21 custody.  Right?  And if the defendant, despite the fact that
22 he is in custody, prefers to hold the trial over until the
23 Supreme Court makes it its decision, what is wrong with that?
24         **MS. LEE:**  Well, I guess the first thing would be that
25 it's not just the defendant that has a statutory right to a

1  Speedy Trial, but also the public and the Government.  And I
2  think Your Honor would have to find that this delay outweighs
3  the best interests of the public and the defendant in the
4  Speedy Trial.  And, as you know --
5          **THE COURT:**  Well, I mean, the best interests of --
6      I agree with you that the public has a right --
7          **MS. LEE:**  Okay.
8          **THE COURT:**  -- but if the defendant wants to remain
9  in custody here in the Alameda County Jail, I guess, as opposed
10 to wherever he would be if he was convicted in October, after
11 that trial, and as long as he's in custody, and if the
12 defendant wants to put over the trial, then the question is:
13 Is it in the best interests of the public to go forward with
14 this trial, where the conviction may well be overturned as a
15 result of an upcoming Supreme Court decision, as opposed to
16 leaving the defendant in custody while we await the
17 Supreme Court decision?
18     And so what's your argument for why it's in the best
19 interests of the public to go forward with the trial?
20         **MS. LEE:**  I would say that the Government bears the
21 burden of proof in every criminal case, and that the Government
22 presents evidence.  And over time evidence, going to trial,
23 could become stale.  Many of the witnesses are civilian
24 witnesses, where it's based off of their memory of the
25 incident.  And, granted, it's really been quite some time since

 1  the incident; since July 1st of 2015; but delaying it further,
 2  I would argue, has the potential -- the possibility -- to
 3  prejudice the Government's ability to meet its burden of proof.
 4          **THE COURT:**  Could you give me an example of, like, an
 5  actual, fact-based example of how that could happen?
 6          **MS. LEE:**  You know, I can't give you a tangible
 7  example; meaning, for instance, I've spoken to so-and-so, and
 8  they've told me they won't remember in a year.  That, I cannot
 9  give; but I can just give you the general possibilities that in
10  most instances, people's memories will fade over time.
11          **THE COURT:**  Well, what's a hypothetical example of
12  something that somebody might not remember?
13          **MS. LEE:**  Potentially a witness who saw
14  Mr. Garcia-Zarate on the pier would testify to what he or she
15  recollects was his demeanor; what he was doing; what made them
16  notice him to begin with before the shooting.
17          **THE COURT:**  What would his demeanor have to do with
18  the trial that we are scheduled to have?  I mean, the
19  Government has charged him with being an alien in possession of
20  a firearm, and being a felon in possession of a firearm.  What
21  does his demeanor have to do with anything?
22          **MS. LEE:**  It's less important in this -- in this type
23  of charge, as opposed to what was charged in the State, for
24  sure.
25          **THE COURT:**  We're not concerned with what was charged

1  in the State.
2           **MS. LEE:**  Right.
3           **THE COURT:**  We're concerned with what is going to be
4  the subject of the trial here in Federal Court.  Right?
5           **MS. LEE:**  Yes.  Correct.  Absolutely.
6           **THE COURT:**  Okay.
7           **MS. LEE:**  But I'm just thinking, for instance, well,
8  what the Government would have to prove is knowing
9  possession -- right? -- that he possessed the gun knowingly,
10 without accident, mistake, or ignorance.
11      And so where he was seated, what he was doing, how he
12 behaved after the shooting; a witness seeing, you know, the
13 "plop" of a gun in the water, getting thrown over the -- not
14 the throwing aspect, but just something falling into the
15 water -- these are all, I think, relevant facts to show knowing
16 possession of a firearm.
17      And I'm not saying that necessarily they wouldn't remember
18 in a year.  That's not what I'm purporting to the Court, but
19 just simply --
20          **THE COURT:**  Well, we know that it would be less than
21 a year.  Right?  We know the Supreme Court decision will come
22 down sometime before the end of June.
23          **MS. LEE:**  Right, so -- but even then, I guess that
24 would be -- how many months?  It could potentially be nine or
25 ten months.  So I think all the Government's position is simply

```
 1  that --
 2          THE COURT:  Well, the trial would be in October.
 3          MS. LEE:  Right.
 4          THE COURT:  And, best guess, Supreme Court decision
 5  comes down in April, let's say, for a case argued in December.
 6  So from October to April, we're talking about a roughly
 7  six-month delay.  Right?
 8          MS. LEE:  Right.  And I will just state for the
 9  Record, Your Honor, that I hear what you're saying.  It's just
10  the Government's position is simply that, you know, we'd like
11  to move forward October 1st.  We think that there is a public
12  interest and an interest of the Government to move forward in a
13  timely manner.
14          THE COURT:  And what is that?  Can you put it --
15     You mentioned the possibility that somebody might not
16  remember something.  What's the other public interest in moving
17  forward?  Is there anything else?
18          MS. LEE:  I mean, I think that's the main thing.  And
19  -- I think that's the main thing.
20          THE COURT:  Okay.
21          MS. LEE:  But I think also it's that figuring out how
22  the Supreme Court is going to rule is a little bit like reading
23  tea leaves; like they may come down and say, *You know what?*
24  *This has worked for 150 years.  The dual sovereignty exists as*
25  *it should.*  They may do something different.
```

