UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| USA, Plaintiff, v. JOSE INEZ GARCIA-ZARATE, Defendant. | Case No. 17-cr-00609-VC-1 **ORDER DENYING MOTION TO SUPPRESS STATEMENTS BASED ON *MIRANDA* VIOLATIONS** Re: Dkt. No. 41 |
|---|---|

It is clear from the transcript and the video of the interrogation that Garcia-Zarate knowingly waived his *Miranda* rights and that his statements to the police were not coerced. Therefore, his motion to suppress his statements to the police on Fifth Amendment grounds is denied.

With respect to *Miranda*, in an early portion of the interrogation, the officers were attempting to learn Garcia-Zarate's age. Garcia-Zarate was having difficulty articulating his age to the officers, and appeared to be saying that he was born in 1863. He had just woken up from a nap and appeared disoriented. And the conversation was in English, which Garcia-Zarate had difficulty speaking and understanding. Seemingly in response to the difficulty Garcia-Zarate was having, the officers told him they would speak to him later. One officer said: "That's alright, you know, we'll wait. We'll talk next time." Garcia-Zarate responded: "Yeah." Then the other officer said: "Want to have a conversation in a little bit?" Garcia-Zarate responded: "No." Then the first officer stated: "You know, we'll just talk in a second." Then Garcia-Zarate stated: "Maybe 50,

53."[1] Given this context, it would be unreasonable to interpret Garcia-Zarate's utterance of the word "no" as an expression of a desire to remain silent, particularly when, as the officers started to walk out of the interrogation room, Garcia-Zarate did not maintain the silence that he now claims he desired; instead he resumed his conversation with the officers. It is far more likely that Garcia-Zarate simply didn't understand what the officers were saying, or that he was saying "no" to take back his earlier statement that he was born in 1863, or that he was saying "no" out of a desire to continue the conversation right then rather than pausing and resuming it later.

A little while after this exchange, the officers brought in a Spanish language interpreter, having experienced difficulty obtaining basic biographical information from the suspect in English. By this point, Garcia-Zarate seemed more awake and less disoriented. But Garcia-Zarate contends that the interpreter made a fatal mistake when reading the *Miranda* warnings. Specifically, he contends that the interpreter advised him of the right to "wait for silence," rather than advising him of the right to "remain silent." It's true that the interpreter said that Garcia-Zarate had the right "de a guardar silencio," which could be heard as the right "de aguardar silencio" – literally, the right "to wait for silence." But it's highly implausible that Garcia-Zarate could have understood it this way. Taken in context, it's highly likely that Garcia-Zarate could only have understood the interpreter to be telling him that he had the right "a guardar silencio," which means "to remain silent." This would likely be true for anyone, but it's particularly true for Garcia-Zarate, who had been arrested many times previously, and therefore can reasonably be assumed to have received the *Miranda* warnings many times previously.

Finally, Garcia-Zarate points to a subsequent exchange in which the topic of lawyers came up. He attempts to portray this exchange as one in which he asserted his right to counsel, but the contrary is true. During this portion of the interrogation, the officers began to make more direct accusations that Garcia-Zarate shot Kate Steinle. Garcia-Zarate responded in somewhat belligerent fashion, accusing the police officers of being corrupt, saying that he was from

---

[1] Although the transcript says, "Maybe 50, 53," on the video it sounds more like, "Maybe 60….63."

Columbia, and threatening that he and his Columbian friends would unleash their lawyers on the police. This conversation was difficult to follow because the people in the room were speaking over one another in rapid-fire fashion. But in one part of the conversation, in response to a question from an officer asking why he wanted a lawyer, Garcia-Zarate made clear that he was not asking for a lawyer or attempting to end the interrogation; rather he was threatening the bring down the police with his allegations that they are corrupt. *See* Interrogation Transcript, vol. 1, 65-66.

Accordingly, the totality of the interrogation makes clear that Garcia-Zarate knowingly waived his *Miranda* rights and that the officers did not violate those rights. Similarly, the totality of the interrogation and the circumstances surrounding it show that Garcia-Zarate's statements were voluntary; although the police certainly attempted to get him to confess to shooting Steinle, and although they attempted to put words in his mouth, their conduct was not nearly so coercive or deceptive as to render the interrogation a violation of due process. *Compare Campos v. Stone*, 201 F. Supp. 3d 1083, 1089-90, 1097-99 (N.D. Cal. 2016).

**IT IS SO ORDERED.**

Dated: December 23, 2019

VINCE CHHABRIA
United States District Judge