1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   KEVIN J. BARRY (CABN 229748)
    ERIC CHENG (CABN 274118)
5   Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-6557
        FAX: (415) 436-7234
8       Kevin.Barry@usdoj.gov
        Eric.Cheng@usdoj.gov
9
    Attorneys for United States of America
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                     SAN FRANCISCO DIVISION
13

14   UNITED STATES OF AMERICA,              )   Case No. CR 17-0609 VC
                                            )
15           Plaintiff,                     )   **UNITED STATES' MOTION *IN LIMINE* NO. 1
                                            )   TO ADMIT DEFENDANT'S STATEMENT AT
16       v.                                 )   ARRAIGNMENT**
                                            )
17   JOSE INEZ GARCIA-ZARATE,               )   Trial Date:    January 15, 2020
                                            )
18           Defendant.                     )   Pretrial Conf. January 8, 2020
                                            )   Time:          10:00 a.m.
19                                          )
     _____        )   Judge:        Hon. Vince Chhabria
20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................................2

STATEMENT OF FACTS ..........................................................................................................2

ARGUMENT ...............................................................................................................................4

I.      Admissions Are Beneficial To The Administration Of Justice ......................................4

II.     Defendant Was Not Subject To Interrogation ................................................................4

III.    Precluding The Defendant's Statement Would Hamper The Truth Finding Function
Of The Trial ..............................................................................................................................6

IV.     The Defendant's Statement Is Non-Hearsay and Self-Authenticating ..........................7

CONCLUSION............................................................................................................................8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

The United States respectfully moves the Court to admit a statement the defendant made during a hearing in court on November 5, 2019.  During his arraignment on the charges in his Superseding Indictment, the defendant spontaneously admitted that he possessed the firearm at issue in this case.  His statement is directly relevant, and there is no basis to exclude it.  It is also admissible non-hearsay as an admission by a party opponent as offered by the government, and it is self-authenticating under the Federal Rules of Evidence as an official court record.  Therefore, the Court should admit the statement into evidence.

# STATEMENT OF FACTS

On December 5, 2017, the Grand Jury returned an indictment charging the defendant with being a felon in possession of a firearm and ammunition, and an alien in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 922(g)(5).  Dkt. No. 1.  These charges relate to the fact that on July 1, 2015, the defendant possessed a Sig Sauer .40 caliber pistol loaded with ammunition on Pier 14 in San Francisco by the Embarcadero.  Part of the defendant's possession of that firearm involved him pulling the trigger and firing a bullet.  That bullet struck a young woman named Kate Steinle in the back, killing her.

The defendant was initially charged with a number of crimes in San Francisco Superior Court as a result of that tragic incident, including homicide and being a felon in possession of a firearm.  *People v. Garcia Zarate*, Case No. 15014736 (S.F. Sup. Ct. 2015).  At trial, the jury acquitted the defendant of the homicide charges but convicted him of being a felon in possession of a firearm.  The defendant appealed, arguing that it was error for the state court not to offer a transitory possession instruction.  *See* Cheng Decl., Ex. A, *People v. Garcia Zarate*, Case No. A153400 (Cal. Ct. Appl. 1st Dist. August 30, 2019 Order) (reversing conviction for failure to give transitory possession instruction).[1]  In the state

---

[1] As a matter of federal law, there is no defense based on the amount of time a defendant possessed a firearm.  In effect, there is strict liability for prohibited persons who possess firearms for any duration. *See United States v. Johnson*, 459 F.3d 990 (9th Cir. 2006) ("The statute is precautionary; society deems the risk posed by felon-firearm possession too great even to entertain the possibility that some felons may innocently and temporarily possess such a weapon. . . . As such, 'the courts have ruled that federal firearms laws impose something approaching absolute liability.'") (citing *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983)).

1  case, the issue of a transitory possession was salient because the defense at trial was that the defendant

2  was sitting on Pier 14 and picked something up wrapped in a shirt on the ground, which happened to be

3  a firearm; that it went off as he picked it up; and that he threw it in the water to keep it from going off

4  again.  *Id.* at 2 (summarizing the defense at trial).

