J. TONY SERRA SBN 32639
MARIA BELYI SBN 270019
3330 GEARY BLVD., THIRD FLOOR EAST
SAN FRANCISCO, CA 94118
TELEPHONE: (415) 986-5591
FACSIMILE: (415) 421-1331

ATTORNEYS FOR DEFENDANT
JOSE INEZ GARCIA-ZARATE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOSE INEZ GARCIA-ZARATE, <br><br> Defendant. | No. 3:17-CR-609-VC <br><br> MR. GARCIA-ZARATE'S RESPONSE TO GOVERNMENT'S MOTIONS IN LIMINE <br><br> Date: January 8, 2020 <br> Time: 10:00 a.m. <br> Courtroom: Hon. Vince Chhabria |

**1. Mr. Garcia-Zarate objects to the government's use of Mr. Garcia-Zarate's partial statement at the arraignment on November 5, 2019.**

Mr. Garcia-Zarate addressed this issue in his 19th motion *in limine*, and references that motion in support of his objection. Introduction of the statement would undermine Federal Rule of Evidence Rule 106 and cause undue prejudice, confusion, undue delay, mislead the jury, and waste time under Federal Rule of Evidence 403.

**2. Mr. Garcia-Zarate objects to the government's second motion *in limine*; the government should be strictly limited in evidence it intends to present as to Ms. Steinle's shooting.**

In its second *in limine* motion, the government requests permission to admit evidence relating to the shooting of Ms. Steinle on July 1, 2015. The government does not specify which evidence it intends to present.

The question in this case is whether, on July 1, 2015, Mr. Garcia-Zarate knowingly possessed a weapon while being a felon and while being in this country illegally. The results of the

alleged possession of this weapon are not at issue in this litigation and are thus not relevant. Fed. R. Evid. R. 403.

Evidence of Ms. Steinle's death will undoubtedly create questions in the jury's mind as to why this litigation is limited to allegations of Mr. Garcia-Zarate's possession of a firearm. If the prosecution presents evidence of Ms. Steinle's death, Mr. Garcia-Zarate should be allowed to present evidence of his acquittal of the killing of Ms. Steinle in San Francisco Superior Court.

**3.  Mr. Garcia-Zarate must be allowed to present his own statements when the government's evidence either misleads the jury or fails to present a complete version of the statement to the jury.**

In its third motion *in limine*, the government proposes that the Court to allow it to offer extracted statements by Mr. Garcia-Zarate to the jury, while disallowing him to complete the entirety of the statement. The government does not specify which statements it intends to use. Mr. Garcia-Zarate strenuously objects to this proposal as it would (1) result in a potentially distorted and untrue presentation of his statements to the jury; (2) force him to choose between an unfair presentation of evidence to the jury and surrendering his Fifth Amendment right not to testify; (3) deprive him of his rights under the Confrontation Clause.

Federal Rule of Evidence 106 is based on two considerations: "the misleading impression created by taking matters out of context," and "the inadequacy of repair work when delayed to a point later in the trial." See Fed. R. Evid. R. 106, Notes of Advisory Committee on Rules; see also United States v. Walker, 652 F. 2d 708, 713 (7th Cir. 1981). Thus, "an omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Castro, 813 F. 2d 571, 575-576 (2nd Cir. 1987).

While this rule technically governs only writings or recorded statements, "courts historically have required a party offering testimony as to an utterance to present fairly the 'substance or effect' and context of the statement." Id. at 576. So even if "verbal precision may be unnecessary, the testimony should at least represent the tenor of the utterance as a whole, and not mere fragments of it." Id. (referencing Wigmore on Evidence § 2099, at 608-11 (Chadbourn rev. ed. 1978)).

Moreover, this Court has the power and obligation to exercise control over the presentation of evidence so as to make the procedures "effective for determining the truth." Fed. R. Evid. R. 611(a)(1).

