1 | DAVID L. ANDERSON (CABN 149604)
United States Attorney

2 | HALLIE HOFFMAN (CABN 210020)
3 | Chief, Criminal Division

4 | KEVIN J. BARRY (CABN 229748)
ERIC CHENG (CABN 274118)
5 | Assistant United States Attorneys

6 |     450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
7 |     Telephone: (415) 436-7200
    FAX: (415) 436-7234
8 |     Kevin.Barry@usdoj.gov
    Eric.Cheng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) Case No. CR 17-609 VC |
|---|---|
| Plaintiff, | ) **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS** |
| v. | ) ***IN LIMINE* NOS. 1–21 (DKT NO. 58)** |
| JOSE INEZ GARCIA-ZARATE, | ) Trial Date: January 15, 2020 |
| Defendant. | ) Pretrial Conf.: January 8, 2020<br>) Time: 10:00 a.m.<br>) Judge: Hon. Vince Chhabria |

U.S. RESP. & OPP. TO DEF. MOTS. IN LIMINE
CR 17-609 VC

## **TABLE OF CONTENTS**

I.     No. 1: "Motion to Exclude Prior Convictions and Bad Acts for All Purposes" ..............1

II.    No. 2: "Motion to prohibit testimony that does not go to the allegation of possession of the firearm"..............................................................................................................................1

III.   No. 3: "Motion to exclude any references to DNA evidence" .......................................3

IV.   No. 4: "Motion to exclude any reference to there being gun-shot residue (GSR) evidence found on Mr. Garcia-Zarate" ....................................................................................3

V.    Nos. 5, 6, and 8: "Motion to exclude any medical examiner photographs," "Motion to exclude coroner testimony," and "Motion excluding certain videos" ........................................4

VI.   No. 7: "Motion regarding adjustments of Video Footage" ............................................5

VII.  No. 9: "All files and exhibits be generically named" ...................................................5

VIII. No. 10: "Defense is relying on prosecution witness list" ...............................................5

IX.   No. 11: "Motion to exclude all witnesses during the proceeding" ..................................5

X.    No. 12: "All witnesses shall be subject to recall upon being dismissed from the stand" ................6

XI.   No. 13: "Disclosure of any and all information regarding civilian witnesses' criminal records, prior bad acts, crimes of moral turpitude" ....................................................................6

XII.  No. 14: "Motion regarding the theft of firearm in question" .........................................6

XIII. No. 15: "Exclusion of any testimony, documents, physical evidence not disclosed to defense"..............................................................................................................................6

XIV. No. 16: "Addressing parties by their names rather than conclusory or argumentative labels, which assume facts not in evidence and undermine the presumption of innocence" ...............7

XV.  No. 17: "Exclusion of opinion testimony from the prosecution witnesses regarding Mr. Garcia Zarate's guilt" ........................................................................................................7

XVI. No. 18: "Exclusion as to opinion or expert opinion from prosecution witnesses as to the veracity of Mr. Garcia Zarate's statements" ....................................................................7

XVII. No. 19: "Exclusion of Statement by Mr. Garcia Zarate at Arraignment" .......................7

XVIII. No. 20: "Prohibition on referring to the firearm as a 'murder weapon.'" ........................9

XIX. No. 21: "Prohibition on saying that Mr. Garcia-Zarate fired or used the gun." ...............9

1  The United States (the "government") submits the following response and opposition to the
2  defendant's motions *in limine*. Dkt. No. 58.

## I.  No. 1: "Motion to Exclude Prior Convictions and Bad Acts for All Purposes"

The government opposes the defendant's motion to exclude evidence of his prior convictions and bad acts for all purposes.

First, if the defendant testifies, the government seeks to use the defendant's prior convictions (*see* Dkt. No. 52 at Ex. 7) for impeachment purposes, as set forth in the government's Motion *In Limine* No. 7. *See* Dkt. No. 61 at 12–14. If the defendant testifies that he did not possess the firearm and ammunition, he puts his credibility at issue and his prior convictions should be admitted to impeach him under Federal Rule of Evidence 609. *See id.* The defendant's prior convictions are sufficiently distinct from the firearm and ammunition charges so as to not prejudice the defendant. *See id.* Moreover, his 2011 conviction for Illegal Re-Entry Into the United States After Deportation in violation of 8 U.S.C. § 1326 falls within the ten-year period provided by Rule 609(b), and the defendant had been out of jail for less than a year. *See id.* Accordingly, the defendant's motion should be denied because prior conviction evidence for the defendant is appropriate for impeachment purposes if the defendant testifies.

