UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| USA, | Case No. 17-cr-00609-VC-1 |
| --- | --- |
| Plaintiff, | |
| v. | **FINAL ORDER ON MOTIONS IN LIMINE** |
| JOSE INEZ GARCIA-ZARATE, | Re: Dkt. Nos. 58, 60, 61 |
| Defendant. | |

This order sets forth the Court's rulings on the evidentiary issues raised in the motions in limine and at the pretrial conference. As always, in limine rulings can be revisited depending on how the evidence comes in at trial.

A. Defendant's Motions in Limine

1. The motion to exclude prior convictions and bad acts is granted in part and denied in part. The government may use the two felony convictions that fall within Rule 609(b)'s scope to impeach Garcia-Zarate, should he choose to testify. While the probative value of these convictions is relatively low, the risk of prejudice is even lower for the reasons discussed at the pretrial conference.

The motion to exclude evidence that Steinle was shot and killed is denied, because the shooting is inextricably intertwined with the possession charge. However, evidence and argument regarding Steinle's death will be sharply limited pursuant to Rule 403. Furthermore, per the defendant's request, the Court will give the jury a limiting instruction regarding the relevance of her death.

The defense's related request to introduce evidence that Garcia-Zarate was acquitted in

state court is denied; the parties must refrain from specific references to the state court trial, instead referring generically to "prior proceedings" or "prior testimony under oath."

2. The motion to exclude the testimony of James Steinle is granted. The details regarding Kate Steinle's death are barely relevant to the possession charges, particularly since the government does not contend that Garcia-Zarate intended to shoot her. And it would be unfairly prejudicial to Garcia-Zarate for the trial to include anything (much less the testimony of her father) beyond the fact of her death.[1]

3. The motion to exclude evidence about DNA testing of the firearm is denied as moot. The parties have agreed to stipulate that no DNA evidence was found on the gun. The government may establish that the officers were diligent in conducting DNA tests.

4. The motion to exclude evidence of gunshot residue is denied.

5. The motion to exclude medical examiner photographs is granted. The parties have agreed to stipulate that the bullet recovered from Steinle's body came from the gun found in the bay. The government may introduce the bullet into evidence, but photos of Steinle's body are highly prejudicial and inadmissible under Rule 403.

6. The motion to exclude coroner testimony is granted for similar reasons.

7. The motion regarding editing and enhancement of video footage is granted in part and denied in part. The government may use footage of the pier that has been edited to zoom in on the scene. But it may not use footage with superimposed photos, labels, or comments. Portions of the video that say "Homicide Investigation" are inadmissible. Witnesses may narrate and describe events in a video based on their perceptions. They may not speculate as to the intention of other actors captured in the video, nor may they describe the shooting as a murder.

8. The motion to exclude the video showing the shooting is denied. The video was taken from afar: it captures people as shadowy, indistinct figures. The video's probative value is

---

[1] The evidence about where the bullet hit the concrete in relation to Steinle and others would, however, presumably be relevant to whether the gun went off accidentally, as the defendant apparently contends.

therefore not substantially outweighed by the risk of unfair prejudice.

9. The unopposed motion to require that files be generically named is granted.

10. If the government does not call a witness on its list and the defense wishes to call that witness, it may do so.

11. The motion to exclude witnesses from the courtroom is granted, except as to the government's case agent.

12. Witnesses shall be subject to recall upon being dismissed from the stand. But a party may not recall a witness to discuss something the party already had an opportunity to ask about.

13. The motion to disclose information regarding witnesses is denied to the extent it exceeds the government's existing discovery obligations, but failure to comply with those obligations will preclude the government from calling the relevant witness. *See Brady v. Maryland*, 373 U.S. 83 (1963); Fed. R. Crim. P. 16; Local Rule 16-1; Cal. Rules of Prof. Conduct 3.8(d) & cmt. 3; 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules . . . governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.").

14. The motion to exclude statements or arguments by the government that Garcia-Zarate stole the gun is denied as moot. The parties have agreed to a stipulation that the gun was stolen from a nearby car days before the shooting. The government does not contend that Garcia-Zarate was involved in the theft, and it has stated it will affirm that in the stipulation. The defense, however, is precluded from arguing or presenting evidence that the gun was stolen from a federal officer, or from a car owned by a federal officer.

15. The motion to exclude evidence the government fails to disclose in conformance with its discovery obligations is granted.

16. The motion to require that all parties be referred to by name is denied.

17. The unopposed motion to prohibit witnesses from opining on the issue of guilt or innocence is granted.

18. To the extent Garcia-Zarate moves to preclude interrogating officers from explaining

why they did not believe his responses to questioning, the motion is denied. Otherwise, the motion to exclude opinion testimony about the veracity of Garcia-Zarate's statements is granted.

19. The motion to exclude Garcia-Zarate's statement during his arraignment is granted. In terms of probative value, the statement, if read literally and considered out of context, could easily be taken to constitute an admission that he brought he gun in his pants pocket to the pier. However, when considered in the context of the question he was asked (namely, whether he understood the charges against him), the statement was more likely an artless attempt to describe what the government has accused him of doing. This understanding of his statement is supported by a review of the transcript of the state court trial—it is likely that, at the arraignment, Garcia-Zarate was attempting to parrot what he was repeatedly accused at trial of having done (that is, bringing the gun to the pier in his pants pocket). This likelihood becomes stronger after considering the police interrogation and the ABC interview of Garcia-Zarate. His responses to questions in those situations range from inarticulate to incomprehensible, suggesting that little can be learned by parsing his response to the judge's question at the arraignment. In sum, although Garcia-Zarate's statement during the arraignment seems quite probative at first glance, its probative value is greatly diminished by the larger context.

