DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
ERIC CHENG (CABN 274118)
MATTHEW M. YELOVICH (NYBN 4897013)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Kevin.Barry@usdoj.gov
    Eric.Cheng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 17-609 VC |
| Plaintiff, | **UNITED STATES' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND MOTION FOR RECONSIDERATION OF COURT'S JANUARY 10 EVIDENTIARY RULING REGARDING DEFENDANT'S STATEMENT AT ARRAIGNMENT** |
| v. | |
| JOSE INEZ GARCIA-ZARATE, | |
| Defendant. | Date: To be determined |
| | Judge: Hon. Vince Chhabria |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. STATEMENT OF FACTS ............................................................................................1

    A. Indictment, Superseding Indictment, and Arraignment......................................1

    B. Motions in Limine, Hearing, and Order.............................................................3

III. REQUEST FOR LEAVE TO CALENDAR MOTION FOR RECONSIDERATION ...................7

IV. DISCUSSION ...............................................................................................................10

    A. Legal standards .................................................................................................10

    B. The Court should reconsider its decision because the statement's significant probative value was not substantially outweighed by the potential for undue delay, confusion, or other risks provided in Rule 403 ..................................................10

    C. The Court committed errors of law, not merely incorrect balancing, in its evidentiary ruling ...............................................................................................13

V. CONCLUSION..............................................................................................................17

MOTION FOR LEAVE TO FILE AND MOTION FOR
RECONSIDERATION
CR 17-609 VC                                        ii

# TABLE OF AUTHORITIES

## CASES

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988) .................................................. 16

*Luce v. United States*, 469 U.S. 38, 41–42 (1984) .............................................................. 9

*Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ......................................................... 9

*Old Chief v. United States*, 519 U.S. 172, 180 (1997) ....................................................... 12

*Rehaif v. United States*, 139 S. Ct. 2191 (2019) ................................................................. 2

*United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir. 2002) ........................................ 7

*United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) ........................................... 10

*United States v. Dabney*, 498 F.3d 455, 458 (7th Cir. 2007) ............................................ 12

*United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ......................... 12

*United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ........................................ 16

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ............................................. 16

*United States v. Payne*, 805 F.2d 1062, 1066 (D.C. Cir. 1986) ........................................ 10

*United States v. Rizk*, 660 F.3d 1125, 1131 n.2 (9th Cir. 2011) ....................................... 14

*United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) ........................................... 15

*United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) .............................................. 14

## RULES

Civ. L.R. 7-9(a) ..................................................................................................................... 7

Civ. L.R. 7-9(b) ................................................................................................................. 7, 9

Crim. L.R. 47-2 ..................................................................................................................... 7

Fed. R. App. P. 4(b)(1)(B) .................................................................................................... 7

Fed. R. Evid. 106 ............................................................................................................ 3, 15

Fed. R. Evid. 403 ........................................................................................................ passim

Fed. R. Evid. 801(d)(2) ....................................................................................................... 15

## I. INTRODUCTION

On January 10, 2020, this Court granted the defendant's motion in limine to exclude from trial a statement that the defendant made during his arraignment as follows: "It's saying that it's just one charge—one charge, it being illegal to have a weapon in my pants, the one that I had that day at Embarcadero, in my pants pocket." Dkt. No. 42 at 3; Dkt. No. 99 (order). The trial date has since been vacated, and the Court ordered the defendant to participate in a competency evaluation. Dkt. No. 100.

By this motion, the government respectfully requests that this Court (1) grant the government leave to file a motion to reconsider its evidentiary ruling regarding the defendant's statement, and (2) reconsider that ruling at some point prior to any future trial of this defendant, for the reasons set forth below. Namely, the government submits that this Court committed two methodological errors in its analysis of the defendant's statement under Fed. R. Evid. 403: (1) the Court discounted the probative value of the evidence by weighing it in light of other statements the defendant made, and (2) the Court then took into account any unfair prejudice, delay, waste of time, and confusion that could be engendered not by the item of evidence itself, but rather by the defendant's anticipated rebuttal evidence. Such methodological errors led the Court to conclude incorrectly that the statement was inadmissible under Fed. R. Evid. 403, a decision the government urges this Court to revisit.

