STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
KEVIN J. BARRY (CABN 229748)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7200
    Eric.Cheng@usdoj.gov
    Kevin.Barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 17-CR-0609 VC |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Sentencing Date:  June 6, 2022 |
| JOSE INEZ GARCIA-ZARATE, | Time:  9:30 a.m. |
| Defendants. | Judge:  Hon. Vince Chhabria |

## I.    INTRODUCTION

    On July 1, 2015—approximately seven years ago—Defendant illegally possessed a loaded firearm on Pier 14 in San Francisco, tragically shooting a young woman as she walked along the pier with her father and a family friend. Shortly after Defendant's arrest in San Francisco that same evening, the victim succumbed to her injuries from the shooting. Since the day of that tragedy, Defendant has been rightly held in continuous state and federal custody. Indeed, a substantial custodial sentence has been warranted in this case to hold Defendant accountable for his serious crimes and to protect the public.

1    Probation agrees, recommending a sentence of 120 months (10 years)—the statutory maximum

2    for Defendant's conviction.  The government acknowledges Probation's position and significant

3    recommendation of imprisonment in light of Defendant's reckless conduct with the illegal possession of

4    a stolen, loaded firearm that led to the death of the victim, and given Defendant's lengthy criminal

5    history.

6    Defendant has now spent 30 months in state custody followed by about 53 months in federal

7    custody, for a total of about 7 years (83 months) in custody related to this matter.  To the extent that the

8    Bureau of Prisons would credit Defendant's time in state custody and Defendant would receive good

9    time credit, Defendant will have served the equivalent of a 98-month (approximately eight year)

10   sentence by the date of the sentencing hearing.  Accordingly, the government does not oppose a sentence

11   of time served in this matter, which would be the equivalent of a sentence of approximately 98 months

12   of imprisonment with these assumptions.

13   Defendant is also subject to a separate and additional detainer for a violation of supervised

14   release from the Western District of Texas that may result in custody time further to this matter, as well

15   as an additional detainer from Immigration and Customs Enforcement that may result in Defendant's

16   deportation from the United States.

17   **II.    BACKGROUND**

18   **A.    Factual Background**

19   On May 12, 2011, Defendant was convicted in the Western District of Texas of illegal reentry

20   into the United States after deportation in violation of 8 U.S.C. § 1326.  *See* Presentence Investigation

21   Report (Dkt. No. 152) ("PSR") ¶ 55.  The district court sentenced Defendant to 46 months of

22   imprisonment and three years of supervised release.  *Id.*  Prior to this conviction, Defendant had been

23   sentenced to 51 months of imprisonment in 2003 and 63 months of imprisonment in 1998 for similar

24   violations (in addition to other prior convictions for controlled substances offenses).  PSR ¶¶ 53–54.

25   Following Defendant's completion of his most recent term of imprisonment, the Bureau of

26   Prisons placed Defendant on federal supervised release on March 26, 2015 and transferred him to the

27   custody of Immigration and Customs Enforcement (ICE).  *Id.*  ICE then transferred Defendant to the

28   custody of the San Francisco Sheriff's Department for a warrant on a pending charge of Transport/Sale

of Controlled Substance originating from October 26, 1995.  *Id.*  The next day, that matter was dismissed by authorities in San Francisco on March 27, 2015.  PSR ¶ 60.  On April 15, 2015, the San Francisco Sheriff's Department released Defendant from local custody instead of transferring him back to federal immigration authorities.  PSR ¶ 55.

On June 27, 2015, a federal law enforcement ranger reported a burglary of his car that occurred on the Embarcadero in San Francisco, in which the stolen items from his car included his Sig Sauer P239 firearm and a magazine.  PSR ¶ 18.

## B.    The Instant Offense

Four days later, on July 1, 2015 at about 6:30 pm in San Francisco, 31-year-old Kathryn "Kate" Steinle, her father, and a family friend were walking along Pier 14 on the Embarcadero, a known tourist sightseeing location.  PSR ¶¶ 9–10.  At the same time, passersby saw Defendant spinning in circles in a swivel chair.  *See* Dkt. No. 46-1 at JGZ-5189.  Tragically, Defendant also knowingly possessed the same Sig Sauer P239 firearm loaded with ammunition while he was on the pier.  Dkt. No. 149 (Open Plea Application).  A gunshot rang out and Kate Steinle said "Dad help me," falling to the ground.  PSR ¶ 10.  She had been shot in her back by a bullet fired from that same firearm.  *Id.*

Defendant had been sitting in a chair on the pier approximately 90 feet away from Kate Steinle at the time she was struck by the bullet.  PSR ¶ 23.  In the immediate moments after Kate Steinle fell to the ground, a splash could be observed in the bay water directly below where Defendant had been sitting, consistent with Defendant throwing the firearm into the water.  *Id.*  Defendant then walked away from the crime scene in the direction of the Embarcadero.  *Id.*  At the time Defendant possessed the firearm, Defendant knew he was an alien who was unlawfully and illegally in the United States, and knew he had been previously convicted of a crime punishable by more than 1 year in prison (including a crime for which he spent several years in federal prison).  Dkt. No. 149.