1       And so changing the course of how the Government brings
2  cases to trials and moves things along the docket, to wait for
3  a Supreme Court decision, in terms of -- I think it might
4  result in changing practice at the Federal District Court
5  level, of having to kind of wait.  So there are a lot of things
6  that Supreme Courts decide on very important topics.  And if we
7  start thinking, *Well, we don't know how they're going to*
8  *decide.  It might be, you know, eight months, nine months, six*
9  *month later*, I don't think it should affect --
10         **THE COURT:**  In Federal Court we stay cases all of the
11  time, based on a Supreme Court decision to hear a case.  I
12  mean, when the Supreme Court grants cert. in a case that's
13  going to be relevant to cases going on in the Federal
14  District Court, we frequently stay those cases.
15      I mean, most recently, the case involving arbitration, and
16  whether arbitration provisions for employees violated their
17  right to collectively bargain -- when the Court granted cert.
18  in that case, District Courts all over the country stayed cases
19  that presented that issue, awaiting the Supreme Court decision.
20      I mean, that's -- so I guess your argument that it would
21  upset how practice is in District Courts -- I guess I don't
22  understand that.  I mean, it seems consistent with typical
23  practice in District Courts to potentially to stay a case like
24  this, pending the Supreme Court decision.
25         **MS. LEE:**  Okay.  I think in a case like this, given

1   the -- given the existing binding precedent has virtually been
2   black-letter law for more than a century, I think moving
3   forward, given that that law as it currently stands has not
4   changed, is what the Government would recommend, knowing that
5   also the defendant has remedies, should, let's say, in April,
6   May, June, the Supreme Court comes down and says whatever they
7   say about dual sovereignty no longer being an exception.  I
8   don't know.  I don't know what they would possibly say, but --
9   and I can't guess -- but the defendant would have the options
10  to file a direct appeal.  The defendant would have the option
11  to file a 28 United States Code 2255 motion.  He has remedies.
12       And so I would just simply say -- just to submit that we
13  would like to proceed forward.
14           **THE COURT:**  Okay.  Mr. Serra.
15           **MR. SERRA:**  Your Honor, I think you've anticipated
16  most of the rationale that I would have presented with respect
17  to requesting that this matter be continued for trial at a date
18  reasonably subsequent to Supreme Court ruling.
19       Let me just say three things quickly.
20       Firstly, we're very optimistic.  You see, why would the
21  Supreme Court take the case, unless there were at least a
22  number of them seriously considering overthrowing, you know,
23  the dual-sovereign doctrine?  And it's ripe to be overthrown,
24  but I won't go into that issue.  So we're optimistic.
25       Two.  The prosecution speculates.  You know,

1  November 23rd, briefing will be finished.  My God.  Maybe we'll
2  get a ruling in 60 days, and it won't be April, May, or June.
3  She's speculating.
4      Thirdly, the only glimmer of public interest is that, Oh,
5  the witnesses, with passage of time, which will only be six
6  months, may forget or -- I don't know -- not remember some of
7  the detail; but this case is somewhat unique in the sense that
8  there's statements and there's testimony from the prospective
9  witnesses which they can be shown to refresh their
10 recollection.
11     So from my perspective, there's no public interest in
12 having my client, you know, go in April, let's just say, versus
13 October 1.
14     See, we can do it this way.  And I don't -- it's a waste
15 of time.  I can make a motion before you; dismissal on double
16 jeopardy.  You would deny it.  Then I would go to the
17 Ninth Circuit.  They would stay it.
18     And why put me to, you know, a needless procedure?
19     I think that, you know, all of the criteria here fit into
20 a situation where we should postpone this trial until after the
21 Supreme Court rules, Your Honor.
22         **THE COURT:**  Of course, the consequence of that is
23 that your -- your client will be in custody until --
24         **MR. SERRA:**  Well, if he goes down, he's going to get
25 ten years.  He's going to get a heck of a lot more than waiting

1  six more months.
2          **THE COURT:**  Okay.  Okay.  I will give it a little bit
3  more thought, and issue a written ruling very shortly.
4          **MR. SERRA:**  Thank you, Your Honor.
5          **MS. LEE:**  Thank you, Your Honor.
6          **THE COURT:**  Thank you.
7       (At 10:23 a.m. the proceedings were adjourned.)
8  I certify that the foregoing is a correct transcript from the
9  record of proceedings in the above-entitled matter.
10
11  *Lydia Zinn*
12  _____  August 29, 2018
    Signature of Court Reporter/Transcriber    Date
13  Lydia Zinn
14
15
16
17
18
19
20
21
22
23
24
25