5        In August 2018, the Court granted the defendant's request to continue this trial until the Supreme

6  Court decided *Gamble v. United States*, No. 17-646.  Dkt. No. 19.  In June 2019, the Supreme Court

7  decided *Gamble*, rejecting the petitioner's arguments and upholding the dual-sovereignty doctrine.

8  *Gamble v. United States*, 139 S. Ct. 1960 (2019).  This prosecution then proceeded.

9        In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Supreme Court decided that for a

10 defendant to be liable for a violation of Section 922(g), the defendant must know of his or her prohibited

11 status at the time he or she possessed a firearm.  In response, on October 17, 2019, the Grand Jury

12 returned a Superseding Indictment adding the requisite element of the defendant's knowledge to the

13 charges of being a felon and an alien in possession of a firearm and ammunition.  *See* Dkt. No. 29.

14       On November 5, 2019, the defendant was arraigned on the Superseding Indictment.  Dkt. No. 33.

15 During the arraignment, at Judge Thomas S. Hixson's direction, the government apprised the defendant

16 of the charges and the maximum penalties.

17       THE COURT:  And good morning. Mr. Zarate, the grand jury has returned a
18 superseding indictment charging you with criminal offenses.  You are here today to be
    arraigned on the superseding indictment.
      At this time, I'll ask the Government to summarize the charges and the maximum
19 penalties.

20       MR. CHENG:  Yes, Your Honor.  The Defendant is charged in the superseding
indictment under Title 18 of the United States Code, Section 922(g)(1), felon in
21 possession of a firearm and ammunitions, and under Title 18 of the United States Code,
Section 922(g)(5), alien in possession of a firearm and ammunition.  The maximum
22 penalty as to both counts is as follows: Ten years' imprisonment, $250,000 fine, three
years' supervised released, $100 mandatory special assessment, and forfeiture [and]
23 restitution.

24 Dkt. No. 42 at 2:16-3:5 (Corrected Transcript of November 5, 2019 arraignment);[2] Dkt. Nos. 34 & 39

25 (Order for November 5, 2019 arraignment Audio Recording).[3]

26       Immediately afterward, Judge Hixson turned to the defendant and asked him if he understood the

27

28

---

[2] *See also* Cheng Decl., Ex. B, a copy of the official transcript.

[3] *See also* Cheng Decl., Ex. C, referencing a copy of the audio recording.

charges and the maximum penalties.  The defendant responded, "No."  Dkt. No. 42 at 3:6-8.  When the

Court inquired what it was that the defendant didn't understand, he responded as follows:

> THE COURT:  What is it that you don't understand?
>
> MR. GARCIA-ZARATE:  It's saying that it's just one charge – one charge, it being illegal to have a weapon in my pants, the one that I had that day at Embarcadero, in my pants pocket.

Dkt. No. 42 at 3:22-25.  The defendant then asked further questions about the charge of being an alien in

possession of a firearm, inquiring whether it had to do with immigration.  *Id.* at 4.

## ARGUMENT

### I.    Admissions Are Beneficial To The Administration Of Justice

In light of the Fifth Amendment, courts have repeatedly expressed concern with the admissibility

of coerced or involuntary confessions.  This is not to say, however, that courts view all confessions or

admissions of guilt in a negative light.  In fact, the opposite is true when statements are volunteered.

"Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not

coerced, are inherently desirable."  *Oregon v. Elstad*, 470 U.S. 298, 305 (1985).  "Of course, voluntary

statements offered to police officers 'remain a proper element in law enforcement.'"  *Pennsylvania v.