While the rule of completeness does not compel admission of otherwise inadmissible hearsay evidence, it was "designed to prevent the Government from offering a 'misleadingly-tailored snippet.'" United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1160 (Cal. Cent. Dist. 2008) Thus, when the government introduces only a portion of an "inextricably intertwined statement," "the rule of completion warrants admission of statements in their entirety." Id. "Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement." Id.

The cases cited by the government do not yield a different result. See, e.g., United States v. Nakai, 413 F.3d 1019, 1022 (9th Cir. 2005) (stating that the unadmitted hearsay was not "necessary to place the admitted statement in context"); see also United States v. Mitchell, 502 F.3d 931, 965 (9th Cir. 2007) ("The inculpatory statements elicited on direct examination of [the agents] were not taken out of context or otherwise distorted."); United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) (stating only that "if the complete statement [does] not serve to correct a misleading impression in the edited statement that is created by taking something out of context, the Rule of Completeness will not be applied to admit the full statement") (citations and quotations omitted) (brackets in original).  And, contrary to the government's contention, circuit courts confirm that the rule of completeness can result in the introduction of otherwise inadmissible evidence.  See, e.g., United States v. Bucci, 525 F.3d 116, 133 (1st Cir. 2008) ( "[O]ur case law unambiguously establishes that the rule of completeness may be invoked to facilitate the introduction of otherwise inadmissible evidence."); United States v. Sutton, 801 F.2d 1346, 1368 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.")

In a criminal case, if the government is not required to submit the full statement, excluded portions may never be admitted if the defendant does not testify, and thus, there would be no such repair work that "could remedy the unfairness of a selective presentation later in the trial." United States v. Walker, supra, 652 F. 2d at 713.

In Walker, the defendant chose not to testify in his second trial, and the government read into the record half of his testimony. Id. at 712-713. The Seventh Circuit Court of Appeals weighed the government's burden of simply reading the entire testimony into the record with the "substantial" unfairness to the defendant which resulted in the exclusion of his explanation and an ultimate punishment for not taking the stand. Id. at 714. The Court of Appeals ultimately found it was not harmless error, given that the evidence in the case was "close and often conflicting." Id. at 715.

Here, the government has not presented to the defense the snippets it intends to present for the jury. However, the implication is clear that the government intends to introduce only statements it sees as inculpatory. Mr. Garcia-Zarate insists that in his interrogation on July 2, 2015 and in his ABC statement, the exculpatory statements are inextricably intertwined and must thus be admitted.

**4. Mr. Garcia-Zarate must be allowed to use transitory and fleeting possession defenses, arguments, and evidence.**

The prosecution's fourth motion *in limine* shows that it is on notice that Mr. Garcia-Zarate intends to use a transitory or fleeting possession defense. Mr. Garcia-Zarate's statement to law enforcement and evidence presented at the San Francisco Superior Court trial of the innocent and fleeting nature of Mr. Garcia-Zarate's encounter with the weapon also put the government on notice of this defense.

The government's attempt to exclude all evidence and arguments regarding Mr. Garcia-Zarate's innocent and fleeting possession of the firearm should be rejected.

First, while it is true the Ninth Circuit did not recognize an innocent possession defense in United States v. Johnson, 459 F.3d 990 (9th Cir. 2006), this case involves an issue not addressed by the Johnson court. In Johnson, the defendant possessed the firearm for a relatively extended period of time; indeed, the police found the weapon on the defendant's bed, sitting next to his wallet. Here,

4
*Mr. Garcia-Zarate's Response to Government's Motions in Limine*

by contrast, the alleged possession by Mr. Garcia-Zarate was both unintentional *and* extremely brief. Because any possession of the firearm was both innocent and extraordinarily brief, the holding of Johnson does not apply. See, e.g., Cohens v. State of Virginia, 19 U.S. 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."); see also United States v. Williams, 389 F.3d 402, 405 (2d Cir.2004) (suggesting that "circumstances 'may be imagined' where possession of a firearm is too fleeting to violate 18 U.S.C. [§ ] 922(g)"); United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir.1999) (assuming that there may be a "fleeting possession" defense where the defendant's possession was momentary, and he either lacked knowledge that he possessed contraband or had a legally justifiable reason to possess it temporarily, such as for self-defense).[1]