Second, as set forth in the government's Motion *In Limine* No. 2, the government seeks to introduce evidence regarding the shooting of Ms. Steinle not only because it is relevant to the charged conduct but also because it is inextricably intertwined with the charged offenses. *See* Dkt. No. 61 at 1–4. To the extent that the defendant further seeks to exclude such evidence as "bad acts" under Federal Rule of Evidence 404(b), the defendant's motion should be denied because the evidence is probative of knowledge, identity, absence of mistake, and motivation under Rule 404(b) as set out in the government's Motion *In Limine* No. 2. *See* Dkt. No. 61 at 1–4.

## II.  No. 2: "Motion to prohibit testimony that does not go to the allegation of possession of the firearm"

The defendant has moved to prohibit the testimony of James Steinle, arguing that his testimony does not address possession of the firearm. The government will work with the defense to agree to a stipulation regarding the facts for which Mr. Steinle's testimony is necessary, as outlined below, but in the event those efforts are unsuccessful, the defense presents no basis to preclude this testimony.

While Mr. Steinle cannot testify to the specifics of the defendant's actual possession of the firearm and ammunition, his testimony is necessary because it is part of the same transaction of that possession and because it helps the government present the jury with a coherent and comprehensible story of what happened on Pier 14 on the evening of July 1, 2015. *See United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). The most critical aspect of that evening, of course, is that the defendant possessed the firearm by pulling the trigger, resulting in Mr. Steinle's daughter being shot as she stood beside him.

The facts about which Mr. Steinle will testify are inextricably intertwined with the defendant's possession of the firearm and ammunition, including his possession of one round of ammunition that was recovered from Kate Steinle's body. The facts include: (1) the Steinles' presence at Pier 14 on the evening of July 1, 2015; (2) their location on the pier at the time of the gunshot; (3) the physical actions by Mr. Steinle and his daughter immediately after the shot; (4) the reactions of others to Kate Steinle's collapse; (5) Mr. Steinle's observation of a gunshot in Kate Steinle's back; (6) laying a foundation for photographs taken on Pier 14 immediately before the shooting; (7) identifying the individuals in those photographs; and (7) identifying him and his daughter in a video of the shooting.

These facts are probative to the identity of the defendant because it is the reason that multiple witnesses drew their attention to the scene of the shooting, immediately identified the defendant as the suspect, and described him to authorities investigating the shooting. It also is probative to the defendant's knowledge and absence of mistake of his possession of the firearm, as well as his potential motivation for disposing of the gun and fleeing the scene, because the firearm had to be possessed by the defendant to pull the trigger and fire the weapon.

The defendant's effort in this motion is similar to *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992). In *Daly*, the defendant was convicted of being a felon in possession, under 18 U.S.C. § 922(g)(1). The case arose from an 11 hour shootout between the defendant and San Diego police officers, and the trial court admitted evidence of the shootout. On appeal, the defendant claimed this was improper. In his view, "the government need only show that he was a convicted felon in possession of a firearm, and that he surrendered after eleven hours of surveillance when police fired tear gas into the room." *Id.* The Ninth Circuit rejected this claim, holding that evidence of the shootout put the

1 defendant's illegal activity in context and served to rebut claims of self-defense, and thus, was
2 sufficiently intertwined to be admissible. *Id.*

3     Here, the facts about which Mr. Steinle will offer testimony are both part of the same transaction
4 with which the defendant is charged and are necessary to tell the story of what happened on Pier 14.
5 Should the parties not reach a stipulation on these important facts, the Court should not preclude his
6 testimony.

## III. No. 3: "Motion to exclude any references to DNA evidence"

8     The government opposes the defendant's motion to exclude *any* references to DNA evidence.
9 During the government's case in chief, the government may introduce evidence that testing for DNA
10 was performed on the firearm at issue after it was retrieved from the San Francisco Bay, which returned
11 no positive results. The government is open to entering into a stipulation with the defense regarding
12 these limited facts.