Accordingly, the only way it could conceivably be appropriate to allow the government to introduce Garcia-Zarate's statement during arraignment is to allow all the above-referenced evidence to be introduced as well. But admission of all this evidence would be distracting, a waste of time, and prejudicial—sometimes to one side and sometimes to the other. For example, evidence that Garcia-Zarate was merely parroting what the government accused him of doing during the state trial would open the door to speculation about, and further evidence of, what happened at that trial. But the government has separately moved (for good reason) to exclude this evidence. Conversely, introduction of the ABC interview would be highly inappropriate, and unfairly prejudicial to Garcia-Zarate. For all these reasons, the probative value of the statement given at arraignment is substantially outweighed by the risk of unfair prejudice, jury confusion, and waste of time.

20. The unopposed motion to prohibit parties and witnesses from referring to the firearm as a murder weapon is granted.

21. The motion to prohibit the government from saying that Garcia-Zarate "fired" or "used" the gun is denied.

B. Government's Motions in Limine

1. *See* ¶ A19.

2. The motion to admit evidence of the shooting as inextricably intertwined with the possession charge is granted, subject to the limitations already discussed in this ruling and at the pretrial conference.

3. The motion to prohibit Garcia-Zarate from introducing his own statements is granted. The government may introduce portions of the police interrogation as statements by a party opponent, but the portions introduced must not be misleadingly incomplete, and they are subject to further objection from the defense on Rule 403 grounds.

4. The motion to prohibit evidence and argument regarding the "innocent, transitory, or fleeting possession" of the gun is denied. The defense is permitted to argue (assuming an evidentiary basis for the argument is established), that the knowing-possession element of the charges is not satisfied when a person discovers that he's holding a gun and responds by immediately discarding it. But a separate instruction on an affirmative defense is not warranted, and arguments to that effect are not permitted. *See U.S. v. Johnson*, 459 F.3d 990, 998 (9th Cir. 2006).

In their discussion of "fleeting possession," the parties (as well as some of the cases), seem to blur two largely separate concepts: necessity and knowing possession. *See People v. Zarate*, No. A153400, 2019 WL 4127299, at *5–7 (Cal. Ct. App. Aug. 30, 2019); *see also U.S. v. Johnson*, 459 F.3d 990, 994–97 (9th Cir. 2006). Presumably a defendant should be entitled to present the jury with a necessity defense if there is evidentiary support for such a defense. To be sure, possession in such a case would have to be transitory. *Cf. United States v. Bailey*, 444 U.S.

394, 415 (1980) ("[W]hether [prison escapees] either surrendered or offered to surrender at their earliest possible opportunity . . . is an indispensable element of the defense of duress or necessity."). But it need not be "fleeting." For example, if a convicted felon sees a toddler reaching for a gun, rushes to grab it, calls the police to seek instructions on how to turn in the gun, and then follows those instructions, that would not be "fleeting" possession, but presumably a necessity defense would preclude his conviction for being a felon in possession of a firearm. But the defense clarified that it is not asserting necessity in this case. Rather, the defense appears to contend that Garcia-Zarate never knowingly asserted control over the gun, because he discarded the gun as soon as he realized he was holding it. That is not a basis for an affirmative defense; it is a basis for concluding that Garcia-Zarate's conduct does not meet the definition of "knowing possession" of a firearm.

 5A. The unopposed motion to exclude evidence regarding the punishment or consequences of conviction is granted.

 5B. The motion to exclude evidence or argument regarding the state court proceedings is granted; the parties and witnesses must refer to testimony from those proceedings generically as "prior testimony under oath" or something to that effect.

 5C. The motion to exclude evidence or argument that the federal prosecution is vindictive or politically motivated is granted, as is the motion to exclude evidence or argument regarding references to the defendant in news or politics.

 5D. The motion to exclude evidence regarding the theft of the firearm is denied as moot. The parties have agreed to a stipulation regarding the theft. *See* ¶ A14.

 6. The unopposed motion to preclude defense counsel from referencing facts that will not be included in evidence is granted.

 7. The motion to admit evidence of prior felony convictions that occur within the scope of Rule 609(b) is granted. *See* ¶ A1.

### C. Additional Rulings Arising from the Pretrial Conference

 1. The government proposed introducing a photo taken by Kate Steinle that showed

James Steinle and a family friend on the pier. The photo is excluded under Rule 403 because its probative value is low and substantially outweighed by the risk of unfair prejudice.

    2. Neither party may introduce portions of the ABC interview, for the reasons discussed at the conference.

    3. Audio recording of any foreign language testimony will not be available. If the defense is concerned about interpretation errors, it may consider the use of a "check interpreter" to object in real time to any perceived inaccuracies (which will be discussed outside the presence of the jury).

    4. The government is required to provide the Court with complete electronic and paper transcripts—as well as full audio and video recordings—of any interrogations, interviews, and videos that it intends to use. These must be provided no later than Friday, January 10.

    **IT IS SO ORDERED.**

Dated:

                                              _____
                                              VINCE CHHABRIA
                                              United States District Judge