## II. STATEMENT OF FACTS

### A. Indictment, Superseding Indictment, and Arraignment

On December 5, 2017, the Grand Jury returned an indictment charging the defendant with being a felon in possession of a firearm and ammunition, and an alien in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 922(g)(5). Dkt. No. 1. These charges relate to the fact that on July 1, 2015, the defendant possessed a Sig Sauer .40 caliber pistol loaded with ammunition on Pier 14 in San Francisco by the Embarcadero. Part of the defendant's possession of that firearm involved him pulling the trigger and firing a bullet. That bullet struck a young woman named Kate Steinle in the back, killing her. The defendant was initially charged with a number of crimes in San Francisco Superior Court as a result of that tragic incident, including homicide and being a felon in possession of a firearm. *People v. Garcia Zarate*, Case No. 15014736 (S.F. Sup. Ct. 2015). At trial, the

1  jury acquitted the defendant of the homicide charges but convicted him of being a felon in possession of
2  a firearm. The defendant appealed, arguing that it was error for the state court not to offer a transitory
3  possession instruction. *See People v. Garcia Zarate*, Case No. A153400 (Cal. Ct. Appl. 1st Dist. August
4  30, 2019 Order) (reversing conviction for failure to give transitory possession instruction). In the state
5  case, the defense at trial was that the defendant was sitting on Pier 14 and picked something up wrapped
6  in a shirt on the ground, which happened to be a firearm; that it went off as he picked it up; and that he
7  threw it in the water to keep it from going off again. *Id.* at 2 (summarizing the defense at trial).

Following *Rehaif v. United States*, 139 S. Ct. 2191 (2019), on October 17, 2019, the Grand Jury returned a Superseding Indictment adding the requisite element of the defendant's knowledge to the charges of being a felon and an alien in possession of a firearm and ammunition. Dkt. No. 29.

On November 5, 2019, the defendant was arraigned on the Superseding Indictment. Dkt. No. 33. During the arraignment, at Judge Thomas S. Hixson's direction, the government apprised the defendant of the charges and the maximum penalties.

> THE COURT: And good morning. Mr. Zarate, the grand jury has returned a superseding indictment charging you with criminal offenses. You are here today to be arraigned on the superseding indictment. At this time, I'll ask the Government to summarize the charges and the maximum penalties.
>
> MR. CHENG: Yes, Your Honor. The Defendant is charged in the superseding indictment under Title 18 of the United States Code, Section 922(g)(1), felon in possession of a firearm and ammunition[], and under Title 18 of the United States Code, Section 922(g)(5), alien in possession of a firearm and ammunition. The maximum penalty as to both counts is as follows: Ten years' imprisonment, $250,000 fine, three years' supervised release[], $100 mandatory special assessment, and forfeiture [and] restitution.

Dkt. No. 42 at 2:16-3:5 (Corrected Transcript of November 5, 2019 arraignment); Dkt. Nos. 34 & 39 (Order for November 5, 2019 arraignment Audio Recording). Immediately afterward, Judge Hixson turned to the defendant and asked him if he understood the charges and maximum penalties. The defendant responded, "No." Dkt. No. 42 at 3:6–8. When the Court inquired what it was that the defendant did not understand, the following exchange occurred:

> THE COURT: What is it that you don't understand?
>
> MR. GARCIA-ZARATE: It's saying that it's just one charge – one charge, it being illegal to have a weapon in my pants, the one that I had that day at Embarcadero, in my pants pocket.

Dkt. No. 42 at 3:22–25. The defendant then asked further questions about the charge of being an alien in possession of a firearm, inquiring whether it had to do with immigration. Dkt. No. 42 at 4:16–20.

## B. Motions in Limine, Hearing, and Order

Trial was set for January 15, 2020, with a motions in limine hearing and pretrial conference set for January 8, 2020. Dkt. Nos. 53, 94, 98.

The government moved in limine to admit the defendant's statement at arraignment, and the defendant moved to exclude it. Dkt. Nos. 58, 60. The defendant cited to the rule of completeness under Fed. R. Evid. 106, and prejudice under Fed. R. Evid. 403. Dkt. No. 58 at 7. The defendant predicated his rule of completeness argument on the fact that shortly after the above-quoted colloquy, the magistrate recessed the hearing to allow the defendant to confer with counsel, and the second part of the hearing was not recorded or transcribed. As for prejudice, the defendant asserted that, if the Court admitted the statement, the defendant needed the ability to introduce evidence of a past proceeding before this Court since "he is clearly referencing the past proceeding" that had occurred earlier that morning. Dkt. No. 58 at 7. The defendant added that the probative value of the statement was substantially outweighed by the unfair prejudice, confusion of issues, misleading the jury, undue delay, and waste of time engendered by adding this contextual evidence. Dkt. No. 58 at 7.