Numerous witnesses provided San Francisco Police Department (SFPD) officers with a description or photographs of Defendant, who was observed walking away from the scene.  PSR ¶ 11.  At approximately 7:24 pm, SFPD officers located Defendant and arrested him, securing his hands and collecting samples from gunshot residue kits before taking him into custody.  PSR ¶ 12.  At 8:22 pm, Kate Steinle was pronounced deceased by medical staff at San Francisco General Hospital as the result

1  of the gunshot wound.  PSR ¶ 14.

2      After Defendant was transported to the police station and advised of his Miranda rights,

3  Defendant confessed to the shooting.  PSR ¶ 16.  Among other things, Defendant confirmed that he fired

4  the firearm once, that he fired the bullet, and that he was seated at that time.  *Id.*  He also stated that he

5  had been pointing the gun at various animals or at fish from the pier.  *Id.*  He also stated that he

6  remembered that the firearm was a semiautomatic gun (as opposed to a revolver).  *Id.*

7      The next day, the same firearm was recovered by the SFPD Marine Unit in a dive operation at

8  Pier 14.  PSR ¶¶ 17, 24.  The firearm was examined to confirm that all safeties were functional and in

9  good working order with no defects.  PSR ¶ 22.  A gunsmith from Sig Sauer inspected the firearm and

10  concluded that the pistol would have only fired with a pull of the trigger.  Samples taken from

11  Defendant's hands would also later yield a positive result for gunshot residue, according to SFPD

12  laboratory analysis.  PSR ¶ 21.  Defendant remained in local custody from his arrest on July 1, 2015

13  until his transfer to federal custody in January 2018.  PSR at 2.

14      **C.**    **Procedural Background**

15      Defendant was charged with a number of crimes in San Francisco Superior Court as a result of

16  the tragic incident, including homicide and being a felon in possession of a firearm.  *People v. Garcia*

17  *Zarate*, Case No. 15014736 (S.F. Sup. Ct. 2015).  Following a jury trial, Defendant was acquitted of the

18  homicide charges but convicted of being a felon in possession of a firearm.  Defendant appealed the sole

19  conviction, arguing that it was error for the state court not to offer a transitory possession instruction (a

20  defense not available in federal court for illegally possessing a firearm).  *See* Dkt. No. 60-2.

21      A federal grand jury indicted Defendant on December 5, 2017 for violating 18 U.S.C.

22  § 922(g)(1) (Count 1, Felon in Possession of a Firearm and Ammunition) and 18 U.S.C. § 922(g)(5)

23  (Count 2, Alien in Possession of a Firearm and Ammunition).  Dkt. No. 1.  Defendant made his first

24  appearance in federal court in this matter on January 8, 2018 and he was detained.  Dkt. No. 3.

25      In August 2018, the Court granted Defendant's request to continue this matter until the Supreme

26  Court decided *Gamble v. United States*.  Dkt. No. 19.  In June 2019, the Supreme Court decided

27  Gamble, rejecting the petitioner's arguments and upholding the dual-sovereignty doctrine.  *Gamble v.*

28  *United States*, 139 S. Ct. 1960 (2019).  This prosecution then proceeded.

U.S. SENTENCING MEMORANDUM     4
17-CR-0609 VC

On August 30, 2019, a California appellate court reversed Defendant's sole state conviction for failure to give the transitory possession instruction.  *See* Dkt. No. 60-2 (*People v. Garcia Zarate*, Case No. A153400 (Cal. Ct. Appl. 1st Dist. August 30, 2019 Order)).

In view of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), on October 17, 2019, the grand jury returned a Superseding Indictment adding the requisite element of Defendant's knowledge to the same charges of being a felon and an alien in possession of a firearm and ammunition.  *See* Dkt. No. 29.  On November 5, 2019, Defendant was arraigned on the Superseding Indictment.  Dkt. No. 33.  During the arraignment, Defendant expressed some confusion about the proceedings and admitted in open court "it's just one charge – one charge, it being illegal to have a weapon in my pants, the one that I had that day at Embarcadero, in my pants pocket."  Dkt. No. 42 at 3:22–25.