Muniz*, 496 U.S. 582, 589 (1990) (quoting *Miranda v. Arizona*, 384 U.S. 436, 478 (1966)).  "The Fifth

Amendment itself does not prohibit all incriminating admissions; absent some officially coerced self-

accusation, the Fifth Amendment privilege is not violated by even the most damning admissions."  *New

York v. Quarles*, 467 U.S. 649, 645 (1984) (citation omitted).  "Any statement given freely and

voluntarily without any compelling influences is, of course, admissible in evidence. . . .  Volunteered

statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by

our holding today."  *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).  "The Constitution does not prohibit

every element which influences a criminal suspect to make incriminating admissions."  *United States v.

Washington*, 431 U.S. 181, 186-88 (1977) (citations omitted).

### II.   Defendant Was Not Subject To Interrogation

The concern expressed by courts before *Miranda* was that statements made by defendants be

voluntary, be consistent with due process, and not be the product of improper coercion by police.  *See

Elstad*, 470 U.S. at 304 ("Prior to *Miranda*, the admissibility of an accused's in-custody statements was

1   judged solely by whether they were "voluntary" within the meaning of the Due Process Clause.").

2   "Those [pre-*Miranda*] cases refined the test into an inquiry that examines 'whether a defendant's will

3   was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United*

4   *States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 226 (1973)).

5   The decision in *Miranda* expanded the due process test to ensure that suspects who are subject to police

6   interrogation are informed of their rights.  "In *Miranda*, the Court noted that reliance on the traditional

7   totality-of-the-circumstances test raised a risk of overlooking an involuntary custodial confession, a risk

8   that the Court found unacceptably great when the confession is offered in the case in chief to prove

9   guilt." *Id.* at 442 (citation to *Miranda* omitted).

10          For the Court in *Miranda*, the key issue was that the person was subject to interrogation.

11   "*Miranda* was concerned with coercion inherent in police interrogation."  *Dickerson*, 530 U.S. at 434.

12   "[W]e must remember the purpose behind our decisions in *Miranda* and *Edwards*: preventing

13   government officials from using the coercive nature of confinement to extract confessions that would

14   not be given in an unrestrained environment."  *Arizona v. Mauro*, 481 U.S. 520, 529-30 (1987)

15   (admitting recorded statements defendant made to his wife while in police custody because there was no

16   interrogation).  "*Miranda* applies only 'where a suspect in custody is *subjected to interrogation*.'"  *Cox v.*

17   *Del Papa*, 542 F.3d 669, 676-77 (9th Cir. 2008) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300

18   (1980)) (emphasis added by the *Cox* court) (spontaneous statements to officers not subject to

19   suppression).  The concern of the Court in *Miranda* was that the "interrogation environment" created by

20   the interplay of interrogation and custody would "subjugate the individual to the will of his examiner"

21   and thereby undermine the privilege against compulsory self-incrimination.  *Miranda*, 384 U.S. at 457–

22   458.  "The *Miranda* decision was based in large part on this Court's view that the warnings which it

23   required police to give to suspects in custody would reduce the likelihood that the suspects would fall

24   victim to constitutionally impermissible practices of police interrogation in the presumptively coercive

25   environment of the station house."  *Quarles*, 467 U.S. at 656.

26          In this case, when Judge Hixson asked the defendant at the arraignment what aspect of the

27   charges or maximum penalties he did not understand, the Court was not subjecting him to any

28   interrogation.  While the defendant was in the custody of the U.S. Marshals, that does not mean that

1   questions posed to him constitute an interrogation. "'Interrogation,' as conceptualized in the *Miranda*

2   opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode*

3   *Island v. Innis,* 446 U.S. 291, 300 (1980) (footnote omitted). Further, Judge Hixson is not a law

4   enforcement officer. *See id.* ("[In *Miranda*] the Court observed that '[b]y custodial interrogation, we

5   mean questioning initiated by law enforcement officers after a person has been taken into custody or

6   otherwise deprived of his freedom of action in any significant way.'"). Judge Hixson did not ask

7   questions of the defendant that were designed to have him admit guilt. The Court did not use any

8   subterfuge or bring to bear any "psychological ploys, such as to posit the guilt of the subject, to

9   minimize the moral seriousness of the offense, and to cast blame on the victim or on society." *Id.* at 299

10  (citation and alterations omitted). All Judge Hixon did was to inquire of the defendant what aspect of

11  the arraignment he failed to understand. His spontaneous confession was an unexpected response to the

12  routine questioning that takes place at every arraignment. *See, e.g.*, *id.* at 301-02 ("But, since the police

13  surely cannot be held accountable for the unforeseeable results of their words or actions, the definition

14  of interrogation can extend only to words or actions on the part of police officers that they should have

15  known were reasonably likely to elicit an incriminating response.").