      Second, the government simply ignores that the evidence of Mr. Garcia-Zarate's fleeting and innocent possession is directly relevant to the element of section 922(g) that the government itself must prove at trial. The government must prove beyond a reasonable doubt that Mr. Garcia-Zarate was "in knowing possession of a firearm." Johnson, 459 F.3d at 996. Any evidence showing that Mr. Garcia-Zarate did not know that the wrapped item was a firearm, or that he abandoned possession immediately upon realizing that it was, is directly relevant to whether Mr. Garcia-Zarate knowingly possessed the weapon – the key element that the government must prove to the jury. See, e.g., United States v. Teemer, 394 F.3d 59, 63 (1st Cir. 2005) (stating that while the brevity of possession does not alone preclude a conviction under section 922(g), "[t]his does not mean that brevity or any other circumstance must be ignored by a jury in gauging whether intentional possession occurred"). To exclude all evidence or argument regarding Mr. Garcia-Zarate's unintentional and extraordinarily brief possession of the firearm would unconstitutionally relieve government of its burden of proof and effectively force the defendant to proceed to trial with both hands tied behind his back, in direct contravention of basic principles of fairness and due process.

---

[1] The facts here are also distinguishable from United States v. Mason, 233 F.3d 619 (D.C. Cir. 2000), which the Ninth Circuit declined to follow in Johnson. In Mason, the possession was neither unintentional nor extraordinarily brief. Id. at 621.

**5. Mr. Garcia-Zarate objects subsections (B) and (D) of the government's fifth *in limine* motion.**

Mr. Garcia-Zarate objects to subsection (B) of the government's fifth motion *in limine*, wherein the government moves that Mr. Garcia-Zarate not be allowed to refer to the "existence or results of other proceedings." See Dkt. 61, 10:5-6. Given that many, if not all, witnesses in this trial will be the same as in the State Court proceedings, Mr. Garcia-Zarate foresees a necessity to refer to other proceedings for impeachment purposes.

Further, if this Court grants the government permission to present evidence of Ms. Steinle's death, Mr. Garcia-Zarate would ask for an advisement to the jury that he was acquitted of those allegations in state court.

Mr. Garcia-Zarate further objects to subsection (D) of its fifth motion *in limine*, wherein the government argues that the defense should be prohibited from introducing evidence of prior ownership of the weapon and evidence that the weapon was stolen a few days prior to July 1, 2015. See Dkt. 61 11:4-20. The prior ownership of the gun, as well as the fact that it was stolen just days prior to July 1, 2015 in close proximity to Pier 14 is relevant to the defense and Mr. Garcia-Zarate is entitled to present that evidence.

**6. Mr. Garcia-Zarate objects to government's Motion *in limine* number 7.**

Mr. Garcia-Zarate addressed this issue in his motions *in limine*. See Dkt. 58, pg. 2, para. 1. Mr. Garcia-Zarate maintains that the stipulation that was entered into with the government nullifies the need to present any evidence of his convictions for illegal reentry.

Two of the convictions that the government cites are beyond the ten-year period provided by Fed. R. Evid. R. 609(b). Further, while illegal re-entry is not similar to possession of a firearm and ammunition, the allegation of multiple illegal reentries aggravates the "illegal alien" status alleged in Count Two (and previously stipulated to). This aggravation would unduly prejudice the jury, while in no way helping them answer the question of whether Mr. Garcia-Zarate unlawfully possessed a weapon or ammunition on July 1, 2015.

///

///

| | |
|---|---|
| Dated: January 2, 2020 | Respectfully submitted, |
| | ___/s/ Maria Belyi_____ |
| | J. TONY SERRA |
| | MARIA BELYI |
| | Attorneys for Defendant |
| | JOSE INEZ GARCIA-ZARATE |