13     Contrary to the defendant's assertion, the fact that DNA testing was performed carries more than
14 "zero probative value" as it relates to the investigative steps carried out by law enforcement in this case.
15 The government will not suggest that evidence matching the defendant's DNA was actually found in the
16 results, removing any possibility of prejudice to the defendant. *See* Fed. R. Evid. 403.

## IV. No. 4: "Motion to exclude any reference to there being gun-shot residue (GSR) evidence found on Mr. Garcia-Zarate"

19     The government opposes the defendant's motion to exclude any reference to gunshot residue
20 (GSR) found on the defendant. The defendant first argues that the evidence of gunshot residue should
21 be excluded because of an alleged "alteration" of lab results. *See* Dkt. No. 58 at 3. But the defendant's
22 focus on a machine printout while ignoring the entirety of the cited report of analysis is misplaced, as
23 was already established during state court proceedings. In any event, this factual allegation goes to the
24 weight, not the admissibility of such evidence, and may easily be addressed by the defendant during
25 cross examination.

26     The defendant next argues that the evidence of gunshot residue should be excluded because of an
27 allegation of "contamination" of the defendant's hands while he was handcuffed and "sweating
28 profusely." *See* Dkt. No. 58 at 3. To the contrary, the cited testimony does not state that the defendant

"spent at least forty-five minutes in the back of [a] patrol car" before his hands were covered by paper bags. *Id.* And far from putting into doubt the gunshot residue evidence, the fact that this residue persisted despite the defendant's sweat heightens its importance. In any event, this allegation by the defendant once again goes to the weight, not admissibility, of such evidence. The defendant's motion should be denied.

**V.    Nos. 5, 6, and 8: "Motion to exclude any medical examiner photographs," "Motion to exclude coroner testimony," and "Motion excluding certain videos"**

The defense has moved to exclude photographs of Kate Steinle taken by the medical examiner, testimony by the examiner, and "photographs, video or footage depicting Ms. Steinle after she was shot." With respect to the first two categories, the government will work with the defense to reach a stipulation regarding the following facts: (1) Ms. Steinle was struck in the back by a bullet; (2) the medical examiner recovered a bullet from Ms. Steinle's body; and (3) the bullet recovered from Ms. Steinle was fired from the Sig Sauer .40 caliber firearm that the SFPD recovered from the water beside Pier 14. These facts are critical because the defendant is charged with possessing that bullet, together with the ammunition that was still in that firearm when it was recovered, and because one aspect of the defendant's possession of that firearm involved him pulling the trigger and firing that bullet.

As the defense has indicated in its motion that these facts are not disputed, the government is confident that the parties can reach a stipulation on them. Dkt. No. 58 at 4:2 ("The cause of death of Ms. Steinle is not disputed nor is it an issue in this case.").

With respect to the third point, there is a video of Pier 14 that shows Ms. Steinle, her father, and the defendant prior to the shooting. It also includes the moments after she is shot. It shows her falling to the ground, being attended to by her father, and followed by the defendant standing up, throwing an object into the water, and leaving the pier. In arguing to exclude it, the defense claims that showing the video to the jury "would create a danger and substantial likelihood of an undue consumption of court time, undue prejudice, confusing the issue, or misleading the jury." Dkt. No. 58 at 4:22-23. The video would do the exact opposite, as it is critical evidence, and the defense in the state proceedings made use of it as well. There is no basis to exclude it. The government does not intend to use other video of Ms. Steinle after she was shot.

## VI. No. 7: "Motion regarding adjustments of Video Footage"

The government opposes the defendant's motion regarding adjustments of video footage in part.

First, the government has already disclosed video enhancements and agrees that edits or manipulations—including any and all from the defendant—should be disclosed with an opportunity for objections from the other party before introduction into evidence. However, labels, annotations, descriptions, or other like enhancements should be allowable during attorney argument, such as during closing argument.

Second, the government opposes the defendant's motion to prohibit witnesses from describing the actions or significance of any material captured by video while a video is playing. Witnesses should be allowed to describe actions depicted in a video based on the witness's perceptions, particularly if it is helpful to understand the witness's testimony or helpful to determining relevant facts at issue. *See* Fed. R. Evid. 701.

## VII. No. 9: "All files and exhibits be generically named"

The government agrees that all evidence presented to the jury—including from the defendant—should be named or labeled with a generic naming structure, and that the names should not be conclusory, argumentative, or misleading. However, the government opposes extending this requirement to attorney argument, such as during closing argument.