In addition to the motion to admit the defendant's statement at arraignment, the government moved to admit portions of the defendant's statements to police following his arrest, as well as another statement the defendant made to a local ABC news station several days after his arrest.[1] The

---

[1] This Court excluded the entirety of the ABC interview, even in the absence of a defense motion for this relief. The Court viewed the interview on its own and found that the defendant appeared not to understand the questions posed to him, and therefore, nothing in the interview was reliable. It found that it would be an abuse of discretion to admit the interview. Dkt. No. 78 at 107–108 (Transcript of January 8, 2020 hearing).

government also sought to preclude the defense from introducing portions of his statements that were not presented by the government.

On January 6, 2020, two days before the pretrial conference, this Court ordered the government to provide the Court with the entire transcript of the state court trial and other proceedings. Dkt. No. 77. It also ordered the government to lodge copies of all videos it intended to offer into evidence. Dkt. No. 73.

On January 7, 2020, the day before the pretrial conference, this Court issued an order indicating that it was "undecided" on whether to admit the defendant's statement at arraignment, as follows:

> The Court is undecided on the motion to exclude Garcia-Zarate's statement during arraignment. It is arguably unclear whether Garcia-Zarate was describing what he did or what he was accused of doing. If there is a strong likelihood that Garcia-Zarate was merely describing what he was accused of doing, admission of the statement could be unfairly prejudicial. Furthermore, if Garcia-Zarate's statement during arraignment is admitted, this may affect the Court's tentative ruling precluding specific references to the state court trial.

Dkt. No. 79 at 3–4.

At the January 8, 2020 pretrial conference, the Court observed that if one considered the words that the defendant actually said at his arraignment, it appeared to be an admission of what he did—that he had the firearm in his pants pocket. Dkt. No. 87 at 78 (Transcript of January 8, 2020 hearing). However, the Court indicated that this was not the key question. "But the question is whether in this – if you consider in context, whether – what he is really trying to do is describe what he was accused of doing." Dkt. No. 87 at 78.

The Court focused on the state case in considering what the defendant might have meant at his arraignment in federal court. *See* Dkt. No. 87 at 86 ("[The Court:] Another related concern, right, is that where does this stuff come about having the gun in his jeans pocket? Where does that come from? That comes from the prosecution in the state court proceeding."). The Court then suggested that what the defendant meant to say at arraignment was that he was accused of having the gun in his pants pocket, not that he actually had the gun in his pants.

> [The Court:] But he – when you understand that, when you realize that, you start to understand that, during the arraignment, he is likely just parroting back what the Government accused him of doing in the prior

trial, what he sat listening to in the state court trial for weeks, I think. The trial went on for weeks; didn't it?

So that makes it even more likely that Mr. Garcia-Zarate is merely trying to describe what the Government has accused him of doing, the Government's theory of the case as opposed to what he actually did.

Dkt. No. 87 at 86–87.

The Court then asked whether substantial portions of the prior state court trial would have to come into evidence in this case, in order to provide the context that the Court thought was necessary to explain what the defendant meant to say. Dkt. No. 87 at 87. The government argued that only a portion of the closing argument would be necessary to establish that the defendant was accused of having the gun in his pants. Dkt. No. 87 at 94–96.

The Court also indicated that it had reviewed the defendant's statements and watched the videos of his interviews, and it was weighing its assessment of the defendant's mental state.

> THE COURT: Well, here is one concern I have about that is – I have now listened – you know, I have now watched the video of the interrogation of Mr. Garcia-Zarate. I have watched portions of the ABC interview, portions that you want to introduce and some portions that you don't want to introduce. I have listened to the recording of the arraignment. I have read a variety of transcripts. And I think that I have – I have one major takeaway from all of that, and that is that a lot of the things that Mr. Garcia-Zarate says don't make a lot of sense. And that he often seems confused, and he speaks with, to put it mildly, imprecision. Right?
>
> And so the – so my interpretation of what he said during his arraignment is colored by my having listened to all this other stuff. But, the jury will not have heard most of that other stuff, presumably; right?
>
> And he often – it often appears – Mr. Garcia-Zarate answers questions when he clearly doesn't understand what's being asked of him – right? – particularly when it's in English. Right?
>
> And, for example, there was a portion of the ABC video that you didn't propose – or maybe you did propose to put it in – where they ask him "Do you feel badly for killing Ms. Steinle?" And he says " No." And it's obvious that he didn't understand the question asked of him. And his English is limited. And regardless of language, I think there is a real concern about whether his comprehension is limited.
>
> And so, in light of all if that – in that context – in that context, I think that the, you know, we – when you understand that context, you realize it is far less likely that he was making an admission in his arraignment. And far more likely that he was describing what the Government had been accused – had been accusing him of doing.