A federal jury trial was set in this matter for January 2020.  Dkt. 26.  In the days before trial, the Court ordered Defendant to be evaluated for mental competency to stand trial.  Dkt. No. 95, 100.  The evaluation led to an additional order on February 21, 2020 committing Defendant to the custody of the Attorney General for further examination and treatment.  Dkt. No. 111.  On October 19, 2020, following competency proceedings, the Court committed Defendant to the custody of the Attorney General for treatment.  Dkt. No. 124.  After receiving treatment at a Bureau of Prisons facility, Defendant returned to attend court proceedings in this district in August 2021.  Dkt. No. 132.  Following further competency evaluations, on March 14, 2022, Defendant pleaded guilty to Counts 1 and 2 of the Superseding Indictment without a plea agreement.  Dkt. Nos. 149 & 150.

Sentencing is set for Monday, June 6, 2022, at 9:30 a.m.  Defendant has now spent 30 months in state custody followed by about 53 months in federal custody for this matter, for a total of about 7 years (83 months) in custody.

Defendant is currently subject to two additional detainers: (1) one arising out of the U.S. District Court in the Western District of Texas related to the matter for which Defendant was on supervised release at the time of the offense; and (2) one from ICE.  PSR at 2.

//

//

//

III.   **DISCUSSION**

   A.   **Applicable Law**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.  Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct; and
>
> (4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

   B.   **Guidelines Calculation**

The United States Probation Office ("Probation") correctly calculates the United States Sentencing Guidelines ("Guidelines") in the PSR.  *See* PSR ¶¶ 30–40.

The government agrees with Probation that Defendant's criminal history score is eleven, which includes the addition of two points because Defendant committed this offense while on supervised release from the Western District of Texas.  PSR ¶¶ 56–58.

The government also agrees with Probation that the base offense level is correctly calculated as 18.  PSR ¶ 31.  The applicable guideline is U.S.S.G. § 2K2.1(c)(1)(B), which provides a cross reference to Chapter Two, Part A, Subpart 1 (Homicide), because death resulted from Defendant's use and possession of the firearm and the resulting offense level is greater than determined by applying 2K2.1.[1]

---

[1] When applying U.S.S.G. § 2K2.1, a Base Offense Level of 14 is applicable pursuant to

1   It is undisputed that the bullet that struck and killed Kate Steinle was fired from the firearm that

2   Defendant possessed while he was on Pier 14.  PSR ¶ 24.

3          In addition, U.S.S.G. § 2A1.4(a)(2)(A) (involuntary manslaughter) applies in this case in view of

4   Defendant's reckless conduct.  In light of the observations from the scene, Defendant's numerous

5   incriminating statements to interviewing officers following his arrest, and Defendant's additional

6   admissions following his arrest, Defendant acted recklessly in illegally possessing the firearm and firing

7   it.  As described above, Defendant was observed spinning on a swivel chair while seated on the pier

8   immediately before Kate Steinle was shot.  After the shooting, Defendant threw the firearm into the

9   water and made no attempt to assist the victim, immediately walking away from the crime scene instead.

10  Following his arrest, Defendant made several admissions about his reckless conduct, including that he

11  fired the bullet from the firearm while he was seated on the pier, and that he was pointing the gun at

12  various animals including a seal or fish—consistent with the observations of passersby that he was

13  spinning around on a swivel chair while seated on the pier.  He also specifically identified that the

14  firearm was a semiautomatic firearm (*i.e.*, not a revolver), which would require his direct view of the

15  weapon when possessing it (not obstructed, for example, by a rag).  Consistent with this, Defendant later

16  admitted in open court during the proceedings of this case that he had a gun in his pants pocket that day

17  on the Embarcadero.  When entering his guilty plea, Defendant also admitted that at the time he

18  possessed the firearm, he knew he was an alien who was unlawfully and illegally in the United States,

19  and knew he had been previously convicted of a crime punishable by more than 1 year in prison

20  (including a crime for which he spent several years in federal prison).  The illegal possession of firearms

21  is itself a danger to the community.  Even more, Defendant's behavior while knowingly and illegally

22  possessing the loaded firearm on Pier 14—including what was apparently playing with and pointing a

23  loaded firearm, discarding the firearm into the bay after the shooting, and fleeing the crime scene—was

24  egregiously reckless conduct as contemplated by U.S.S.G. § 2A1.4 under a preponderance of the

25  evidence.  The defense theory of an innocent "gun in a rag" not only selectively cherry-picks from

26  numerous of Defendant's incriminating statements to interviewing officers, but further requires ignoring

27

28  U.S.S.G. § 2K2.1(a)(6) and a two-level increase pursuant to U.S.S.G. §2K2.1(b)(4)(A) applies because
the firearm was stolen, resulting in an offense level of 16.

all the aforementioned facts.