16  **III.   Precluding The Defendant's Statement Would Hamper The Truth Finding Function Of**
        **The Trial**
17

18      It is well settled that seeking the truth is the core function of a trial. *See Kansas v. Cheever*, 571

19  U.S. 87 (2013) ("Excluding this testimony would have undermined *Buchanan* [*v. Kentucky*, 483 U.S.

20  402 (1987)] and the core truth-seeking function of the trial.") (defendant's statements to a psychologist

21  admissible to rebut defense expert testimony). In his interview with police, the defendant claimed that

22  he found an object wrapped in a rag that happened to be a firearm, and when he picked it up, it went off.

23  He then threw it in the water to prevent it from going off again. *See* Dkt. No. 44, Attachment B at 118-

24  21, 123-27, 133, 135-36 (excerpts of Vol. 2 of transcript of the defendant's July 2, 2015 interview with

25  police). During the state court trial, the defense repeatedly argued to the jury that this version of events

26  is what happened on Pier 14 on July 1, 2015. *See* Cheng Decl., Ex. A, *People v. Garcia Zarate*, Case

27  No. A153400, at 2, 7, 12, 18 (Cal. Ct. Appl. 1st Dist. August 30, 2019 Order) (summarizing defense

28  theory and arguments at trial). Now, in view of the defendant's statement in open court that he had the

1  firearm in his pants pocket when he was at the Embarcadero (where Pier 14 is located), it is clear that

2  the defense narrative at the state court trial was false.

3      If, as expected, the defense in this trial attempts to argue that the defendant picked up an object

4  wrapped in a shirt without knowing what it was, the jury needs to hear the defendant's admission that he

5  actually had the weapon in his pants that day.  Precluding the jury from hearing this statement would

6  significantly impair their ability to determine the facts of the case—specifically, whether the defendant

7  possessed the firearm and ammunition at issue here.

8  **IV.    The Defendant's Statement Is Non-Hearsay and Self-Authenticating**

9      The government intends to admit this statement in its case in chief, and the Court should admit

10  the statement into evidence as a party-opponent admission offered by the government that is self-

11  authenticating under the Federal Rules of Evidence as an official court record.  Prior statements made by

12  a defendant are non-hearsay and are admissible under the Federal Rules of Evidence as admissions by a

13  party opponent if offered against a defendant by the government.  Fed. R. Evid. 801(d)(2)(A).

14  Moreover, the audio recording and transcript are court records, with the official transcript stored on the

15  CM/ECF (Case Management/Electronic Case Files) system for this case.  *See* Dkt. No. 42 (Corrected

16  Transcript of November 5, 2019 arraignment); Dkt. Nos. 34 & 39 (Order for November 5, 2019

17  arraignment Audio Recording).  There can be no dispute as to the identification and authentication of

18  these court records, and they should be admitted by the Court in lieu of requiring live testimony from a

19  custodian of the District Court.  *See* Fed. R. Evid. 901(b)(7), 902.

20      Accordingly, the government moves this Court for an *in limine* order admitting the statement

21  offered by the government into evidence.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

       For the reasons set forth above, the United States respectfully requests that the Court to admit the statement the defendant made during his arraignment on November 5, 2019 that he possessed the firearm at issue in this case.

DATED: December 26, 2019                         Respectfully submitted,

                                            DAVID L. ANDERSON
                                            United States Attorney

                                          _____/s/_____
                                            KEVIN J. BARRY
                                            ERIC CHENG
                                            Assistant United States Attorneys