## VIII. No. 10: "Defense is relying on prosecution witness list"

The defendant does not appear to make a motion regarding No. 10. In any event, the government expects both parties—including the defendant—to provide prompt notification to the other party of any changes to witness lists, including with respect to the defendant's witness list for purposes of rebuttal.

## IX. No. 11: "Motion to exclude all witnesses during the proceeding"

The government opposes the exclusion of the government's investigatory case agent, Special Agent Daniel Garza, but otherwise agrees that all non-testifying witnesses (except Special Agent Garza) be excluded from opening statements and the taking of evidence unless the witness is testifying.

Courts have ruled that government case agents are not subject to the exclusionary rule because they qualify as government representatives pursuant to Fed. R. Evid. 615(b). *See, e.g.*, *United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012). Indeed, case agents for the government are

routinely permitted to remain in the courtroom throughout the trial. *See, e.g.*, *United States v. Thomas*, 835 F.2d 219, 223 (9th Cir. 1987). The Advisory Committee Notes for Federal Rule of Evidence 615 confirm that government case agents are not subject to the witness exclusion rule in criminal cases, specifically stating that government counsel are permitted to have an investigative agent at counsel table throughout trial even if the agent is or may be a witness. *See* Fed. R. Evid. 615, Advisory Committee's Note to 1974 Enactment.

## X. No. 12: "All witnesses shall be subject to recall upon being dismissed from the stand"

The defendant provides no basis or explanation for his motion, and the government opposes imposing any requirements on witnesses beyond what is required in the Federal Rules. In particular, the Court controls the mode and order of examining witnesses, including to "avoid wasting time" and "protect witnesses from harassment." *See* Fed. R. Evid. 611.

## XI. No. 13: "Disclosure of any and all information regarding civilian witnesses' criminal records, prior bad acts, crimes of moral turpitude"

As stated in the parties' joint pretrial conference statement (Dkt. No. 59), the government believes that it has disclosed all *Brady* material within its possession, custody, or control, and recognizes its ongoing obligation to do so. The government also understands its continuing duty to comply with Rule 16 and will do so. Accordingly, to the extent the government discovers *Brady* material regarding testifying civilian witnesses, it will disclose such material.

## XII. No. 14: "Motion regarding the theft of firearm in question"

The government agrees with the defense that it will not make any statements or argument that the defendant played any role in the theft of the firearm and ammunition with which he is charged. The circumstances of the theft of the firearm are irrelevant to the defendant's possession of it, and the government has moved the Court to exclude any reference to that theft and to the prior ownership of the firearm. *See* Dkt. No. 61 at 15:6-20.

## XIII. No. 15: "Exclusion of any testimony, documents, physical evidence not disclosed to defense"

The government opposes the defendant's motion, as the government reserves its rights to promptly disclose and rely on new evidence to the extent any is discovered. The government has

requested reciprocal discovery from the defendant pursuant to Federal Rules of Criminal Procedure 16, 12.1, and 26.2. The government also reserves its rights with respect to disclosing and introducing additional testimony, documents, or physical evidence on rebuttal based on the defendant's case. The government understands its continuing duty to comply with Rule 16 and will do so.

### XIV. No. 16: "Addressing parties by their names rather than conclusory or argumentative labels, which assume facts not in evidence and undermine the presumption of innocence"

The government opposes the defendant's motion to require the prosecution and prosecution witnesses refer to all people by their given name. For instance, the government is entitled to refer to the defendant as "the defendant," and witnesses may refer to other individuals—whose given names may be unknown to them—as however they perceived those individuals (such as "victim"). *See* Fed. R. Evid. 701. Moreover, the government is entitled to use any explanatory labels during attorney argument, such as during closing argument.

### XV. No. 17: "Exclusion of opinion testimony from the prosecution witnesses regarding Mr. Garcia Zarate's guilt"

The government agrees that all witnesses—including the defendant's witnesses—should not opine on the binary issue of innocence or guilt.

### XVI. No. 18: "Exclusion as to opinion or expert opinion from prosecution witnesses as to the veracity of Mr. Garcia Zarate's statements"

The government opposes the defendant's motion to exclude any views, commentary, or opinions from prosecution witnesses as to the veracity of the defendant's statements. The fact that police officers did not believe the defendant's statements is relevant and significant to explaining the progressive course of questioning by law enforcement, and does not unduly encroach on the jury's role in making credibility determinations. *See* Fed. R. Evid. 701, 702.