> And so, you know, but the jury is not going to be able to understand all of that.

Dkt. No. 87 at 85–86.

> [The Court:] It seems fairly clear that Mr. Garcia – Mr. Garcia-Zarate did not understand much of what he was being asked, if any of what he was being asked. Many of his answers were nonsensical.

Dkt. No. 87 at 103. During the pretrial conference, the Court indicated that it would consider the issue further and would issue a written order.

On January 10, 2020, the Court issued an order excluding the statement. Dkt. No. 99 at 4. The ruling is as follows:

> The motion to exclude Garcia-Zarate's statement during his arraignment is granted. In terms of probative value, the statement, if read literally and considered out of context, could easily be taken to constitute an admission that he brought he gun in his pants pocket to the pier. However, when considered in the context of the question he was asked (namely, whether he understood the charges against him), the statement was more likely an artless attempt to describe what the government has accused him of doing. This understanding of his statement is supported by a review of the transcript of the state court trial—it is likely that, at the arraignment, Garcia-Zarate was attempting to parrot what he was repeatedly accused at trial of having done (that is, bringing the gun to the pier in his pants pocket). This likelihood becomes stronger after considering the police interrogation and the ABC interview of Garcia-Zarate. His responses to questions in those situations range from inarticulate to incomprehensible, suggesting that little can be learned by parsing his response to the judge's question at the arraignment. In sum, although Garcia-Zarate's statement during the arraignment seems quite probative at first glance, its probative value is greatly diminished by the larger context.
>
> Accordingly, the only way it could conceivably be appropriate to allow the government to introduce Garcia-Zarate's statement during arraignment is to allow all the above-referenced evidence to be introduced as well. But admission of all this evidence would be distracting, a waste of time, and prejudicial—sometimes to one side and sometimes to the other. For example, evidence that Garcia-Zarate was merely parroting what the government accused him of doing during the state trial would open the door to speculation about, and further evidence of, what happened at that trial. But the government has separately moved (for good reason) to exclude this evidence. Conversely, introduction of the ABC interview would be highly inappropriate, and unfairly prejudicial to Garcia-Zarate. For all these reasons, the probative value of the statement given at arraignment is substantially outweighed by the risk of unfair prejudice, jury confusion, and waste of time.

Dkt. No. 99 at 4.

Since the Court's order, trial has been postponed indefinitely pending a competency evaluation of the defendant. Dkt. No. 100 (minute entry wherein Court "vacated the trial and jury selection dates indefinitely" and ordered defendant "to participate in the competency evaluation").

### III. REQUEST FOR LEAVE TO CALENDAR MOTION FOR RECONSIDERATION

Although the local criminal rules do not specify the requirements for filing a motion for reconsideration, the local civil rules provide that such a motion may only be noticed after the Court grants the moving party leave to file a motion for reconsideration "on any ground set forth in Civil L.R. 7-9(b)." Civ. L.R. 7-9(a).[2] Under those provisions, the government must show (i) reasonable diligence in bringing the motion, and (ii) one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b)(1)–(3). The government's motion meets such standards.

First, the government has shown reasonable diligence. This motion for reconsideration is timely because it is filed within the time for appeal of the Court's January 10 order. *See United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir. 2002). The government's notice of appeal is due 30 days from the Court's order. *See* Fed. R. App. P. 4(b)(1)(B) (government's notice of appeal must be filed no later than 30 days from, *inter alia*, entry of order being appealed). The government's motion is also timely vis-à-vis the trial, which has been postponed indefinitely due to the Court's order regarding the defendant's competency evaluation. The government

---

[2] Looking to the local civil rules for guidance accords with the fact that the local criminal rules incorporate by reference general requirements of motion practice from the local civil rules. *See* Crim. L.R. 47-2 (providing that formatting of motions, oppositions, and replies must comply with Civil L.R. 7-3, 7-4, and 7-5).