Defendant receives a two-point reduction for acceptance of responsibility, but not a third point given that Defendant entered his pleas after the government already prepared for a jury trial.  PSR ¶¶ 38–39.  According, the total offense level is 16.

Given a total offense level of 16 and a Criminal History Category of V, the Sentencing Guidelines imprisonment range is 41 months to 51 months.  PSR ¶ 98.

### C.   Statutory Maximum Penalties

Defendant was charged with two separate statutory subdivisions of 18 U.S.C. § 922 that bar the possession of a firearm and ammunition by virtue of two disqualifying statuses, and he has pleaded guilty to both counts.  In these circumstances, the Court should not impose separate sentences for each count because the offenses merge at sentencing; the maximum penalty for the two counts, therefore, is 10 years (or 120 months) total of imprisonment.  *See, e.g.*, *United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000); *United States v. Zareck*, 588 F. App'x 100, 101 (3d Cir. 2014); *United States v. Thomas*, 426 F. App'x 459, 461 (7th Cir. 2011); *United States v. Hooks*, 33 F. App'x 371, 373 (10th Cir. 2002).

### D.   Recommendation

A review of the Guidelines and 18 U.S.C. § 3553(a) factors supports a substantial custodial sentence.  Probation recommends the statutory maximum for Defendant's conviction, which is 120 months (10 years) of imprisonment.  The government acknowledges Probation's position and its significant recommendation of imprisonment, given Defendant's reckless conduct in the instant offense with the illegal possession of a stolen, loaded firearm that led to the death of the victim, and in view of Defendant's lengthy criminal history.

Specifically, the nature and circumstances of the offense weigh in favor of a substantial custodial sentence.  In this case, Defendant recklessly and illegally possessed a loaded firearm in a busy public place on Pier 14 in San Francisco, which resulted in the shooting of the victim as she walked along the pier.  While the killing of this victim may not have been intentional, it is clear that Defendant's illegal possession of the firearm was no accident, and his firing of it was at the very least reckless.  Defendant admitted to authorities that he fired the firearm while seated, that he was pointing it at various things, and that he knew it was a semiautomatic firearm (as compared to a revolver).  Rather than checking on

1  the victim after the shooting, he immediately threw the weapon into the water and fled the scene.  The

2  victim tragically died from the shooting.  A substantial custodial sentence is supported given these facts

3  and warranted in view of the need to recognize the seriousness of the offense, promote respect for the

4  law, and to provide just punishment for the offense.

5        With respect to the history and characteristics of the defendant, Defendant has a lengthy criminal

6  history spanning decades around the country, ranging from felony controlled substances offenses to

7  repeated illegal re-entry violations after deportation for which he served significant prison time.  As

8  such, Defendant's criminal history also supports a substantial custodial sentence.  Likewise, in view of

9  the need for the sentence imposed to afford adequate deterrence to criminal conduct, the government

10  notes that Defendant's lengthiest custodial punishment thus far was a 63-month term of imprisonment

11  for illegal re-entry after deportation in 1998, which did not appear sufficient to deter Defendant from

12  illegally reentering the United States again.

13        On the other hand, the government acknowledges that Defendant has a long history of treatment

14  for mental health issues.  Defendant is also subject to a separate detainer for a violation of supervised

15  release from the Western District of Texas that may result in additional custody time further to this

16  matter, as well as an additional detainer from Immigration and Customs Enforcement that may result in

17  Defendant's deportation from the United States.

18        Accordingly, the government does not oppose a sentence of time served (which would be the

19  equivalent of a sentence of approximately 98 months of imprisonment, to the extent that the Bureau of

20  Prisons would credit Defendant's time in state custody and Defendant would receive good time credit),

21  followed by three years of supervised release in this matter, based upon a consideration of the

22  Guidelines and 18 U.S.C. § 3553(a) factors.

23  DATED:  May 31, 2022                                    Respectfully submitted,

24                                                          STEPHANIE M. HINDS
                                                            United States Attorney
25

26
                                                                  /s/
27                                                          ERIC CHENG
                                                            KEVIN BARRY
28                                                          Assistant United States Attorneys