### XVII. No. 19: "Exclusion of Statement by Mr. Garcia Zarate at Arraignment"

The defendant has moved to exclude a spontaneous statement he made during his November 5, 2019 arraignment before Judge Hixon. The government has addressed the admissibility of this statement in its first motion *in limine*. Dkt. No. 60. The defendant claims that it is not admissible

1   because "it is not a complete statement," is "taken out of its full context," and "any probative value
2   would be far outweighed by the prejudice."  Dkt. No. 58 at 7.
3          The purported incompleteness of the statement is based on the fact that after the defendant
4   admitted possessing the firearm in his pants pocket, and after he asked whether the charges were related
5   to his immigration status, the Court adjourned the hearing to allow the defendant time to confer with
6   counsel.  The second part of the hearing was not recorded.
7          This does not make the defendant's statement about possessing the firearm in his pants pocket
8   somehow incomplete.  As the transcript indicates, that statement to Judge Hixon was complete in itself.
9   After the defendant made this spontaneous admission, the Court asked the defendant again whether he
10  understood the charges, and the defendant moved on to the topic of immigration.  Dkt. No. 42 at 3-4.
11  Further, although the second part of the hearing was not recorded, it is government counsel's
12  recollection that the only thing the defendant said during that second part was "Yes" to the question
13  whether he understood the charges and the maximum penalties he was facing.  There is nothing needed
14  to complete the defendant's admission during the hearing.
15         Further, while the government can introduce the defendant's admission as the statement of a
16  party opponent, the defendant is precluded from offering his own hearsay statements, even if the portion
17  introduced by the government did not contain the entirety of the admission.  *See* Dkt. No. 61 at 8-10
18  (United States' Motion *in Limine* #3).  The rule of completeness contained within Federal Rule of
19  Evidence 106, on which the defense relies, is inapplicable.  *See United States v. Mitchell*, 502 F.3d 931,
20  964 (9th Cir. 2007) (exculpatory statements by defendant were inadmissible hearsay even when made in
21  a broader self-inculpatory confession); *id.* at 965 n.9 ("Rule 106 does not render admissible otherwise
22  inadmissible hearsay."); *see also United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) ("The Rule
23  does not, however, require the introduction of *any* unedited writing or statement merely because an
24  adverse party has introduced an edited version.") (emphasis in original).
25         With respect to the defendant's claim that his admission that he had the gun in his pants would
26  be taken out of context, this refers to his effort to introduce the November 5, 2019 hearing before this
27  Court.  During that hearing, the Court rejected the defendant's proposed jury questions, particularly
28  those that referred to President Trump.  The Court was emphatic that this trial would be focused on the

narrow issue of whether the defendant possessed the firearm and ammunition with which he is charged, and that it would not be a case about the President. The defense's request that (presumably a transcript of) "the prior court proceedings in from of this Court be admitted as [the defendant] is clearly referencing the past proceeding," Dkt. No. 58 at 7:21-23, represents an attempt to re-insert the issue of President Trump into this case. The Court should reject this effort.

With respect to the defendant's claim that his statement should not be admitted because its probative value would be outweighed by its prejudice, he offers no authority for this proposition. Indeed, it would be difficult to find any case that held that a defendant's spontaneous confession to the crime, not made in response to interrogation, and recorded and transcribed, should be excluded on the basis that it would unduly prejudice the jury.

### XVIII. No. 20: "Prohibition on referring to the firearm as a 'murder weapon.'"

The government agrees that it will not refer to the firearm at issue as a "murder weapon" during the trial.

### XIX. No. 21: "Prohibition on saying that Mr. Garcia-Zarate fired or used the gun."

As detailed above and in the government's motion *in limine* #2, part of the defendant's possession of the firearm and ammunition at issue involved him pulling the trigger of the weapon and shooting a round. Dkt. No. 61 at 1–4. There is no basis to preclude the government from informing the jury during the opening statement that the evidence they will hear will establish this fact, from presenting that evidence during its case-in-chief, and in arguing that this is what happened during closing and rebuttal.

DATED: January 2, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
KEVIN J. BARRY
ERIC CHENG
Assistant United States Attorneys

U.S. RESP. & OPP. TO DEF. MOTS. IN LIMINE
CR 17-609 VC                                            9