MOTION FOR LEAVE TO FILE AND MOTION FOR RECONSIDERATION
CR 17-609 VC                                                   7

1  recognizes that the Court may not decide this motion until a future trial date is confirmed, and

2  the request for leave to calendar the motion would not seek a motion date prior to such time as a

3  trial becomes reasonably imminent.

4  Second, the government's motion is based on the first ground of Civil L.R. 7-9(b).

5  Namely, as set forth in its motion below, the government respectfully submits that at the time of

6  its initial motion in limine and the decision thereupon, the government did not know that the

7  Court would base its Fed. R. Evid. 403 determination on two methodological errors. The

8  defendant's motion in limine and the Court's tentative order before the motion in limine hearing

9  did not raise the specific grounds for exclusion that the Court ultimately relied upon—exclusion

10  based on the need for voluminous contextual, explanatory evidence.

11  Beginning with the defendant's motion in limine, he moved to exclude the statement at

12  arraignment on the theory that the rule of completeness mandated inclusion of the remainder of

13  the arraignment hearing transcript, but that transcript was unavailable due to a recording failure.

14  Dkt. No. 58 at 7. The defendant further moved that if the government were permitted to

15  introduce the statement, the defense be allowed to introduce "prior court proceedings in front of

16  *this* Court . . . as he is clearly referencing the past proceedings" that had occurred earlier that

17  morning. *Id.* (emphasis added). Based on this motion, the government could not have

18  anticipated that the Court would instead exclude the statement on the basis of the need to admit

19  evidence of the prior *state* court proceedings and other evidence deemed confusing, prejudicial,

20  or wasteful.[3] The defendant did not seek relief on that basis.

21  Furthermore, the Court's tentative order, issued the night before the oral ruling, described

22  the Court as "undecided on the motion to exclude" the statement on the basis of unfair prejudice.

23  Dkt. No. 79 at 4. The Court noted that it was unclear to what the defendant was referring in his

---

[3] Indeed, the government opposed the defendant's motion on the grounds that (1) the rule of completeness did not apply to this situation and in any event could not be used to admit his own hearsay statements, and (2) that the defendant could not introduce prior proceedings from November 5, 2019, before *this* Court—not the state proceedings, since the state proceedings were not mentioned by the defendant in his moving papers. Dkt. No. 69 at 9–11. During those November 5 proceedings, this Court addressed and rejected many of the defendant's proposed jury questions, which sought to explore their perceptions of President Trump, various aspects of U.S. immigration policy, and other similar topics.

MOTION FOR LEAVE TO FILE AND MOTION FOR
RECONSIDERATION
CR 17-609 VC                                8

statement, and therefore it might be unfairly prejudicial. *Id.* The Court also indicated that if the statement were admitted, it might affect the Court's tentative decision to preclude references to the state court trial. *Id.* Again, the government could not have known from these statements that the Court would actually exclude the statement on the basis it did—that its admission would mandate inclusion of the state court trial evidence and ABC interview, and that such materials would be unfairly prejudicial to one or both sides. Dkt. No. 99 at 4. Furthermore, the government could not have known that the Court would rule based on its own weighing of the probative value of the statement not at face value but rather in light of other statements the defendant made on other occasions, and thereby conclude that the probative value was "greatly diminished by the larger context" and substantially outweighed by the risk of unfair prejudice, jury confusion, and waste of time. Dkt. No. 99 at 4. Accordingly, the government could not have predicted the need to research and brief the issue of the appropriate scope of considerations under Fed. R. Evid. 403, or the appropriate mode of analysis when it came to assessing probative value. All of these reasons justify the material difference in the law presented to the Court prior to the motion in limine ruling and the law presented below. *See* Civ. L.R. 7-9(b)(1).

The government has since researched the mode of analysis that the Court employed under existing case law and found it unsupported. Accordingly, the government hereby submits legal arguments that were not submitted to the Court prior to its ruling on the motion in limine. The government does not assert that new facts or law have emerged, or that the Court manifestly failed to consider material facts or dispositive legal arguments presented to it prior to the in limine ruling. *See* Civ. L.R. 7-9(b)(1), (3).

The particular circumstances of an in limine evidentiary ruling militate in favor of allowing reconsideration. That is because "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)). That notion is particularly true where, as here, the trial for which the in limine ruling was given has now been vacated, and future pretrial evidentiary motion dates, if any, have not been reset.

1    The government respectfully requests that the Court grant the government leave to file
2 this motion to reconsider and allow for calendaring of the motion with opposition briefing, if
3 any, closer in time to an eventual trial date.

### IV. DISCUSSION

#### A. Legal standards

As to the merits, the Court excluded the defendant's admission under Fed. R. Evid. 403, which provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In making a determination under Rule 403, the balance in close cases is struck in favor of admission." *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) (quoting *United States v. Payne*, 805 F.2d 1062, 1066 (D.C. Cir. 1986)) (internal quotation marks and alterations omitted).

#### B. The Court should reconsider its decision because the statement's significant probative value was not substantially outweighed by the potential for undue delay, confusion, or other risks provided in Rule 403

*1. The statement has significant probative value*

The defendant's statement that he had a "weapon" in his "pants . . . that day at Embarcadero, in my pants pocket" is highly probative of a central issue: his knowing possession of a firearm on July 1, 2015, on the Embarcadero. Given the defense's strategy during the state trial of arguing that the defendant accidentally discharged the gun in question when picking up a rag, and the stipulations between the parties in the federal case, the federal trial seems destined to turn almost exclusively on proving knowing possession. *See* Ninth Cir. Model Jury Ins. 8.65 (element common to both counts is proving "defendant knowingly possessed [firearm]"); Dkt. Nos. 50 & 97 (stipulations regarding other elements). As a result, the defendant's statement in open court regarding "a weapon in my pants, the one that I had that day at Embarcadero, in my pants pocket," may be among the strongest and most direct pieces of evidence of his knowing possession of a firearm. This Court recognized as much, describing the statement as potentially

MOTION FOR LEAVE TO FILE AND MOTION FOR
RECONSIDERATION
CR 17-609 VC                                    10

"an admission that he brought [t]he gun in his pants pocket to the pier" if "read literally and considered out of context." Dkt. No. 99 at 4.

Moreover, the probative value of this evidence cannot be replicated with other evidence because of the Court's other pretrial rulings and the nature of the custodial statements. The defendant gave two other statements: a custodial interview after arrest and a jailhouse interview with ABC. As to the first, the defendant made a series of statements to police that, when isolated, are inculpatory. These admissions included that he fired a gun and threw it in the bay. He also specified that the firearm was a semiautomatic pistol and not a revolver. However, the interview is simply less probative than the defendant's statement at arraignment given the many falsehoods and non sequiturs the defendant also offered in his custodial statement.

By contrast, the defendant's statement during the arraignment is clear, direct, and lucid. Even presenting the jury with the fact that he was earlier accused of having the gun in his pants to allow the defense to argue about what the defendant meant, the statement at arraignment is significantly more probative than the relevant portions of the police interview.

Second, the Court excluded the defendant's ABC interview in total under Fed. R. Evid. 403, finding it not reliable, not probative, and prejudicial. Dkt. No. 78 at 105–08; Dkt. No. 99 at 7 ("Neither party may introduce portions of the ABC interview, for the reasons discussed at the conference."). In that interview, the defendant makes certain inculpatory statements, such as "I'm not going to be playing with that anymore" in reference to a gun, acknowledged shooting the gun, and admitted throwing the gun in the water. Dkt. No. 78 at 105–06 (government describing key admissions in interview). The Court found that the defendant seemed to be making statements "without regard to what the questions were," that the defendant "didn't understand what he was being asked," that the interviewer was trying to put words in the defendant's mouth, and that exclusion was not "a close question" as to this item of evidence. Dkt. No. 78 at 105–08.

As a result, out of the remaining options of direct evidence of knowing possession, the statement at arraignment is by some margin the most probative and clear, even if some contextual evidence were to be admitted by the defendant to argue about what he meant.

> 2. *That probative value is not substantially outweighed by the risks identified by the Court*

The probative value of the defendant's statement that he possessed a weapon in his pants pocket on the Embarcadero was not "substantially outweighed" by "the risk of unfair prejudice, jury confusion, and waste of time." Dkt. No. 99 at 4. On the contrary, the defendant's prior statement conceding gun possession is perhaps the most probative evidence of the central issue of the case, as set forth above. *See also, e.g.*, *United States v. Dabney*, 498 F.3d 455, 458 (7th Cir. 2007) ("It is hard to imagine proof more specific to the offense charged than the defendant's own admission under oath to the essential facts constituting the offense."). Accordingly, the unfair prejudice, jury confusion, or waste of time from admitting this defendant's one-sentence reference to his prior gun possession would need to be extraordinary in order to outweigh such probative value. The defendant could not make such a showing here.

First, evaluating the statement itself, there is nothing unfairly prejudicial about it. "[U]nfair prejudice refers to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. In other words, unfairly prejudicial evidence is that having an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (internal quotation marks omitted) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Here, no such risk was presented by the defendant's statement at arraignment—no improper basis for decision was threatened. Second, the introduction of a single statement from the arraignment—or even the statement with surrounding questions and responses—could not plausibly lead to juror confusion or waste of time given the de minimus amount of time at issue to play such a recording, and the

1  clarity with which the defendant makes the statement about the very possession at issue in this
2  case.

### C. The Court committed errors of law, not merely incorrect balancing, in its evidentiary ruling

In concluding to the contrary, this Court found that the statement at arraignment was "quite probative at first glance," but that "its probative value is greatly diminished by the larger context" of the defendant's "responses to questions in" his custodial interview and ABC interview "rang[ing] from inarticulate to incomprehensible." Dkt. No. 99 at 4. The Court further found that "the only way it could conceivably be appropriate to allow the government to introduce Garcia-Zarate's statement during arraignment" would be "to allow all the above-referenced evidence to be introduced as well," referring to evidence of what he was accused of in the state trial, as well as evidence of his typical incomprehensible answers in the ABC and police interviews. Dkt. No. 99 at 4. But introduction of this body of evidence "would be distracting, a waste of time, and prejudicial—sometimes to one side and sometimes to the other." Dkt. No. 99 at 4. The Court therefore excluded the statement in total.

The government respectfully submits that the Court committed legal error in its method of analysis in two ways, beyond mere incorrect balancing under Rule 403. First, the Court analyzed the admissibility of the defendant's statement at arraignment in light of the body of evidence that would be needed to rebut the clear implications of that piece of evidence. In other words, the Court did not analyze the statement itself for unfair prejudice, but rather analyzed the likely defense case that would be desired to try to explain away the statement's facially inculpatory nature. Dkt. No. 99 at 4. Such a methodology—regardless of how the Court, in the end, balanced the relative probative weight versus risk of substantially outweighing unfair prejudice—is unsupported by the rules or case law. Were it otherwise, any individual item of relevant, otherwise admissible evidence offered by the government in a criminal case would risk provoking the defendant to put forth his or her contrary evidence to diminish the weight of the government's evidence. Under the Court's analysis, that hypothetical "context" or explanatory

evidence would have to be considered as to whether the initial item might cause delay, waste of time, confusion, or other problems under Rule 403. It is difficult to imagine much evidence surviving that test, as a defendant's hypothetical rebuttal evidence to his inculpatory statement could nearly always involve delay, waste of time, and juror confusion in total.

The Court made a second, separate categorical error in its approach to determining the statement's probative value. The Court weighed the statement, concluded it was capable of two interpretations, and therefore discounted its probative value. That legal analysis is flawed under Ninth Circuit law. *See United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) ("Warren maintains that the statements were as probative of an intent to fight as they were of an intent to kill. This objection goes to the weight of the statements, not their admissibility."); *see also United States v. Rizk*, 660 F.3d 1125, 1131 n.2 (9th Cir. 2011) (noting in summary chart context that "[g]enerally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence." (internal quotation marks and citations omitted)). In its written order, the Court said that the statement, "if read literally and considered out of context, could easily be taken to constitute an admission that he brought [t]he gun in his pants pocket to the pier." Dkt. No. 99 at 4. That was indeed the government's position on what the defendant's statement meant. The Court proceeded to critique that position by pointing out the context—the defendant had been asked a question about the charges against him—and concluding that therefore "the statement was more likely an artless attempt to describe what the government accused him of doing." Dkt. No. 99 at 4. This weighing usurped the role of the jury and constitutes a methodological error meriting reconsideration. If the statement was capable of two interpretations—even if one was "more likely" correct, in the Court's mind—then the parties should be free to argue one or the other interpretation in the ordinary course of trial. Excluding the statement on the theory that its probative value could be low or could be high misapprehends the Court's role as evidentiary gatekeeper and constitutes an independent error worthy of revisiting.

1       Insofar as the Court appeared to base its exclusionary ruling at some level on the lack of
2 reliability in the defendant's statement, that analysis runs contrary to well-established tenets
3 regarding party admissions. "No guarantee of trustworthiness is required in the case of an
4 admission" by a party opponent. Fed. R. Evid. 801(d)(2), Advisory Committee's Note to 1972
5 Proposed Rules. Indeed, the rules anticipate "generous treatment of this avenue of
6 admissibility." *Id.* In this case, the Court appeared to base its concerns of unfair prejudice on
7 the defendant's confusing way of speaking at times and thus the statement's inherent
8 unreliability: "At some point the statement becomes so unreliable we say there was something
9 wrong with what was going on in the defendant's brain when he was saying that, and it was so
10 obviously incorrect that he must not have meant that. He must have meant something else."
11 Dkt. No. 87 at 94. This analysis supplants the proper inquiry (can we establish that the defendant
12 made the statement in question) with another (what did the defendant mean in saying the words),
13 with the first generally being a Court question and the second being a jury question.
14       Nor is the Court's methodology defensible under the rule of completeness. *See* Fed. R.
15 Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party
16 may require the introduction, at that time, of any other part—or any other writing or recorded
17 statement—that in fairness ought to be considered at the same time."). Though the Court did not
18 cite that rule in its decision, its analysis to some extent appears to assume that introducing the
19 arraignment statement could lead to jury confusion about what the defendant meant, and
20 therefore the defendant would be entitled to supplement the record to correct that confusion.
21 Dkt. No. 99 at 4 (stating that the "only way it could conceivably be appropriate" to allow
22 admission of statement would be to allow introduction of evidence from state trial and
23 potentially other past statements). But the rule of completeness does not "require the
24 introduction of *any* unedited writing or statement merely because an adverse party introduced an
25 edited version." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). Instead, the rule
26 applies "when one party has made use of a portion of a document, such that misunderstanding or
27 distortion can be averted only through presentation of another portion." *Beech Aircraft Corp. v.*
28

*Rainey*, 488 U.S. 153, 172 (1988). The Court did not base its exclusion order on the missing half of the arraignment hearing from the recording and transcript—rather, it appeared to find that additional statements by the defendant would reveal him to speak in a nonsensical way, and therefore such other evidence would be necessary to complete an accurate picture for the jury. But the rule of completeness does not compel the admission of otherwise inadmissible hearsay evidence, such as the defendant's "context" of his prior nonsensical or exculpatory statements. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). If the defendant wishes to explain what he meant with his arraignment statement, he has the option to testify—not force the exclusion of his inculpatory statement by demanding admission of voluminous otherwise inadmissible evidence. The rule of completeness does not provide otherwise.

Finally, the Court's method of analysis—consideration of various other evidence that the defendant would wish to introduce to rebut the most straightforward reading of the government's probative evidence—runs contrary to the purposes of Rule 403. Rule 403 is one of inclusion, and this methodology would nearly always inure to the benefit of the party seeking to exclude relevant evidence. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (reiterating that Fed. R. Evid. "403 favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial," and quoting Eleventh Circuit in noting that "application of Rule 403 must be cautious and sparing"). The Court here focused on reliability where no such inquiry was legally supported and weighed potential rebuttal evidence in excluding otherwise powerful probative evidence in the form of the statement. These errors merit reconsideration and reversal of the prior ruling.

**[Remainder of Page Left Intentionally Blank]**

MOTION FOR LEAVE TO FILE AND MOTION FOR RECONSIDERATION
CR 17-609 VC                             16

## V. CONCLUSION

In its pretrial evidentiary ruling excluding the defendant's highly probative statement at his arraignment, the Court erred in its balancing under Rule 403, and committed two methodological errors that went beyond incorrect balancing. Its approach runs contrary to the purposes of Rule 403 and merits correction. Accordingly, the government respectfully requests that the Court (1) grant the government leave to file a motion to reconsider its evidentiary ruling regarding the defendant's arraignment statement, and (2) prior to any future trial date reconsider its evidentiary ruling as to the statement and admit the highly probative statement of the defendant, a party opponent.

DATED: February 7, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

           /s/
KEVIN J. BARRY
ERIC CHENG
MATTHEW M. YELOVICH
Assistant United States Attorneys